**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| ORLY GENGER, | § | CASE NO. 19-10926-TMD |
| | § | |
| Debtor. | § | |

## CREDITOR ARIE GENGER'S EXPEDITED MOTION FOR PROTECTIVE ORDER

**TO THE HONORABLE U.S. BANKRUPTCY JUDGE TONY M. DAVIS:**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure ("Rule 26(c)"), made applicable by Rule 7026(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Creditor Arie Genger ("Arie") files this *Expedited Motion for Protective Order* (the "Motion"), seeking entry of an order substantially in the form attached hereto as **Exhibit A**.[1] Contemporaneously with the filing of this Motion, Arie is filing a Motion for Expedited Hearing on this Motion. In support of the Motion, Arie respectfully states as follows:

### I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this chapter 7 case and this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding as defined by 28 U.S.C. § 157(b). The Court has authority to enter a final order granting relief pursuant to 28 U.S.C. § 157(b)(1) and 11 U.S.C. § 105.

2.      Venue of this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] A redline of this Court's approved form of protective order against Exhibit A is attached hereto as **Exhibit A-1**.

118754.000001  4821-6598-0328.3 10/07/2019 3:32 PM

## II.    RELEVANT BACKGROUND

3.      On or about July 12, 2019, Debtor Orly Genger ("Orly" or the "Debtor") commenced this case (the "Case") by filing a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

4.      Ron Satija, Trustee was subsequently appointed Chapter 7 Trustee.

5.      This bankruptcy is the latest chapter in a decade-plus family litigation that followed the 2004 divorce of Dalia Genger ("Dalia") and Arie.  By all accounts, these litigations involving Dalia, Arie, their son, Sagi Genger ("Sagi"), and Orly have cost tens of millions of dollars and have involved over a dozen separate actions in many courts around the country.

6.      On or about September 16, 2019, Sagi asserted that four subpoenas for depositions, including *subpoenas duces tecum* (the "Request"), were served on his father (Arie), his brother-in-law (Eric Herschmann), his father's accounting firm (Raines & Fischer LLP), and his father's law firm (Stein & Harris) (collectively, the "Sagi September Subpoenas").  The Sagi September Subpoenas were allegedly served in connection with the Motion to Dismiss or Transfer Venue[2] filed by Sagi.  The Definitions and the Documents Requested (Schedule A) on all four of the Sagi September Subpoenas are absurdly identical.  A copy of the subpoena directed to Arie Genger was emailed to Arie's counsel by Sagi's counsel and is attached hereto as **Exhibit B**.[3]  Sagi's Request seeks information that is unreasonably cumulative, duplicative, and unduly burdensome, can be obtained from another person and/or party involved in this Case, is not relevant to this Case, and seeks confidential and/or privileged documents and communications.

7.      In a now-stayed litigation pending in the U.S. District Court for the Southern District of New York (the "SDNY Litigation"), an agreed protective order was entered which

---

[2] ECF No. 32 (the "Motion to Dismiss").
[3] Arie reserves the right to respond separately to the subpoena allegedly served on him.

118754.000001  4821-6598-0328.3 10/07/2019 3:32 PM

covered all production by Arie and his deposition.  *See* Protective Order, *Genger v. Genger*, S.D.N.Y. Case No. 17-cv-8181, Doc. No. 181 (filed Feb. 7, 2019) (the "<u>SDNY Protective Order</u>"), a copy of which is attached hereto as **<u>Exhibit C</u>**.  Specifically, the SDNY Protective Order prohibits disclosure or use of information produced in that action to anyone except Sagi or counsel retained by Sagi in that litigation.  Nevertheless, through his motion to file under seal,[4] Sagi requests this Court to exclude certain confidential documents from the SDNY Protective Order. *See* ECF No. 31, at ¶ 3.

8.     In accordance with local practice, the undersigned counsel reached out to counsel for Sagi and attempted to resolve or at least limit the Request.  The only agreement reached was that Arie could respond by October 7, 2019.  Substantially contemporaneous with the filing of this Motion, Arie Genger filed his response (the "<u>Response</u>"), a copy of which is attached hereto as **<u>Exhibit D</u>**.

### III.     SUMMARY OF REQUESTED RELIEF

9.     As set out in the Response and subject to an appropriate protective and confidentiality order, Arie was and remains willing to respond to appropriate requests which may include documents already produced pursuant to the SDNY Protective Order.  Arie seeks the entry of a protective order in this Case to protect against Sagi's repeated attempts at discovering confidential commercial information that has no relevancy to this Case.  Generally, Arie requests the following relief herein:

A.     Any deposition of Arie will take place in Austin or Florida on a mutually agreeable date;

---

[4] ECF No. 31.

118754.000001  4821-6598-0328.3 10/07/2019 3:32 PM

B.      Production of previously-marked AGENGER and/or AGA documents, produced in March 2019, will be deemed to fully satisfy Request Nos. 5, 8, 9, 10, 11, 12, 13, 16, 17, 18, 31, 32, 33, 34, 35, 36, 37, 43, and 44;

C.      Protection against production of communications, documents, or agreements between any alleged members of the "OG Group" (as defined below) do not include Orly;[5]

D.      Production of the Family Trust Agreement to the Court for an *in camera* review only; and

E.      Protection against the production of information related to Arie's personal business dealings and assets that do not directly affect Orly.

Absent a protective order in this Case, Sagi will continue to harass Arie by propounding ever-expanding discovery; thus, good causes exists for the entry of a protective order for Arie.

## IV.    ARGUMENT AND AUTHORITIES

10.      Rule 26(b) of the Federal Rules of Civil Procedure, made applicable in this Case by Bankruptcy Rule 7026, permits a party to obtain discovery relating to:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b).

11.      Bankruptcy Rule 9018 and section 107(b) of the Bankruptcy Code authorize this Court to protect parties from disclosure. 11 U.S.C. § 107(b); FED. R. BANKR. P. 9018. Moreover,

---

[5] Arie has not been able to identify any documents relevant to Request Nos. 1, 2, 3, 4, 6, 14, 15, 19, 20, 21, 22, 23, 24, 25, 27, 29, 20, 38, 39, 40, 41, and 42.

through Bankruptcy Rule 7026, Rule 26(c) governs the issuance of protective orders, providing that the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause.  FED. R. CIV. P. 26(c)(1); *see Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).[6]  This Court's discretion under Rule 26(c) is broad and permits the Court to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery into certain matters."  *See* FED. R. CIV. P. 26(c)(1)(D); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985); *see also Sw. Bell Tel., L.P. v. UTEX Commc'ns Corp.*, Case No. A-07-CV-435 RP, 2009 U.S. Dist. LEXIS 131706, at *4 (W.D. Tex. Sept. 30, 2009).

12.     Specifically, the SDNY Protective Order provides that:

> All Confidential Discovery Material . . . may be used solely in this action (including for discovery disputes and fee applications), and/or in any proceeding or action brought to enforce or collect the final judgment against Orly Genger, dated August 17, 2018 . . . including locating and levying against any assets of Orly Genger and setting aside any fraudulent conveyances made by Orly Genger (so long as the sole purpose of such fraudulent conveyance action is to set aside a conveyance that would enable Sagi Genger to enforce the Judgment).  If the fraudulent conveyance action is not solely for the purpose of judgment enforcement, Sagi Genger must make an application to this Court for permission to modify this Protective Order to use the Confidential Discovery Material for a purpose other than that which is contemplated herein.

SDNY Protective Order, at ¶5.  In this Case, Sagi seeks discovery of confidential information beyond that previously produced in the now-stayed litigation in the Southern District of New York (the "<u>SDNY Litigation</u>")[7].  The discovery propounded in the Sagi September Subpoenas seeks information previously produced by Arie pursuant to the SDNY Protective Order, which caused Arie to incur exorbitant fees and expenses relating to attorney's fees and document review and

---

[6] Courts have also held that non-parties are permitted to seek protective orders under FED. R. CIV. P. 26(c).  *See In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342–43 (N.D. Ill. 2008).
[7] By agreement, prior production was limited to June 2013 to the present.

production.  Here, Sagi's discovery requests propounded to Arie through the subpoena are unreasonably cumulative and duplicative of Arie's prior production, most of which included "confidential" labels pursuant to the SDNY Protective Order.  For example, Sagi submits 44 document requests, some dating back to 2007, for the production of all communications and various documents, including all drafts, metadata, and electronic copies, most of which serve as the basis for the SDNY Litigation.  Thus, the burden and expense of this expanded production do not outweigh any likely benefit and are not proportional to the needs of this Case.  *See Alley v. MTD Prods.*, Case No. 3:17-cv-3, 2018 U.S. Dist. LEXIS 167006, \*6–\*8 (W.D. Pa. Sept. 28, 2018); *McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, 141–42 (W.D. Wash. 2016).

13.     Pursuant to the SDNY Protective Order, Sagi is permitted to use the Confidential Discovery Material in the SDNY Litigation and/or in a proceeding brought to "enforce or collect the final judgment" against Orly.  SDNY Protective Order, at ¶5.  The documents Sagi requests of Arie in this Case relate to his Motion to Dismiss.  Absent a protective order in this Case, Sagi will continue to harass Arie by propounding ever-expanding discovery, which is wholly irrelevant to the matters pending before this Court.  Thus, good cause exists for the entry of a protective order in this Case for Arie.

14.     As noted above, Arie was and remains willing to sit for a reasonable deposition in Florida (where he resides) or, preferably, in Austin (where this Case is pending) at a mutually agreeable time.  As set out in the Response and subject to an appropriate protective and confidentiality order, Arie was and remains willing to respond to appropriate requests which may include documents already produced pursuant to the SDNY Protective Order.

15.     Arie seeks an order of this Court "specifying the time and place for . . . discovery" pursuant to FED. R. CIV. P. 26(c)(1)(B), made applicable by Bankruptcy Rule 7026.  Specifically,

Arie seeks a protective order prohibiting Sagi's attempts to force him to be deposed in any location other than Florida or Austin.

16.     Additionally, Arie seeks an order of this Court prohibiting Sagi or any other party from attempting to use discovery served in this Case to limit the protections provided by the SDNY Protective Order.

17.     Pursuant to FED. R. CIV. P. 26(c)(1)(A) and FED. R. CIV. P. 32(a)(8), made applicable by Bankruptcy Rules 7026 and 7032, Arie seeks to "forbid the disclosure or discovery" of documents and information obtained pursuant to the SDNY Protective Order.  Arie also objects to the use of prior discovery, which was served upon Arie in the SDNY Litigation in an alleged attempt to collect on a debt that Orly owes Sagi.  Sagi's Motion to Dismiss is not the "same subject matter" as the attempts to collect on a debt.  *See Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*, 38 F.3d 1429, 1439 (7th Cir. 1994) (providing that information is not discoverable if it is not relevant).

18.     Further, given Sagi's blatant attempts to avoid his obligations under the SDNY Protective Order, Arie seeks an order of this Court prohibiting any discovery in this Case from being used in unrelated current or future litigation.  *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).

19.     Arie also seeks an order pursuant to FED. R. CIV. P. 26(c)(1)(G), made applicable by Bankruptcy Rule 7026, that restricts attempts at discovering confidential commercial information which has no relevancy to this Case.  *See United States ex rel. Long v. GSD&M Idea City LLC*, Case No. 3:11-cv-1154-O, 2014 U.S. Dist. LEXIS 198453, at *4, *6 (N.D. Tex. Jan. 3, 2014) (citing *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 611 (5th Cir. 2003)).  For example, Sagi repeatedly attempts to obtain "[a]ny and all contracts and agreements between any

118754.000001  4821-6598-0328.3 10/07/2019 3:32 PM

members of the OG Group[8] (whether or not they also include a non-member) drafted since 2008."[9] This Request is not limited to agreements with Orly.

20. The Request seeks metadata from as far back as 2007.[10] Further, the Request seeks "any and all written communications" between members of the alleged OG Group since 2008.[11] Arie also seeks an order pursuant to FED. R. CIV. P. 26(c)(1), made applicable by Bankruptcy Rule 7026, to protect himself from "annoyance, embarrassment, oppression or undue burden or expense."

21. Arie further objects to the extent that Sagi is attempting to obtain communications between himself and one of his law firms, Stein & Harris. *See Upjohn Co. v. United States*, 449 U.S. 393, 389 (1991) (discussing protection of attorney-client privilege). Request Nos. 6 and 16 appear to conflict with Request No. 9(a).

## IV.    CONCLUSION

22. For the reasons set forth above, Arie respectfully requests that the Court grant this Motion, including entry of the proposed order attached hereto, and any other relief to which he may be entitled.

---

[8] "OG Group" is defined to mean "Arie Genger, Eric Herschmann, Orly Genger, Lance Harris, William Fisher, Arnold Broser, and David Broser and any person in the employ, agent, member, or partner of Raines & Fisher LLP and/or Stein Harris PC."
[9] *See* Request Nos. 5, 16, and 37.
[10] *See* Request Nos. 5 and 10.
[11] *See* Request No. 9.

Dated:  October 7, 2019    Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Deborah D. Williamson*
  Deborah D. Williamson
  State Bar No. 21617500
  dwilliamson@dykema.com
  Danielle N. Rushing
  State Bar No. 24086961
  drushing@dykema.com
  112 East Pecan Street, Suite 1800
  San Antonio, Texas 78205
  Telephone: (210) 554-5500
  Facsimile: (210) 226-8395

  and

  Aaron M. Kaufman
  State Bar No. 24060067
  akaufman@dykema.com
  Comerica Bank Tower
  1717 Main Street, Suite 4200
  Dallas, Texas 75201
  Telephone: (214) 462-6400
  Facsimile: (214) 462-6401

**ATTORNEYS FOR ARIE GENGER**

## CERTIFICATE OF CONFERENCE

I certify that counsel for Arie Genger made a good faith effort to confer with counsel for Sagi Genger regarding the substance of this Motion via telephone and email on September 25, 2019, and via email regarding this Motion on October 7, 2019, and with Shane Tobin on behalf of the Office of the United States Trustee for the Western District of Texas regarding this Motion via email on October 7, 2019. The United States Trustee does not take a position on the relief requested herein; however, Mr. Dellaportas has not indicated whether he opposes the relief requested herein. Counsel for Arie Genger will attempt to negotiate in good faith with counsel for Sagi Genger regarding this Motion.

*/s/ Deborah D. Williamson*
Deborah D. Williamson

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, a true and correct copy of the foregoing document was served by electronic notification by the Electronic Case Filing system for the United States Bankruptcy Court for the Western District of Texas and to the following:

Mr. John Dellaportas *Via Email and Fax*
EMMET, MARVIN & MARTIN LLP
120 Broadway, 32nd Floor
New York, New York 10271
jdellaportas@emmetmarvin.com
Facsimile: (212) 238-3100

Shane Tobin *Via Email*
Office of the U.S. Trustee for the Western District of Texas
230 Homer Thornberry Judicial Building
903 San Jacinto Boulevard, Room 230
Austin, Texas 78701
Shane.P.Tobin@usdoj.gov

*/s/ Danielle N. Rushing*
Danielle N. Rushing

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| ORLY GENGER, | § | CASE NO. 19-10926-TMD |
| | § | |
| Debtor. | § | |

## CONFIDENTIALITY AND PROTECTIVE ORDER

Before the court is *Creditor Arie Genger's Expedited Motion for Protective Order* ("Motion for

Protective Order") [ECF No. ___]. After careful consideration, it is hereby ORDERED as follows:

**1.      Classified Information**

"Classified Information" means any information of any type, kind, or character that is

designated as "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by any of the

supplying or receiving persons, whether it be a document, information contained in a document,

information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

**2. Qualified Persons**

"Qualified Persons" means:

a. For Counsel or Attorneys' Eyes Only information:

    i. retained counsel for the parties in this case and their respective staff;

    ii. actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this case (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such person, have signed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto, agreeing to be bound by the terms of this Protective Order (such signed Non-Disclosure Agreement to be maintained by the attorney retaining such person) and have been designated in writing by notice to all counsel;

    iii. this court and its staff and any other tribunal or dispute resolution officer duly appointed or assigned in connection with this case;

    iv. the United States Trustee and any representatives thereof.

b. For Confidential information:

    i. the persons identified in subparagraph 2(a);

    ii. the party, if a natural person;

    iii. if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case who, prior to any disclosure of Confidential information to such person, have been designated in writing by notice to all counsel and have signed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto, agreeing to be bound by the terms of this Protective Order (such signed Non-Disclosure Agreement to be maintained by the attorney designating such person);

    iv. litigation vendors, court reporters and other litigation or bankruptcy support personnel;

    v. any person who was an author, addressee, or intended or authorized recipient of the Confidential information and who agrees to keep the

information confidential, provided that such persons may see and use the Confidential information but not retain a copy.

c.      Such other person as this court may designate after notice and an opportunity to be heard.

**3.      Designation Criteria**

a.      *Nonclassified Information.* Classified Information shall not include information that either:

    i.      is in the public domain at the time of disclosure, as evidenced by a written document;

    ii.      becomes part of the public domain through no fault of the recipient, as evidenced by a written document;

    iii.      the receiving party can show by written document was in its rightful and lawful possession at the time of disclosure; or

    iv.      lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

b.      *Classified Information.* A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential. Information that is generally available to the public, such as public filings, catalogues, advertising materials, and the like, shall not be designated as Classified.

Information and documents that may be designated as Classified Information include, but are not limited to, trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

Other material that may be designated as Classified Information includes: (a) previously nondisclosed financial information (including without limitation tax returns, net worth statements, financial account statements; accountant work papers and communications, *etc.*); (b) previously nondisclosed material relating to ownership or control of or interest in any asset, real estate, business entity or trust; (c) previously nondisclosed business plans, product development information, or marketing plans; (d) any information of a personal or intimate nature regarding any individual; or (e) any other category of information hereinafter given confidential status by the Court.

A document designated as Classified Information hereunder does not lose its confidentiality restriction merely because it is thereafter subpoenaed from another source that does not designate such document as confidential; and if a party or nonparty subpoenas third parties to obtain additional copies of material already designated as Classified Information by a producing party or nonparty, then the subpoenaing party or nonparty shall notify the producing party or nonparty sufficiently in advance to permit that party or nonparty to designate the additional materials as Classified Information pursuant to the terms of this Protective Order.

Any third party that produces documents in this case shall have the right to designate its production as Classified Information to the same extent as the parties to this Protective Order, without having to execute this Protective Order.

c.    *For Counsel or Attorneys' Eyes Only*. The designation "For Counsel Only" or "Attorneys' Eyes Only" shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design

information, non-public financial information, pricing information, customer identification data, and certain study methodologies.

        d.    *Ultrasensitive Information.* At this point, the parties do not anticipate the need for higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that a court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

### 4. Use of Classified Information

        All Classified Information provided by any party or nonparty in the course of this case shall be used solely for the purpose of preparation, trial, and appeal of matters at issue in this case and for no other purpose, and shall not be disclosed except in accordance with the terms hereof.

### 5. Marking of Documents

        Documents provided in this case may be designated by the producing person or by any party as Classified Information by marking each page of the documents so designated with a stamp indicating that the information is "Confidential," "For Counsel Only," or "Attorneys' Eyes Only." In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Originals shall be preserved for inspection.

### 6. Disclosure at Depositions

        Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this case, or (b) the deposition of a nonparty may be designated by any party as Classified Information by indicating on the record at the deposition that the testimony is "Confidential" or "For Counsel Only" and is subject to the provisions of this Order.

Any party also may designate information disclosed at a deposition as Classified Information by notifying all parties in writing not later than 30 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Classified Information thereafter. Each party shall attach a copy of each such written notice to the face of the transcript and each copy thereof in that party's possession, custody, or control. All deposition transcripts shall be treated as For Counsel Only for a period of 30 days after initial receipt of the transcript.

To the extent possible, the court reporter shall segregate into separate transcripts information designated as Classified Information with blank, consecutively numbered pages being provided in a non-designated main transcript. The separate transcript containing Classified Information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Classified Information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Classified Information is being used or discussed.

**7.    Disclosure to Qualified Persons**

a.    *To Whom.* Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with applicable law or the valid order of a court of competent jurisdiction; ***provided, however***, that in the event of a disclosure compelled by law or court order, the receiving party will so notify the producing party as promptly as practicable (most certainly prior to making such disclosure) and shall seek a protective order or confidential treatment of such information.  Information designated as For Counsel Only shall be restricted in circulation to Qualified Persons described in subparagraph 2(a).

b.  *Retention of Copies During this Case.*  Copies of For Counsel Only information shall be maintained only in the offices of outside counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Any documents produced in this case, regardless of classification, that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of any such documents shall be made. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this case.

c.  Each party's outside counsel shall maintain a log of all copies of For Counsel Only documents that are delivered to Qualified Persons.

## 8.  Unintentional Disclosures

Documents unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

If a receiving party learns of any unauthorized disclosure of Confidential information or For Counsel Only information, the party shall immediately upon learning of such disclosure inform the producing party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

## 9.  Documents Produced for Inspection Prior to Designation

In the event documents are produced for inspection prior to designation, the documents shall be treated as For Counsel Only during inspection. At the time of copying for the receiving parties, Classified Information shall be marked prominently "Confidential," "For Counsel Only," or "Attorneys' Eyes Only" by the producing party.

10. **Consent to Disclosure and Use in Examination**

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

11. **Challenging the Designation**

a.     *Classified Information.* A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this case disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless and until the court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information.

b.     *Qualified Persons.* In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the dispute cannot be resolved, the objecting party shall have 14 days from the date of the

designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 14 days from service of the request to move the court for an order denying the disposed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting person shall have the burden of demonstrating that disclosure to the disputed person would expose the objecting party to the risk of serious harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless and until the court enters an order preserving the designation.

### 12. Manner of Use in Proceedings

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this case, the party shall do one of the following: (1) with the consent of the producing party, file only a redacted copy of the information; (2) where appropriate (e.g., in connection with discovery and evidentiary motions) provide the information solely for *in camera* review; or (3) file such information under seal with the court consistent with the sealing requirements of the court. *See* Local Rule 9018.

### 13. Filing Under Seal

Upon entry of an order granting a motion to seal documents, the clerk of this court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, and other papers filed under seal in this case that have been designated, in whole or in part, as Classified Information by any party to this case consistent with the sealing requirements of the court. *See* Local Rule 9018.

### 14. Return of Documents

Not later than 30 days after conclusion of this case and any appeal(s) related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2

(except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as this court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

## 15. Ongoing Obligations

Insofar as the provisions of this Protective Order, or any other protective orders entered in this case, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this case, except that (a) there shall be no restriction on documents that are used as exhibits in open court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the court with respect to dissolution or modification of this, or any other, protective order. This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

## 16. Advice to Clients

This order shall not bar any attorney in the course of rendering advice to such attorney's client with respect to this case from conveying to any party client the attorney's evaluation in a general way of Classified Information produced or exchanged under the terms of this order; provided, however, that in rendering such advice and otherwise communicating with the client, the attorney shall not disclose the specific contents of any Classified Information produced by another party if such disclosure would be contrary to the terms of this Protective Order.

17. **Duty to Ensure Compliance**

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

18. **Waiver**

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work product protection is waived by disclosure connected with this case.

19. **Modification and Exceptions**

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

20. **No Intention to Modify Section 107 of the Bankruptcy Code**

For the avoidance of doubt, nothing in this order is intended to limit or contradict the scope of disclosure required by 11 U.S.C. § 107, and the Court may at any point take such steps to ensure compliance with that section as it deems necessary, either upon its *sua sponte* consideration or upon the request of any entity.

# # #

Prepared and Submitted By:

**DYKEMA GOSSETT PLLC**

Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

and

Aaron M. Kaufman
State Bar No. 24060067
akaufman@dykema.com
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

**ATTORNEYS FOR ARIE GENGER**

# EXHIBIT A-1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| IN RE: | § | CASE NO. _____ TMD |
| | § | |
| _____ | § | CHAPTER _____ |
| | § | |
| Debtor(s). | § | |
| | § | |
| IN RE: | § | CHAPTER 7 |
| | § | |
| ORLY GENGER, | § | CASE NO. 19-10926-TMD |
| | § | |
| _____ Debtor. | § | |

**~~AGREED~~ CONFIDENTIALITY AND PROTECTIVE ORDER**

Before the court is ~~the joint motion of the parties for the entry of a confidentiality and protective order ("~~*Creditor Arie Genger's Expedited Motion for Protective Order* ("Motion for Protective Order") [ECF No. ____]. After careful consideration, it is hereby ORDERED as follows:

1. **Classified Information**

"Classified Information" means any information of any type, kind, or character that is designated as "Confidential," "For Counsel Only," or "Attorneys-' Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

2. **Qualified Persons**

"Qualified Persons" means:

a.     For Counsel or Attorneys-' Eyes Only information:

    i.     retained counsel for the parties in this case and their respective staff;

    ii.     actual or potential independent experts or consultants (and their administrative or clerical staff) engaged in connection with this case (which shall not include the current employees, officers, members, or agents of parties or affiliates of parties) who, prior to any disclosure of Classified Information to such person, have signed a document Non-Disclosure Agreement in the form annexed as an Exhibit hereto, agreeing to be bound by the terms of this Protective Order (such signed document Non-Disclosure Agreement to be maintained by the attorney retaining such person) and have been designated in writing by notice to all counsel;

    iii.     this court and its staff and any other tribunal or dispute resolution officer duly appointed or assigned in connection with this case;

    iv.     the United States Trustee and any representatives thereof.

b.     For Confidential information:

    i.     the persons identified in subparagraph 2(a);

    ii.     the party, if a natural person;

    iii.     if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case who, prior to any disclosure of Confidential information to such person, have been designated in writing by notice to all counsel and have signed a document Non-Disclosure Agreement in the form annexed as an Exhibit hereto, agreeing to be bound by the terms of this Protective Order (such signed

~~document~~ Non-Disclosure Agreement to be maintained by the attorney designating such person);

    iv.    litigation vendors, court reporters and other litigation or bankruptcy support personnel;

    v.    any person who was an author, addressee, or intended or authorized recipient of the Confidential information and who agrees to keep the information confidential, provided that such persons may see and use the Confidential information but not retain a copy.

c.    Such other person as this court may designate after notice and an opportunity to be heard.

**3.**    **Designation Criteria**

a.    *Nonclassified Information.* Classified Information shall not include information that either:

    i.    is in the public domain at the time of disclosure, as evidenced by a written document;

    ii.    becomes part of the public domain through no fault of the recipient, as evidenced by a written document;

    iii.    the receiving party can show by written document was in its rightful and lawful possession at the time of disclosure; or

    iv.    lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

b.    *Classified Information.* A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential. Information that is generally available to the public, such as public filings, catalogues, advertising materials, and the like, shall not be designated as Classified.

Information and documents that may be designated as Classified Information include, but are not limited to, trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by

law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

Other material that may be designated as Classified Information includes: (a) previously nondisclosed financial information (including without limitation tax returns, net worth statements, financial account statements; accountant work papers and communications, *etc.*); (b) previously nondisclosed material relating to ownership or control of or interest in any asset, real estate, business entity or trust; (c) previously nondisclosed business plans, product development information, or marketing plans; (d) any information of a personal or intimate nature regarding any individual; or (e) any other category of information hereinafter given confidential status by the Court.

A document designated as Classified Information hereunder does not lose its confidentiality restriction merely because it is thereafter subpoenaed from another source that does not designate such document as confidential; and if a party or nonparty subpoenas third parties to obtain additional copies of material already designated as Classified Information by a producing party or nonparty, then the subpoenaing party or nonparty shall notify the producing party or nonparty sufficiently in advance to permit that party or nonparty to designate the additional materials as Classified Information pursuant to the terms of this Protective Order.

Any third party that produces documents in this case shall have the right to designate its production as Classified Information to the same extent as the parties to this Protective Order, without having to execute this Protective Order.

c.      *For Counsel or Attorneys' Eyes Only*. The designation "For Counsel Only" or "Attorneys' Eyes Only" shall be reserved for information that is believed to be unknown to the

opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, non-public financial information, pricing information, customer identification data, and certain study methodologies.

d. *Ultrasensitive Information.* At this point, the parties do not anticipate the need for higher levels of confidentiality as to ultrasensitive documents or information. However, in the event that a court orders that ultrasensitive documents or information be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information.

### 4. Use of Classified Information

All Classified Information provided by any party or nonparty in the course of this case shall be used solely for the purpose of preparation, trial, and appeal of matters at issue in this case and for no other purpose, and shall not be disclosed except in accordance with the terms hereof.

### 5. Marking of Documents

Documents provided in this case may be designated by the producing person or by any party as Classified Information by marking each page of the documents so designated with a stamp indicating that the information is "Confidential," "For Counsel Only," or "Attorneys' Eyes Only." In lieu of marking the original of a document, if the original is not provided, the designating party may mark the copies that are provided. Originals shall be preserved for inspection.

### 6. Disclosure at Depositions

Information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, agents, consultants, representatives, or independent experts retained by counsel for the purpose of this case, or (b) the deposition of a nonparty may be designated by any

party as Classified Information by indicating on the record at the deposition that the testimony is "Confidential" or "For Counsel Only" and is subject to the provisions of this Order.

Any party also may designate information disclosed at a deposition as Classified Information by notifying all parties in writing not later than 30 days of receipt of the transcript of the specific pages and lines of the transcript that should be treated as Classified Information thereafter. Each party shall attach a copy of each such written notice to the face of the transcript and each copy thereof in that party's possession, custody, or control. All deposition transcripts shall be treated as For Counsel Only for a period of 30 days after initial receipt of the transcript.

To the extent possible, the court reporter shall segregate into separate transcripts information designated as Classified Information with blank, consecutively numbered pages being provided in a non-designated main transcript. The separate transcript containing Classified Information shall have page numbers that correspond to the blank pages in the main transcript.

Counsel for a party or a nonparty witness shall have the right to exclude from depositions any person who is not authorized to receive Classified Information pursuant to this Protective Order, but such right of exclusion shall be applicable only during periods of examination or testimony during which Classified Information is being used or discussed.

**7.    Disclosure to Qualified Persons**

a.    *To Whom.* Classified Information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except as necessary to comply with applicable law or the valid order of a court of competent jurisdiction; ***provided, however***, that in the event of a disclosure compelled by law or court order, the receiving party will so notify the producing party as promptly as practicable (~~if at all possible,~~ most certainly prior to making such disclosure) and shall seek a protective order or confidential treatment of such information.

Information designated as For Counsel Only shall be restricted in circulation to Qualified Persons described in subparagraph 2(a).

   b.   *Retention of Copies During this Case.* Copies of For Counsel Only information shall be maintained only in the offices of outside counsel for the receiving party and, to the extent supplied to experts described in subparagraph 2(a)(ii), in the offices of those experts. Any documents produced in this case, regardless of classification, that are provided to Qualified Persons shall be maintained only at the office of such Qualified Person and only necessary working copies of any such documents shall be made. Copies of documents and exhibits containing Classified Information may be prepared by independent copy services, printers, or illustrators for the purpose of this case.

   c.   Each party's outside counsel shall maintain a log of all copies of For Counsel Only documents that are delivered to Qualified Persons.

   **8.   Unintentional Disclosures**

   Documents unintentionally produced without designation as Classified Information later may be designated and shall be treated as Classified Information from the date written notice of the designation is provided to the receiving party.

   If a receiving party learns of any unauthorized disclosure of Confidential information or For Counsel Only information, the party shall immediately upon learning of such disclosure inform the producing party of all pertinent facts relating to such disclosure and shall make all reasonable efforts to prevent disclosure by each unauthorized person who received such information.

   **9.   Documents Produced for Inspection Prior to Designation**

   In the event documents are produced for inspection prior to designation, the documents shall be treated as For Counsel Only during inspection. At the time of copying for the receiving

parties, Classified Information shall be marked prominently "Confidential," "For Counsel Only," or "Attorneys-' Eyes Only" by the producing party.

**10. Consent to Disclosure and Use in Examination**

Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as Classified Information consents to such disclosure or if the court, after notice to all affected parties and nonparties, orders such disclosure. Nor shall anything in this order prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source, or recipient of the Classified Information, irrespective of which party produced such information.

**11. Challenging the Designation**

a.   *Classified Information.* A party shall not be obligated to challenge the propriety of a designation of Classified Information at the time such designation is made, and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this case disagrees at any stage of these proceedings with the designation of any information as Classified Information, the parties shall first try to resolve the dispute in good faith on an informal basis, such as by production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as Classified Information. The designating party shall then have 14 days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain Classified Information unless and until the court orders otherwise. Failure to move for an order shall constitute a termination of the status of such item as Classified Information.

b.   *Qualified Persons.* In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information

to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. If the dispute cannot be resolved, the objecting party shall have 14 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 14 days from service of the request to move the court for an order denying the disposed person (a) status as a Qualified Person, or (b) access to particular Classified Information. The objecting person shall have the burden of demonstrating that disclosure to the disputed person would expose the objecting party to the risk of serious harm. Upon the timely filing of such a motion, no disclosure of Classified Information shall be made to the disputed person unless and until the court enters an order preserving the designation.

### 12. Manner of Use in Proceedings

In the event a party wishes to use any Classified Information in affidavits, declarations, briefs, memoranda of law, or other papers filed in this case, the party shall do one of the following: (1) with the consent of the producing party, file only a redacted copy of the information; (2) where appropriate (e.g., in connection with discovery and evidentiary motions) provide the information solely for *in camera* review; or (3) file such information under seal with the court consistent with the sealing requirements of the court. *See* Local Rule 9018.

### 13. Filing Under Seal

Upon entry of an order granting a motion to seal documents, the clerk of this court is directed to maintain under seal all documents, transcripts of deposition testimony, answers to interrogatories, admissions, and other papers filed under seal in this case that have been designated, in whole or in part, as Classified Information by any party to this case consistent with the sealing requirements of the court. *See* Local Rule 9018.

**14.    Return of Documents**

Not later than ~~120~~ 30 days after conclusion of this case and any appeal(s) related to it, any Classified Information, all reproductions of such information, and any notes, summaries, or descriptions of such information in the possession of any of the persons specified in paragraph 2 (except subparagraph 2(a)(iii)) shall be returned to the producing party or destroyed, except as this court may otherwise order or to the extent such information has been used as evidence at any trial or hearing. Notwithstanding this obligation to return or destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any Classified Information.

**15.    Ongoing Obligations**

Insofar as the provisions of this Protective Order, or any other protective orders entered in this case, restrict the communication and use of the information protected by it, such provisions shall continue to be binding after the conclusion of this case, except that (a) there shall be no restriction on documents that are used as exhibits in open court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the court with respect to dissolution or modification of this, or any other, protective order. This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

**16.    Advice to Clients**

This order shall not bar any attorney in the course of rendering advice to such attorney's client with respect to this case from conveying to any party client the attorney's evaluation in a general way of Classified Information produced or exchanged under the terms of this order; provided, however, that in rendering such advice and otherwise communicating with the client,

the attorney shall not disclose the specific contents of any Classified Information produced by another party if such disclosure would be contrary to the terms of this Protective Order.

### 17. Duty to Ensure Compliance

Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of such person to observe the terms of this Protective Order.

### 18. Waiver

Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work product protection is waived by disclosure connected with this case.

### 19. Modification and Exceptions

The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this court modifying this Protective Order.

### 20. No Intention to Modify Section 107 of the Bankruptcy Code

For the avoidance of doubt, nothing in this order is intended to limit or contradict the scope of disclosure required by 11 U.S.C. § 107, and the Court may at any point take such steps to ensure compliance with that section as it deems necessary, either upon its *sua sponte* consideration or upon the request of any entity.

# # #

Prepared and Submitted By:

**DYKEMA GOSSETT PLLC**

Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

and

Aaron M. Kaufman
State Bar No. 24060067
akaufman@dykema.com
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT

Western _____ District of __Texas_____

In re __Orly Genger_____
Debtor

_(Complete if issued in an adversary proceeding)_

Case No. __19-10926-TMD__

Chapter ___7___

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Arie Genger_____
_(Name of person to whom the subpoena is directed)_

☒ _Testimony_: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE   Emmet, Marvin & Martin, LLP<br>120 Broadway, New York, NY 10280 | DATE AND TIME<br>October 4   , 2019 at 9 AM |
|---|---|

The deposition will be recorded by this method: __audio, audiovisual, and/or stenographic means__

☒ _Production_: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
   Please see Schedule A.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __September 16, 2019__

CLERK OF COURT

OR

_____           _John Dellaportas / BK_____
_Signature of Clerk or Deputy Clerk_            _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
     (i) is a party or a party's officer; or
     (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     (i) fails to allow a reasonable time to comply;
     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     (i) disclosing a trade secret or other confidential research, development, or commercial information; or

     (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     (i) expressly make the claim; and
     (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS:

1.      "Appraisals" means appraisals of any and property in which Eric Herschmann and/or the Debtor have a direct or indirect property interest, including, but not limited to an interest held through an entity or entities.

2.      "Arie" means Arie Genger, the father of the Debtor and the father-in-law of the Deponent.

3.      "Bank Statements" means all banking and checking statements of the Deponent for the periods since January 1, 2013.

4.      "Brosers" refers to Arnold Broser and/or David Broser and/or entities in which they have or had an interest and/or exercise control.

5.      "Case" shall mean that action styled *In re Orly Genger*; Case No. 19-10926-tmd; in the United States Bankruptcy Court for the Western District of Texas (Austin Division).

6.      "Condominium" means the property located at 210 Lavaca Street, Unit 1903, Austin, Texas 78701.

7.      "Contingent Lien" means all documents supporting the alleged lien on the Debtor's half-interest in the Condominium as set forth in the Debtor's schedules.

8.      "Credit Cards" means all credit cards or Bank cards used by the Deponent and the Debtor from 2016 to the present.

9.      "Debtor" means Orly Genger, the Chapter 7 Debtor in Case No. 19-10926. .

10.      "Document" or "Documents" means any medium on which intelligence or information can be recorded, maintained or retrieved, including, without limitation, Electronic Data and Electronically Stored Information, the original or a copy thereof in hard copy or electronic format, regardless of the origin and location, of any writing or recording of any type or

description, however produced or reproduced, which is in your or your Representative's (as hereinafter defined) possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine on request or demand, and includes any and all writings and recordings as the term is used in Federal Rule of Evidence 1001 and includes the original (or a copy if the original is not available) and any non-identical copies (whether different from the original because of notes made on the copy or otherwise) and any meda data related thereto.

11.    "Electronic Data" or "Electronically Stored Information" means all information or data in other than traditional paper form, including any information or data that is generated by use of a computer, computer system, or other electronic device, and stored in a non-paper form, even if originally in paper form.  The phrase includes but is not limited to: emails and their attachments, text documents, spreadsheets, databases, data compilations, graphics, photographs, images, audio recordings, video recordings and films, voice mail messages, presentation slides, information from computers, tablets, event data records, tracking microchips, global positioning systems, PDAs, mobile phones, Blackberries, smartphones, and any data generated in connection with emerging technologies.

12.    "Insurance Policies" means any and all personal and/or real property insurance policies held by the Deponent from 2016 to the present and/or policies insuring his or his spouse's property to the extent not held by Deponent.

13.    "Jewelry" means all jewelry transferred to the Debtor from 2014 to the present.

14.    "Petition Date" shall mean July 12, 2019.

15.    "Trusts" means The Orly Genger 2007 Family Trust, The Orly Genger 1993 Trust, and the Arie Genger 1995 Life Insurance Trust.

16.     The terms "relate" or "relating to" meaning mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, pertaining, connected with, embodying, evidencing, constituting, concerning, reporting, purporting, or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

17.     The term "Representative" means and includes any and all agents, employees, servants, officers, directors, attorneys, accountants and consultants who act or have acted on your behalf.

18.     "Schedules" means the Schedules of Assets and Liabilities filed in the Debtor's Chapter 7 case.

19.     The terms "and" or "or" shall be construed either disjunctively or conjunctively or both, as necessary to bring within the scope of any request for admission all responses which might otherwise be construed to be outside the scope.

20.     The singular form of a word should be interpreted as plural and the plural should be interpreted as singular to give the word or words the broadest possible meaning.

21.     "OG Group," means Arie Genger, Eric Herschmann, Orly Genger, Lance Harris, William Fisher, Arnold Broser, and David Broser and any person in the employ, agent, member, or a partner of Raines & Fisher LLP and/or Stein Harris PC.

22.     The "Trump Settlement Agreement" refers to the Settlement Agreement and Release dated as of June 16, 2013 and executed, amongst others, by Arie Genger, Orly Genger, David Broser, Mark Hirsch, and Jules Trump in various capacities.

23.     The "Trump Group" has the meaning ascribed to it in the Trump Settlement Agreement.

**DOCUMENTS REQUESTED:**

In accordance with the foregoing "Instructions" and "Definitions," the Deponent is to produce the following documents:

1.      Any and all documents relating to Appraisals drafted since 2014.

2.      Any and all Appraisals drafted since 2014.

3.      Any and all documents relating to the purchase and/or sale of Jewelry, including receipts, checks, and/or credit card statements.

4.      Any and all Documents related to the purchase, sale, maintenance, transfer, and/or refurbishment of the Debtor's engagement ring.

5.      Any and all contracts and/or agreements between any members of the OG Group (whether or not they also include a non-member) drafted since 2008, including any and all drafts, metadata and electronic copies of same and Documents sufficient to show the approximate date of drafting and/or execution of those contract and/or agreements.

6.      A full and complete copy of the pre-marital agreement between Debtor and her husband, including all drafts, metadata and electronic copies of it and its schedules whether or not finally included in the agreement.

7.      Any written communications between Debtor's counsel on the one hand and her spouse and/or his counsel.

8.      Any Document regarding any transfer of property in and/or out of the Trusts.

9.      Any and all written communications between any members of the OG Group since 2008 whether or not a non OG Group person was part of the communication; except that to the limited extent such communications are:

   a.   (i) between a client and his attorney (ii) covered by the attorney/client privilege, (iii) do not discuss, mention, cite, and/or contain language directly associated with an indebtedness of Orly Genger and/or Arie Genger, AND (iv) do not discuss, mention, cite, and or contain language directly associated with the transfer, creation, or dissolution of a property interest of any person, they are not requested.

   b.   (i) between Debtor and her spouse exclusively, (ii) covered by the marital privilege, AND (iii) do not discuss, mention, cite, and or contain language directly associated with the transfer, creation, or dissolution of a property interest or indebtedness of any person, they are not requested.

10.     Any and all documents drafted since 2007 evidencing, citing, or discussing purported debts owed amongst and between members of the OG Group or entities owned or controlled by members of the OG Group at any time since 2007, including all drafts and

correspondence relating to same, the Metadata and electronic copies and including invoices for services purportedly rendered.

11.    Documents sufficient to evidence the consideration paid in creation of extant debts referred to in the request immediately above.

12.    Documents sufficient to evidence any payments made for the benefit of the Debtor in excess of $5,000 since 2014 including, but not limited to, the payment of monies to purchase gifts and/or pay Debtor's expenses or debts to anyone.

13.    Any and all invoices from Debtor's law firms for services rendered to the Debtor since 2007, and any correspondence regarding those invoices.

14.    Any and all financial statements of the Debtor drafted since 2013.

15.    Any and all reports, analyses, consultations, valuations, or appraisals of Debtor's and/or her spouse's assets and/or liabilities from 2015 to the present.

16.    Any and all agreements, drafts of agreements, and transmittal correspondence of agreements between any members of the OG Group whether or not a non-member is also a party.

17.    Documents and/or records sufficient to show the actual date of drafting of agreements referenced immediately above and Documents sufficient to show the approximate date of their execution.

18.    Any and all communications from and to any entity or individuals regarding any agreements asked for immediately above.

19.    Any and all documents relating to the home in Israel in which Debtor has recently lived, including but not limited to the purchase agreement, any filings prepared for a government authority any communication with any party concerning the home's ownership, use, value, and/or tax status.

20.    Any and all Bank Statements of the Debtor and/or her spouse for 2015 to the present.

21.    Any and all Credit Card Statements for the Debtor and/or her spouse from 2015 to the present.

22.    Any and all written communications with Kasowitz Benson Torrse and Friedman LLP regarding invoices or amounts owed by the Debtor or her spouse including, but not limited to, any documents relating to any payment arrangements contemplated, made, negotiated, or discussed.

23.    All documents related to the acquisition of the Condominium by the Debtor.

24.     Any and all documents exchanged with any entity or individual regarding the Contingent Lien purported held for the benefit of the Deponent.

25.     Any and all documents evidencing letters of intent and/or offers to buy the Debtor's claims by or against Sagi Genger or any of his affiliates.

26.     Any and all documents or correspondence between any member of the OG Group and Julius Trump, Edmund Trump, Mark Hirsch, Trans-Resources LLC or any of their agentsnor affilliates since 2013.

27.     Any and all documents relating to compensation received by Orly Genger and/or Eric Herschmann from 2015 to the present.

28.     Any and all documents relating to the assets owned by the Deponent as of the Petition Date.

29.     Any and all documents that would fill in the information requested in Schedule I, Part 2 for the non-filing spouse of Debtor.

30.     Any and all documents that would fill in the information requested in Schedule J, Part 2 for the non-filing spouse of Debtor

31.     Any and all documents relating to the disposition or planned disposition of about $32 million in settlement proceeds paid or to be paid by the Trump Group in connection with the Trump Settlement Agreement.

32.     Any and all documents evidencing an agreement and/or understanding at any time between any members of the OG Group about the ownership and/or allocation of the $32 million immediately referenced above including, but not limited to, any documents prepared and/or used in connection with the preparation of a filing with the Internal Revenue Service by any person.

33.     All Documents, including all correspondence amongst and between employees of Raines and Fisher LLP relating to the calculation of monies purportedly owed by Orly Genger to either Arie Genger or her spouse.

34.     All Documents evidencing the existence, at any time, of promissory notes executed by Orly Genger in favor of Arie Genger, whether or not those promissory notes are presently enforceable.

35.     All documents evidencing or describing the ownership, assets, liabilities and cash flow of Everything Important LLC, AGOG LLC, OGJM Inc, RDA Ventures LLC, and any other entity in which Orly Genger has held an ownership interest (directly or indirectly) for every year since 2013.

36.     All Documents evidencing the actual date of drafting and/or execution of any document evidencing and/or effecting the transfer of any property interest and/or ownership by Orly Genger in any asset to any member of the OG Group or any entity owned controlled and/or existing for the benefit of any member of the OG Group since 2016 including, but not limited to,

any transfer to a trust in which she was or is a beneficiary and any transfer to Arie Genger of ownership in any entity.

37.     Any document reflecting ownership in any entity (directly or indirectly) by more than two members of the OG Group at any time since 2008, excluding entities in which David Broser and Arnold Broser have an interest and no other member of the OG Group does.

38.     All documents filed by Orly Genger with the Internal Revenue Service or other tax authority anywhere in the world since 2016.

39.     Records of air travel by Orly Genger since January 2018.

40.     Any record kept Orly Genger and/or her spouse's whereabouts since 2016.

41.     Documents sufficient to reflect the number and identity of clients of Kasowitz, Benson, and Torres LLP who have (i) failed to actually pay any fees for over 30 months, (ii) continued to be actively serviced in litigation for that period, (iii) accumulated debts of over $1 million and (ii) were not pro bono or contingency fee clients during the past ten years.

42.     Documents sufficient to detail the ultimate disposition, if any, of the indebtedness cited immediately above and the special relationship those clients might have had with the firm and/or its partners and/or the public.

43.     Trust agreement and all other trust formation documents and financial statements for Orly Genger 2007 Family Trust.

44.     All communications between Lance Harris or the Stein & Harris law firm, on the one hand, and Bill Fischer or the Raines & Fischer accounting firm, on the other hand, concerning any alleged indebtedness owed by Orly Genger to Arie Genger or Eric Herschmann.

# EXHIBIT C

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
DALIA GENGER,                                          :
                                                       :
                  Plaintiff,                           :
                                                       :
                  -v-                                  :
                                                       :
SAGI GENGER,                                           :
                                                       :
                  Defendant/Third-Party Plaintiff,     :
                                                       :
                  -v-                                  :
                                                       :
ORLY GENGER,                                           :
                                                       :
                  Third-Party Defendant.               :
-------------------------------------------------------X

No. 17-cv-08181-VSB-DCF

**PROTECTIVE ORDER**

Sagi Genger and Orly Genger having agreed to the following terms of confidentiality,

and the Court having found that good cause exists for the issuance of an appropriately-tailored

confidentiality order to govern the post-judgment discovery phase of the third-party action

brought by Sagi Genger against Orly Genger, it is therefore hereby

ORDERED that Sagi Genger and Orly Genger shall adhere to the following terms, upon

pain of sanctions and contempt:

1.      Any person subject to this Order who receives from any other person any

"Discovery Material" (*i.e.*, information of any kind provided in the course of post-judgment

discovery in this action) that is designated as "Confidential" pursuant to the terms of this Order

shall not disclose such Confidential Discovery Material to anyone else except as expressly

permitted hereunder.

2.      The person producing any given Discovery Material may designate as

Confidential such material as consists of:

(a)     previously nondisclosed financial information (including without limitation tax
        returns, net worth statements, financial account statements; accountant work
        papers and communications, *etc.*)

(b)     previously nondisclosed material relating to ownership or control of or interest
        in any asset, real estate, business entity or trust;

(c)     previously nondisclosed business plans, product development
        information, or marketing plans;

(d)     any information of a personal or intimate nature regarding any
        individual; or

(e)     any other category of information hereinafter given confidential status by
        the Court.

3.      With respect to the Confidential portion of any Discovery Material other than
deposition transcripts and exhibits, the producing person or that person's counsel may designate
such portion as "Confidential" by stamping or otherwise clearly marking as "Confidential" the
protected portion in a manner that will not interfere with legibility or audibility, and by also
producing for future public use another copy of said Discovery Material with the confidential
information redacted. With respect to deposition transcripts and exhibits, a producing person or
that person's counsel may indicate on the record that a question calls for Confidential
information, in which case the transcript of the designated testimony shall be bound in a separate
volume and marked "Confidential Information Governed by Protective Order" by the reporter.

4.      Confidential Discovery Material concerning the ownership of the home in Tel
Aviv, Israel shall be designated by marking the material "Confidential – Attorneys' Eyes Only."
In addition to the other protections and use-restrictions described herein, including paragraph 6

2

below, material designated according to this paragraph may be viewed only by (a) legal counsel for Sagi Genger who are representing him in connection with the enforcement of the Judgment (defined below), (b) Hebrew translators, and (c) practitioners of Israeli real estate law other than David Parnes or his counsel, and shall not be disclosed (i) to Sagi Genger himself, whether or not he is or becomes a licensed attorney and whether or not he is serving as his own legal counsel, or (ii) any other individual or party. "Confidential – Attorneys' Eyes Only" Discovery Material shall not be shown to fact or expert witnesses pursuant to the other provisions of this Protective Order, absent further leave of this Court.

5.     All Confidential Discovery Material – including Confidential Discovery Material designated as "Attorneys' Eyes Only" – may be used solely in this action (including for discovery disputes and fee applications), and/or in any other proceeding or action brought to enforce or collect the final judgment against Orly Genger, dated August 17, 2018 (ECF Doc. No. 112) (the "Judgment"), including locating and levying against any assets of Orly Genger and setting aside any fraudulent conveyances made by Orly Genger (so long as the sole purpose of such fraudulent conveyance action is to set aside a conveyance that would enable Sagi Genger to enforce the Judgment). If the fraudulent conveyance action is not solely for the purpose of judgment enforcement, Sagi Genger must make an application to this Court for permission to modify this Protective Order to use the Confidential Discovery Material for a purpose other than that which is contemplated herein.

6.     No person subject to this Order other than the producing person shall disclose any of the Discovery Material designated by the producing person as Confidential to any other person whomsoever, except to:

3

(a)     Sagi Genger (except with respect to materials designated as Confidential –
        Attorneys' Eyes Only; *see* paragraph 4)

(b)     counsel retained by Sagi Genger specifically for this action and who are
        representing him in connection with enforcement of the Judgment, including any
        paralegal, clerical and other assistant employed by such counsel and assigned to
        this matter;

(c)     as to any document, its author, its addressee, and any other person indicated on
        the face of the document as having received a copy;

(d)     any witness who counsel for a party in good faith believes may be called to testify
        at trial or deposition in this action, provided such person has first executed a Non-
        Disclosure Agreement in the form annexed as an Exhibit hereto;

(e)     any person retained by a party to serve as an expert witness or otherwise provide
        specialized advice to counsel in connection with this action, provided such person
        has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit
        hereto;

(f)     stenographers engaged to transcribe depositions conducted in this
        action; and

(g)     the Court and its support personnel.

7.      Prior to any disclosure of any Confidential Discovery Material to any person
referred to in subparagraphs 5(d) or 5(e) above, such person shall be provided by counsel with a
copy of this Protective Order and shall sign a Non-Disclosure Agreement in the form annexed as
an Exhibit hereto stating that that person has read this Order and agrees to be bound by its terms.
Said counsel shall retain each signed Non-Disclosure Agreement, hold it in escrow, and produce

4

it to opposing counsel either prior to such person being permitted to testify (at deposition or trial) or at the conclusion of the case, whichever comes first.

8. If at any time prior to the trial of this action, a producing person realizes that some portion[s] of Discovery Material that that person previously produced without limitation should be designated as Confidential or Confidential – Attorneys' Eyes Only, he may so designate by so apprising all parties in writing, and such designated portion[s] of the Discovery Material will thereafter be treated as Confidential under the terms of this Order.

9. All Confidential Discovery Material filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose such Confidential Discovery Material, shall be filed under seal with the Clerk of the Court and kept under seal until further order of the Court. The parties will use their best efforts to minimize such sealing. In any event, any party filing a motion or any other papers with the Court under seal shall also publicly file a redacted copy of the same, via the Court's Electronic Case Filing system, that redacts only the Confidential Discovery Material itself, and not text that in no material way reveals the Confidential Discovery Material.

10. Any party who either objects to any designation of confidentiality, or who, by contrast, requests still further limits on disclosure may at any time serve upon counsel for the designating person a written notice stating with particularity the grounds of the objection or request. If agreement cannot be reached promptly, counsel for all affected persons will convene a joint telephone call with the Court to obtain a ruling.

11. The Court retains unfettered discretion whether or not to afford confidential treatment to any Confidential Document or information contained in any Confidential Document

submitted to the Court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court.

12. Each person who has access to Discovery Material that has been designated as Confidential shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

13. If, in connection with this litigation, a party inadvertently discloses information subject to a claim of attorney-client privilege or attorney work product protection ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter.

14. If a disclosing party makes a claim of inadvertent disclosure, the receiving party shall, within five business days, return or destroy all copies of the Inadvertently Disclosed Information, and provide a certification of counsel that all such information has been returned or destroyed.

15. Within five business days of the notification that such Inadvertently Disclosed Information has been returned or destroyed, the disclosing party shall produce a privilege log with respect to the Inadvertently Disclosed Information.

16. The receiving party may move the Court for an Order compelling production of the Inadvertently Disclosed Information. The motion shall be filed under seal, and shall not assert as a ground for entering such an Order the fact or circumstances of the inadvertent production.

6

17.     The disclosing party retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request an *in camera* review of the Inadvertently Disclosed Information.

18.     This Protective Order shall survive the termination of the litigation. Within 30 days of the final disposition of this litigation, all copies of Confidential Discovery Materials shall be promptly returned to the producing person, or, upon permission of the producing person, destroyed, the completion of which to be confirmed in writing by the receiving party.

19.     This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

20.     Nothing herein shall prevent Sagi Genger from using, without restriction, any materials that are publicly available, even if the same materials were previously obtained, in whole or in part, from Orly Genger and designated "Confidential" hereunder so long as that Confidential material was made public by sources other than Sagi or people working at his direction. In addition, if a document is produced without confidentiality or other use restriction in another case, then such document can be used without the restrictions set forth in this Protective Order. However, a document designated "Confidential" hereunder does not lose its confidentiality restriction merely because it is thereafter subpoenaed from another source that does not designate such document as confidential; and if Sagi Genger subpoenas third parties to obtain additional copies of material already designated Confidential by Orly Genger, then Sagi Genger shall notify Orly Genger sufficiently in advance to permit her to designate the additional materials Confidential pursuant to the terms of this Protective Order.

7

21. Any third party that produces documents in this case shall have the right to designate its production "Confidential" to the same extent as the parties to this Protective Order, without having to execute this Protective Order.

SO STIPULATED AND AGREED.

KELLY DRYE & WARREN LLP

John Dellaportas
Kristina Allen
101 Park Avenue
New York, New York 10178
(212) 808-5000

*Attorneys for Sagi Genger*

KASOWITZ BENSON TORRES LLP

Michael Paul Bowen
Andrew R. Kurland
1633 Broadway
New York, New York 10019
(212) 506-1903

*Attorneys for Orly Genger*

SO ORDERED. 2/7/19

Hon. Debra C. Freeman
United States Magistrate Judge

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
dalia Genger,                                :
                                             :          No. 17-cv-08181-VSB-DCF
            Plaintiff,                       :
                 -v-                         :          **NON-DISCLOSURE**
                                             :          **AGREEMENT**
sagi Genger,                                 :
                                             :
            Defendant/Third-Party Plaintiff, :
                                             :
                 -v-                         :
                                             :
ORLY GENGER,                                 :
                                             :
            Third-Party Defendant.           :
-------------------------------------------------------X

I, _____, acknowledge that I have read and understand the

Protective Order in this action governing the non-disclosure of those portions of Discovery

Material that have been designated as Confidential. I agree that I will not disclose such

Confidential Discovery Material to anyone other than for purposes of this litigation and that at

the conclusion of the litigation I will return all discovery information to the party or attorney

from whom I received it. By acknowledging these obligations under the Protective Order, I

understand that I am submitting myself to the jurisdiction of the United States District Court for

the Southern District of New York for the purpose of any issue or dispute arising hereunder and

that my willful violation of any term of the Protective Order could subject me to punishment for

contempt of Court.

Dated: _____          _____

# EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| | § | |
| IN RE: | § | CHAPTER 7 |
| | § | |
| ORLY GENGER, | § | CASE NO. 19-10926-TMD |
| | § | |
| Debtor. | § | |

**PLEASE TAKE NOTICE** that pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure, applicable in the above-referenced case pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure, Arie Genger ("Arie" or "AG") hereby responds to the Subpoena allegedly delivered by John Dellaportas, as counsel of record for Sagi Genger ("Sagi" or "SG").

Dated: October 7, 2019

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Deborah D. Williamson*
    Deborah D. Williamson
    State Bar No. 21617500
    dwilliamson@dykema.com
    Danielle N. Rushing
    State Bar No. 24086961
    drushing@dykema.com
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    Telephone: (210) 554-5500
    Facsimile: (210) 226-8395

    and

    Aaron M. Kaufman
    State Bar No. 24060067
    akaufman@dykema.com
    Comerica Bank Tower
    1717 Main Street, Suite 4200
    Dallas, Texas 75201
    Telephone: (214) 462-6400
    Facsimile: (214) 462-6401

**ATTORNEYS FOR ARIE GENGER**

## RESERVATION OF RIGHTS AND OBJECTIONS TO SUBPOENA AS A WHOLE

Arie Genger ("Arie" or "AG") objects to the Subpoena to Testify at Deposition in a Bankruptcy Case (the "Subpoena") as deficient for the following reasons:

(1)    The Subpoena was not properly served in accordance with FRCP 45(b).

(2)    The Subpoena does not allow Arie a reasonable time to comply.

(3)    The Subpoena does not comply with FRCP 45(c)(1) as it requires compliance well beyond the 100 mile geographical limitations authorized under Rule 45(c)(1).

Subject to and without waiving any of the objections contained herein, or in the Motion for Protective Order filed substantially contemporaneously, Arie is willing to produce non-objectionable, readily available documents in existence as they have been previously produced or, to the extent not previously produced, as they are kept in the ordinary course of business.

## OVERVIEW

Sagi Genger asserts that he served four subpoenas on his father (Arie), his brother-in-law (Eric Herschmann and a partner at Kasowitz, Benson and Torres LLP) (sometimes referred to as "KBT"), his father's accounting firm (Raines & Fischer LLP) and his father's law firm (Stein & Harris) (collectively, the "Sagi September Subpoenas"). The Definitions and the Documents Requested (Schedule A) on all four of the Sagi September Subpoenas are absurdly identical. For example, Arie Genger (Document Request no. 41) was allegedly subpoenaed to produce "[d]ocuments sufficient to reflect the number and identity of clients of Kasowitz, Benson, and Torres LLP who have (i) failed to actually pay any fees for over 30 months, (ii) continued to be actively serviced in litigation for that period; (iii) accumulated debts of over $1 million and (ii) (*sic*) were not pro bono or contingency fee clients during the past ten years." Counsel for Sagi has refused to withdraw any of the 44 requests.

The alleged service of the Subpoena on Arie is part of a pattern. Despite (i) having knowledge of where his father resides in Florida or (ii) asking that the undersigned counsel for Arie accept service, Sagi attempted to effectuate service of the Subpoena by dropping it off after regular business hours at 5:04 p.m. with "John Doe (Refused Full Name), Security, at 104 W. 40th Street" in New York City. The description for John Doe (Color: Black: Hair: Black App. Age 35 App. Ht: 6") does not by any stretch of the imagination match the description of Mr. Arie Genger. The Subpoena was also allegedly mailed to "the place of business of the WITNESS with no street address." There is no address for any alleged place of business. See Exhibit A attached hereto. As of the date of the filing of this Objection, Mr. Arie Genger has not received a copy of the Subpoena in the United States Mail. On information and belief, 104 W. 40th Street has over 200,000 square feet spread over 20 floors.

Regardless, Arie Genger has agreed to respond to the Document Requests, reserving all rights to object and without conceding or otherwise admitting that the Subpoena has been served. Mr. Genger is also willing to be deposed either in Florida (where he resides) or in Austin (where the Case is pending) at a mutually convenient time. Compliance in New York does not comport with Rule 45(c)(1).

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

The following Objections shall have the same force and effect as if set forth in full in response to each of the separate numbered Document Requests.

1.      Arie objects to Sagi's "Definitions" to the extent they attempt to impose obligations greater than those imposed under the Federal Rules of Civil Procedure, applicable here under the Federal Rules of Bankruptcy Procedure.

2.      Arie objects to the definition of "OG Group".

3.      Arie objects to the definition of "Trusts".  Sagi is seeking information related to The Orly Genger 2007 Family Trust, The Orly Genger 1993 Trust and the Arie Genger 1995 Life Insurance Trust.  Globally, Arie objects to any party producing any documentation or other information related to The Orly Genger 2007 Family Trust (the "Family Trust").  However, Arie is willing to produce a copy of the Family Trust agreement for an *in camera* review by this Court.

4.      Arie objects to each Request to the extent it seeks information not relevant to the *Judgment Creditor Sagi Genger's Motion to Dismiss Bankruptcy Case or, Alternatively, to Transfer Venue, and Memorandum of Law in Support* [Doc. No. 32] (the "<u>Motion to Dismiss</u>") and is not reasonably calculated to lead to the discovery of admissible evidence for any hearing or deposition in connection with the Motion to Dismiss or any other matter relevant to the Case.  FRCP 26(b)(1).  Arie provides more specificity of this objection below.

5.      Arie objects to many of the Requests as being unreasonably cumulative and duplicative.  FRCP 26(b)(2)(C)(i).  Arie provides more specificity of this objection below.

6.      Arie objects to each Request to the extent it is unduly burdensome or the documentation could be obtained from another creditor or person involved in the Case.  FRCP 26(b)(2)(C)(ii).  Arie provides more specificity of this objection below.

7.      Arie's responses are based upon, and therefore limited by, records and information in his possession, still in existence, presently recollected and discovered in the course of preparing these responses.

8.      All objections herein are made without prejudice to or waiver of Arie's right to further object on all appropriate grounds to producing information, either prior to or at the time the information is provided.  Arie also reserves the right to supplement or amend these objections

and responses. Further, Arie reserves the right to seek a protective order from the Bankruptcy Court to prevent further abusive discovery practices.

## RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS

1.      Any and all documents relating to Appraisals drafted since 2014.

**ANSWER:**    Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all documents relating to Appraisal," which is itself a defined term that includes "any and [all] property in which Eric Herschmann and/or the Debtor have a direct or indirect property interest, including, but not limited to an interest held through an entity or entities." Arie further objects to this request as not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case.

**DOCUMENTS TO BE PRODUCED**:      Subject to and without waiving the foregoing objections, none.

2.      Any and all Appraisals drafted since 2014.

**ANSWER:**    Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all" Appraisals. Arie further objects to this request as unreasonably cumulative and duplicative of the prior Request. Arie also objects to this Request as not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matters relevant to the Case.

**DOCUMENTS TO BE PRODUCED**:      Subject to and without waiving the foregoing objections, none.

3.      Any and all documents relating to the purchase and/or sale of Jewelry, including receipts, checks, and/or credit card statements.

**DOCUMENTS TO BE PRODUCED:**      None

4. Any and all Documents related to the purchase, sale, maintenance, transfer, and/or refurbishment of the Debtor's engagement ring.

**DOCUMENTS TO BE PRODUCED:** None.

5. Any and all contracts and/or agreements between any members of the OG Group (whether or not they also include a non-member) drafted since 2008, including any and all drafts, metadata and electronic copies of same and Documents sufficient to show the approximate date of drafting and/or execution of those contract and/or agreements.

**ANSWER:** Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all" contracts and/or agreements among an expansive group of parties. For example, it seeks all contracts, drafts, metadata generated over 11 years. Further, it seeks such documentation for the contracts, if any, between members of the alleged OG Group which have no bearing on the Debtor, her bankruptcy case, any alleged assets of the Debtor, or any alleged transfers by or to the Debtor. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie also objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other relevant matter in the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_", subject to the same confidentiality provisions as ordered previously. Such documents include, among other things, the following:

- The Debtor's promissory notes to Arie

- Escrow agreement dated March 31, 2017

- Bill of Sale regarding Everything Important ("EI") dated January 1, 2017

- EI Board of Managers Written Consent dated September 17, 2018

- EI limited liability company Agreement dated February 11, 2010

- 2013 Settlement Agreement, and First Amendment to that agreement

- Two $7.5 million notes in connection with 2013 Settlement Agreement

- Subordination Agreement signed on December 31, 2016

- Genger Litigation Trust Agreement ("GLTA") dated June 28, 2012

- Amendment to Credit Agreement and GLTA

Subject to the foregoing, Arie is willing to produce a copy of the Family Trust Agreement to the Court for an *in camera* review to determine whether such documents are responsive and likely to lead to the discovery of other admissible evidence in connection with the Motion to Dismiss.

6.      A full and complete copy of the pre-marital agreement between Debtor and her husband, including all drafts, metadata and electronic copies of it and its schedules whether or not finally included in the agreement.

**DOCUMENTS TO BE PRODUCED:**      None.

7.     Any written communications between Debtor's counsel on the one hand and her spouse and/or his counsel.

**ANSWER:**     Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any" written communications, without narrowing the scope or the period of time.  Over the 10+ years of litigation, the Debtor and her spouse have each engaged numerous attorneys for various purposes.  Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement.  Arie also objects to this Request because its broad scope seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other matter relevant to the Case.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:**  None

8.     Any Document regarding any transfer of property in and/or out of the Trusts.

**ANSWER**:     Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any" Document regarding "any transfer" in or out of the Trusts.  Arie objects to production of any documents related to the Family Trust.  As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the

Motion to Dismiss or any other matter which may be relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" and "AGA_". Such documents include bank records responsive to this request.

9.      Any and all written communications between any members of the OG Group since 2008 whether or not a non OG Group person was part of the communication; except that to the limited extent such communications are:

(a)      (i) between a client and his attorney (ii) covered by the attorney/client privilege, (iii) do not discuss, mention, cite, and/or contain language directly associated with an indebtedness of Orly Genger and/or Arie Genger, AND (iv) do not discuss, mention, cite, and or contain language directly associated with the transfer, creation, or dissolution of a property interest of any person, they are not requested.

(b)      (i) between Debtor and her spouse exclusively, (ii) covered by the marital privilege, AND (iii) do not discuss, mention, cite, and or contain language directly associated with the transfer, creation, or dissolution of a property interest or indebtedness of any person, they are not requested.

**ANSWER**:      Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all written communications" among an expansive group of individuals, many of whom have dealings wholly unrelated to the Debtor and her assets or liabilities. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses communications responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications,

particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other matter relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case as well as other requests in the Subpoena.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" and "AGA_". Such documents included communications among Arie and other members of the OG Group regarding the Debtor's liabilities.

10. Any and all documents drafted since 2007 evidencing, citing, or discussing purported debts owed amongst and between members of the OG Group or entities owned or controlled by members of the OG Group at any time since 2007, including all drafts and correspondence relating to same, the Metadata and electronic copies and including invoices for services purportedly rendered.

**ANSWER:** Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all documents drafted since 2007" relating to debts owed to or by an expansive group of individuals not necessarily related to the Debtor or her Case. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such

depositions and may still not be in Arie's possession. Arie also objects to this Request to the extent it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other matter relevant to the Case, *e.g.* debts owed by or to the Debtor. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included all promissory notes evidencing the Debtor's indebtedness to Arie.

11. Documents sufficient to evidence the consideration paid in creation of extant debts referred to in the request immediately above.

**ANSWER**: Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "documents sufficient to evidence" liabilities related to the overbroad request above, which itself included "any and all documents drafted since 2007" relating to debts owed to an expansive group of individuals not necessarily related to the Debtor or her Case. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie also objects to this Request to the extent it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other matter relevant to the Case, *e.g.* debts owed by or to the Debtor. Arie further objects to this request as

11

unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included all promissory notes evidencing the Debtor's indebtedness to Arie. On information and belief, more responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris PC.

12.     Documents sufficient to evidence any payments made for the benefit of the Debtor in excess of $5,000 since 2014 including, but not limited to, the payment of monies to purchase gifts and/or pay Debtor's expenses or debts to anyone.

**ANSWER**:     Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "documents sufficient to evidence" payments made for the Debtor's benefit. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included all promissory notes evidencing the Debtor's indebtedness to Arie. On information and belief, more responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris PC.

13. Any and all invoices from Debtor's law firms for services rendered to the Debtor since 2007, and any correspondence regarding those invoices.

**ANSWER**: Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all invoices" since 2007 and "any correspondence regarding those invoices." Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included all promissory notes and related e-mails evidencing the Debtor's indebtedness to Arie. On information and belief, more responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris PC.

14. Any and all financial statements of the Debtor drafted since 2013.

**DOCUMENTS TO BE PRODUCED**: None.

15. Any and all reports, analyses, consultations, valuations, or appraisals of Debtor's and/or her spouse's assets and/or liabilities from 2015 to the present.

**DOCUMENTS TO BE PRODUCED:** None.

16. Any and all agreements, drafts of agreements, and transmittal correspondence of agreements between any members of the OG Group whether or not a non-member is also a party.

**ANSWER:** Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all agreements, drafts of agreements, and transmittal correspondence of agreements" among an expansive group with no limitation on the time frame. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement.

Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" as described in response to Request 5. Subject to the foregoing, Arie will agree to produce a copy of the Family Trust Agreement to the Court for an *in camera* review to determine whether such documents are responsive and likely to lead to the discovery of other admissible evidence in connection with the Motion to Dismiss.

17. Documents and/or records sufficient to show the actual date of drafting of agreements referenced immediately above and Documents sufficient to show the approximate date of their execution.

**ANSWER:** Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "documents and/or records" sufficient to show the actual drafting of an already overbroad definition of "any and all agreements, drafts of agreements, and transmittal correspondence of agreements" among an expansive group. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same

counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other matter relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" as described in response to Requests 5 and 16. Subject to the foregoing, Arie is willing to produce a copy of the Family Trust Agreement to the Court for an *in camera* review to determine whether such documents are responsive and likely to lead to the discovery of other admissible evidence in connection with the Motion to Dismiss.

18. Any and all communications from and to any entity or individuals regarding any agreements asked for immediately above.

**ANSWER**: Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all communications from and to any entity or individuals" with no limitation on the time frame. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the

extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" as described in response to Requests 5, 16 and 17.

19.     Any and all documents relating to the home in Israel in which Debtor has recently lived, including but not limited to the purchase agreement, any filings prepared for a government authority any communication with any party concerning the home's ownership, use, value, and/or tax status.

**DOCUMENTS TO BE PRODUCED**:     None.

20.     Any and all Bank Statements of the Debtor and/or her spouse for 2015 to the present.

**DOCUMENTS TO BE PRODUCED:**     None.

21.     Any and all Credit Card Statements for the Debtor and/or her spouse from 2015 to the present.

**DOCUMENTS TO BE PRODUCED:**     None.

22.     Any and all written communications with Kasowitz Benson Torres and Friedman LLP regarding invoices or amounts owed by the Debtor or her spouse including, but not limited

to, any documents relating to any payment arrangements contemplated, made, negotiated, or discussed.

**ANSWER**:  Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all invoices" since 2007 and "any correspondence regarding those invoices."  Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement.  As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:**  Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included all promissory notes and related e-mails evidencing the Debtor's indebtedness to Arie.  On information and belief, more responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Eric Herschmann, Raines & Fischer LLP or Stein Harris PC.

23. All documents related to the acquisition of the Condominium by the Debtor.

**DOCUMENTS TO BE PRODUCED**: None.

24. Any and all documents exchanged with any entity or individual regarding the Contingent Lien purported held for the benefit of the Deponent.

**DOCUMENTS TO BE PRODUCED:** None.

25. Any and all documents evidencing letters of intent and/or offers to buy the Debtor's claims by or against Sagi Genger or any of his affiliates.

**DOCUMENTS TO BE PRODUCED**: None.

26. Any and all documents or correspondence between any member of the OG Group and Julius Trump, Edmund Trump, Mark Hirsch, Trans-Resources LLC or any of their agents nor affiliates since 2013.

**ANSWER:** Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any" written communications, without narrowing the scope. Arie objects to this Request to the extent it seeks privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. Arie also objects to this Request because its broad scope seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any other matter relevant to the Case. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case, particularly given that Sagi has received the underlying 2013 settlement agreement among the parties listed in this request.

**DOCUMENTS TO BE PRODUCED:** None

27. Any and all documents relating to compensation received by Orly Genger and/or Eric Herschmann from 2015 to the present.

**DOCUMENTS TO BE PRODUCED:**     None.

28. Any and all documents relating to the assets owned by the Deponent as of the Petition Date.

**ANSWER**:     As drafted, Deponent can only be construed to mean Arie Genger.  Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all documents" relating to any assets owned by Arie (a non-debtor).  Arie further objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case.

**DOCUMENTS TO BE PRODUCED:**     None.

29. Any and all documents that would fill in the information requested in Schedule I, Part 2 for the non-filing spouse of Debtor.

**DOCUMENTS TO BE PRODUCED**:     None.

30. Any and all documents that would fill in the information requested in Schedule J, Part 2 for the non-filing spouse of Debtor.

**DOCUMENTS TO BE PRODUCED**:     None.

31. Any and all documents relating to the disposition or planned disposition of about $32 million in settlement proceeds paid or to be paid by the Trump Group in connection with the Trump Settlement Agreement.

**DOCUMENTS TO BE PRODUCED**:     Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all documents" without

20

limiting the time period for such request. Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included excerpts of a tax return responsive to this request.

32. Any and all documents evidencing an agreement and/or understanding at any time between any members of the OG Group about the ownership and/or allocation of the $32 million immediately referenced above including, but not limited to, any documents prepared and/or used in connection with the preparation of a filing with the Internal Revenue Service by any person.

**ANSWER:** Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all documents evidencing an agreement and/or understanding at any time" among an expansive group of individuals, with no limitation on the time frame. Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may

still not be in Arie's possession.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:**  Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included excerpt of a tax return responsive to this request.  On information and belief, responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP.

33.    All Documents, including all correspondence amongst and between employees of Raines & Fisher LLP relating to the calculation of monies purportedly owed by Orly Genger to either Arie Genger or her spouse.

**ANSWER:**  Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "all Documents, including all correspondence" within an accounting firm retained by both Arie and the Debtor, with no limitation on the time frame.  As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.

**DOCUMENTS TO BE PRODUCED:**  Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with

orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included written communications and charts responsive to this request. On information and belief, responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris, PC.

34. All Documents evidencing the existence, at any time, of promissory notes executed by Orly Genger in favor of Arie Genger, whether or not those promissory notes are presently enforceable.

**ANSWER**: Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "all Documents", with no limitation on the time frame. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena. On information and belief, responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris, PC.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included the promissory notes and evidence of the prior notes' existence.

35.     All documents evidencing or describing the ownership, assets, liabilities and cash flow of Everything Important LLC, AGOG LLC, OGJM Inc, RDA Ventures LLC, and any other entity in which Orly Genger has held an ownership interest (directly or indirectly) for every year since 2013.

**ANSWER**:     Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "all Documents", with no limitation on the time frame.  As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession.  Arie further objects to this request as not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.  On information and belief, responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris, PC.

**DOCUMENTS TO BE PRODUCED:**     Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included corporate documents related to Everything Important LLC.

36.     All Documents evidencing the actual date of drafting and/or execution of any document evidencing and/or effecting the transfer of any property interest and/or ownership by Orly Genger in any asset to any member of the OG Group or any entity owned controlled and/or

existing for the benefit of any member of the OG Group since 2016 including, but not limited to, any transfer to a trust in which she was or is a beneficiary and any transfer to Arie Genger of ownership in any entity.

**ANSWER**: Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "all Documents", with no limitation on the time frame. As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena. Arie further objects to this request as not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Bankruptcy Case. On information and belief, responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris, PC.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included documents related to transfers of equity interests in Everything Important LLC.

37. Any document reflecting ownership in any entity (directly or indirectly) by more than two members of the OG Group at any time since 2008, excluding entities in which David Broser and Arnold Broser have an interest and no other member of the OG Group does.

**ANSWER**:   Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "all Documents", from an eleven (11) year period.  As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses documents responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case and other requests within the Subpoena.  Arie further objects to this request as not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case.  On information and belief, responsive documents can be obtained, or have already been obtained, by Sagi through other persons, including Raines & Fischer LLP or Stein Harris, PC.

**DOCUMENTS TO BE PRODUCED:**   Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" which included documents related to transfers of equity interests in Everything Important LLC.

38.    All documents filed by Orly Genger with the Internal Revenue Service or other tax authority anywhere in the world since 2016.

**DOCUMENTS TO BE PRODUCED:**      None.

39.    Records of air travel by Orly Genger since January 2018.

**DOCUMENTS TO BE PRODUCED:**      None.

40.    Any record kept [*sic*] Orly Genger and/or her spouse's whereabouts since 2016.

**DOCUMENTS TO BE PRODUCED:**      None.

41. Documents sufficient to reflect the number and identity of clients of Kasowitz, Benson, and Torres LLP who have (i) failed to actually pay any fees for over 30 months, (ii) continued to be actively serviced in litigation for that period, (iii) accumulated debts of over $1 million and (iv) were not pro bono or contingency fee clients during the past ten years.

**DOCUMENTS TO BE PRODUCED:** None.

42. Documents sufficient to detail the ultimate disposition, if any, of the indebtedness cited immediately above and the special relationship those clients might have had with the firm and/or its partners and/or the public.

**DOCUMENTS TO BE PRODUCED**: None.

43. Trust agreement and all other trust formation documents and financial statements for Orly Genger 2007 Family Trust.

**ANSWER**: Arie objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss. Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case.

**DOCUMENTS TO BE PRODUCED:** Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_" as described in response to Requests 5, 16, 17 and 18. Subject to the foregoing, Arie will agree to produce a copy of the Family Trust Agreement to the Court for an *in camera* review to determine whether such documents are responsive and likely to lead to the discovery of other admissible evidence in connection with the Motion to Dismiss.

44.     All communications between Lance Harris or the Stein & Harris law firm, on the one hand, and Bill Fischer or the Raines & Fischer accounting firm, on the other hand, concerning any alleged indebtedness owed by Orly Genger to Arie Genger or Eric Herschmann.

**ANSWER**:     Arie objects to this request as overly broad and unduly burdensome in that it requests that Arie produce "any and all written communications" among an expansive group of individuals, many of whom have dealings wholly unrelated to the Debtor and her assets or liabilities.  As evident from the exhibits used by Sagi or his counsel in prior depositions, Sagi already possesses communications responsive to this Request which were not in Arie's possession prior to such depositions and may still not be in Arie's possession.  Arie objects to this Request to the extent it seeks attorney-client privileged or confidential communications, particularly to the extent Arie was represented by the same counsel, or to the extent any communications were protected under applicable law by a common defense or joint defense doctrine or agreement.  Arie also objects to this Request as it seeks documents that are not relevant to the Motion to Dismiss or likely to lead to admissible evidence for purposes of the hearing on the Motion to Dismiss or any matter relevant to the Case.  Arie further objects to this request as unreasonably cumulative and duplicative of prior discovery taken before the commencement of the Case as well as other requests in the Subpoena.

**DOCUMENTS TO BE PRODUCED:**     Subject to and without waiving the foregoing objections, and upon entry of a protective order providing protections that are consistent with orders entered in prior matters among the same parties, Arie is willing to re-produce documents previously produced in March 2019 bearing Bates labels "AGENGER_".  Such documents included communications among Arie and other members of the OG Group regarding the Debtor's liabilities.