IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CHAPTER 7 |
| ORLY GENGER, | § § | CASE NO. 19-10926-TMD |
| Debtor. | § | |

| | | |
|---|---|---|
| SAGI GENGER and TPR INVESTMENT ASSOCIATES, INC., | § § § | |
| vs. | § § | ADVERSARY NO. _____ |
| ORLY GENGER | § | |

**SAGI GENGER'S AND TPR INVESTMENT ASSOCIATES, INC.'S
OBJECTION TO THE DISCHARGE AND DISCHARGEABILITY OF ORLY GENGER**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUTPCY JUDGE:

Sagi Genger ("Sagi"), judgment creditor, and TPR Investment Associates, Inc. ("TPR"), creditor and party in interest (collectively, the "Plaintiffs") timely file this objection to the discharge and alternatively to the dischargeabilty of the debt and claims owed Plaintiffs.

### I. PRELIMINARY STATEMENT

1. In an abundance of caution and to preserve Plaintiffs' rights to object to discharge and dischargeability, the following objection to discharge and dischargeability is filed. It is the parties' understanding that the Court will be entering the Bridge Order extending the October 15, 2019 deadline to object to discharge/dischargeability, but it has not been entered as of this time. Plaintiff's intend to file an amended objection to fully set forth additional facts.

2. *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016) is instructive on the relief sought of the denial of the Debtor's discharge:

> "The term "actual fraud" in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected *without a false representation*."

Sagi is a direct injured person by Orly's conspiracy and fraud and has a right to assert that claim. As a direct creditor, Sagi objects to the discharge and dischargeability of this Debtor (herein "Debtor" or "Orly") for actual fraud in the fraudulent transfer of all funds she monetized for $32 million paid by this Debtor to insiders with the actual intent to hinder, delay and defraud Sagi, a creditor. As significant, the fraudulently transferred funds were encumbered with a constructive trust under New York law, and recognized in the Fifth Circuit that "……the imposition of a constructive trust is a potent remedy, as it gives the successful claimant priority over the debtor's unsecured creditors; …We look to state law to determine whether a party has adequately demonstrated that property is held in constructive trust for another."[1]

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).

4. This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (J) as more particularly set out herein below.

5. This objection is filed pursuant to 11 U.S.C. § 727 and in the alternative, 11 U.S.C. § 523(a) as more particularly set out herein below.

## III. THE PARTIES

---

[1] *In re Southmark Corp.*, 49 F.3d 1111, 1118 (5th Cir. 1995) further holding that: ... the funds in question were held in "quasi" (or constructive) trust by Southmark for ARA. Section "541(d) excludes property subject to a constructive trust from the bankruptcy estate." citing *In re Carolin Paxson Advertising, Inc., 938 F.2d 595, 597 (5th Cir. 1991) ("A constructive trust generally arises when a person with legal title to property owes equitable duties to deal with the property for the benefit of another."). Id. Southmark 1115 at note 8; In re Bullion Reserve of N. Am., 836 F.2d 1214, 1217 n. 3 (9th Cir.) (explaining that presumption that funds in debtor's account belong to its estate is overcome by showing that funds were held in constructive trust for another), cert. denied, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); Id. at note 20. Id. Southmark at 116.*

6. Plaintiff is Sagi Genger, a judgment creditor and party in interest to this Debtor, and is the Debtor's brother.

7. Plaintiff is TPR Investment Associates, Inc., a Delaware corporation, and is a creditor and party in interest in this case.

8. The Debtor is Orly Genger, an individual believed to reside is the Country of Israel and sometimes in Austin, Texas, and a member of a conspiracy to defraud described below, involving her father Arie Genger ("Arie" or her "Father"), her husband Eric Herschmann ("Herschmann") and his law firm, Kasowitz, Torres Benson LLP ("Kasowitz").

9. Nothing in the filing and prosecution of this Adversary Proceeding waives, alters, amends, or limits Sagi's rights to pursue these members of the civil conspiracy in the proceeding now pending in the Southern District of New York styled *Genger v. Genger*, 17-cv-8181 (SDNY) and including the pending Turnover Motion. Likewise, nothing in the filing or prosecution of this Adversary Proceeding limits Sagi's right to pursue such other third parties as members of the conspiracy described herein.

## IV. RELEVANT BACKGROUND FACTS

**A. INTRODUCTION AND SUMMARY OF THE ARGUMENTS:**

10. The facts are set forth and incorporated herein from the Motion to Dismiss this Chapter 7 Bankruptcy Case or, Alternatively, to Transfer Venue, and Memorandum of Law in Support [Doc. No. 32] (the "Motion to Dismiss")

**a. The Schedules and Statements Filed by the Debtor**

> **1. Non-Statutory, Non-Rules Disclaimers in the "Introduction" - the "Global Notes, Methodology and Specific Disclosures Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs"**

11. Only a cursory analysis of the Schedules and Statements show the extent of non-disclosure bad faith and outright evasion. Begin with the "Introduction" that is 3 page-single-spaced disclaimer of the accuracy of the disclosures and the purported lack of knowledge of the Debtor in completing and filing her Schedules and Statement of Affairs. This is a remarkable attempt to modify the "penalty of perjury" obligation upon execution by a Debtor of her schedules and statements.[2] As an example:

> Although the Debtor has made reasonable efforts to ensure the accuracy and completeness of such financial information, inadvertent errors or omissions, as well as the discovery of conflicting, revised or subsequent information, may cause a material change to the Schedules and Statement. Thus, the Debtor is unable to warrant or represent the Schedules and Statement are without inadvertent errors, omissions or inaccuracies. … ***Notwithstanding the foregoing, the Debtor shall not be required to update, amend or supplement the Schedules and Statement, but reserves the right to do so***.

After claiming "reasonable" effort to ensure accuracy, the Debtor disclaims her obligation to "update, amend or supplement the Schedules and Statement …" with accurate information even when it is discovered and known to exist. These disclaimers continue:

- To be certain that nothing in, or missing from, the Schedules and Statements can be used to establish intentional withholding of information, transactions, assets, and liabilities, the Debtor actually suggests that "[i]n the event that the Schedules and Statement differ from the foregoing Global Notes, the ***Global Notes shall control***.

---

[2] The petition, schedules, and statement of financial affairs are executed under oath and penalty of perjury. Fed. R. Bankr.P. 1008; Official Form 1 (Voluntary Petition); Official Form 7 (Statement of Financial Affairs). *See Heil,* 289 B.R. at 907-08. *See also Hamo v. Wilson ( In re Hamo*), 233 B.R. 718, 725 (6th Cir. BAP 1999); *Beaubouef v. Beaubouef ( In re Beaubouef*), 966 F.2d 174, 178 (5th Cir.1992).

The debtor must fully disclose all information relevant to the administration of the bankruptcy case. *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *In the Matter of Garman,* 643 F.2d 1252 (7th Cir.1980). *See In re Robinson,* 292 B.R. 599 (Bankr.D.Ohio 2003); *Woolman v. Wallace ( In re Wallace*), 289 B.R. 428 (Bankr.N.D.Okla.2003); *Fleet Securities, Inc. v. Vina ( In re Vina*), 283 B.R. 803 (Bankr.M.D.Fla.2002); *In re Firrone,* 272 B.R. 213 (Bankr.N.D.Ill.2000); *In re Riccardo,* 248 B.R. 717 (Bankr.S.D.N.Y.2000).

"***It is not for the debtor to decide what is and is not relevant***. *A debtor who omits important information and fail[s] to make full disclosure, place[s] the right to the discharge in serious jeopardy.*" *Jensen v. Brooks (In re Brooks*), 278 B.R. 563 (Bankr. M.D. Fla. 2002) (Emphasis Added) In fact, "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them" and the estate. *Chalik,* 748 F.2d at 618.

[*See,* "Global Notes Control, pg. 3"]. "Global Notes" are not signed under penalty of perjury – or under any penalty for that matter.

- Next, the Debtor claims to "admits" nothing in her "sworn" schedules or statements (*See*, Reservation of Rights, pg. 2);

- Although the debtor schedules less than $60,000.00 in assets, and a $75,000 retainer to her Chapter 7 lawyer, the Debtor claims that "… [i]t would be prohibitively expensive and unduly burdensome and to obtain current market valuations for all of the assets." (*See*, Net Book Value of Assets, pg. 2).

- Regarding her assets, the Debtor suggests that "… the Debtor may not have identified and/or set forth all of her (filed or potential) causes of action against third parties as assets in her Schedules and Statement" (who else would know what the Debtor's purported claims are, if not the Debtor?) then claims that "[t]he Debtor reserves all of her rights with respect to any causes of action against third parties" presumably even the undisclosed one, notwithstanding the fact that "the Debtor" no longer owns any of these causes of action, disclosed or not, all belong to the estate. [*See*, "Causes of Action" pg. 3].

- Remarkably, this same suggestion is also referenced by the Debtor as to the obligations to honestly complete Schedule A/B, first, when the debtor claims "Debtor has identified *claims that third parties, in various litigation, may have suggested that she owns* (and which Debtor does not agree exist)" which apparently the Debtor is not intending to disclose (at least voluntarily). Without the detailed history above, the Court would have no idea to what this disclaimer refers. However, with this Debtors history disclosed, this reference is to the $32 million in fraudulent transfer the Debtor made.

- Next the Debtor claims that (although she lives off the funds and cash of her multi-millionaire husband) and, according to the Debtor although "Schedules I and J request information on the Debtor's non-filing spouse's financial assets and income… [s]uch information is not available to the Debtor, and is, accordingly not listed." The Schedules do not "request" any information – they "requires" full, honest, and truthful disclosures. These answers to the questions are not optional, or at the pleasure of a debtor. The Debtor simply refuses to disclose the information, all of which is "available" to the Debtor. [*See*, "Specific Disclosures" 1st ¶ pg. 4].

- Regarding the $3+ million condominium located in the "W Hotel" downtown Austin, the disclaimers state that "Debtor owns an undivided interest in a condominium property with her non-filing spouse which was granted by gift…." This intentionally vague reference is not only intended to confuse, but when followed by a reference that the ownership rights ("but has no parking rights or other contractual rights with respect to that property") makes clear that the Debtor does not want to talk about the actual purchase price. This intentionally vague statement suggesting that valuation of her asset is not possible defies logic and good faith [*See*, "Specific Disclosures" 2nd ¶ pg. 4].

The true need for these disclaimers become crystal clear when this Court reviews the Debtor's purported Schedules and Statements and compares same to the actual historical facts. See, *In Re Robert*, 2017 WL 5007146 (Western District of Texas Bankr. Oct. 31, 2017) (discharge denied based upon failure of the Debtor to fully disclose their assets on sworn schedules).

**2. Schedules of Assets:**

12. It is literally a waste of time to review the purported "assets" of this Debtor.

Between the disclaimers of all knowledge of the value of her assets and the twenty (20) categories of assets with "unknown" valued or the eight (8) times describing assets as $0.00, this Debtor whose assets she monetized in late 2013-early 2014 for $32,000,000.00 are nowhere to be found. This Debtor, who spent $75,000.00 on Chapter 7 bankruptcy advice (at a time she claimed to be a resident of Israel) now claims to be literally broke, disclosing only $56,627.77 in asset value.

13. Critically missing is any indication or even hint that there is $15 million in promissory notes from the Trump/Orly monetization of the TRI stock still being held, now by Mr. Bowen, a partner in Kasowitz and a partner of Herschmann, that the Debtor and her Father have signature authority over.

### 3. Schedule of Creditors – Nothing But Insiders

14. It is, however, the Schedule of Creditors that illustrates the depth of deception of this Debtor's purported need for Chapter 7 bankruptcy protection. After admittedly turning over almost $17 million to her Father, Arie, in cash, she now schedules her father as a secured creditor for $5,451,389.27. What could this Debtor possibly have received in fair equivalent value for this payments or this indebtedness ***totaling $22,451,389.27***? The answer is, of course, nothing. She simply gave all of her monetized stock cash to her father as part of the fraudulent transfer scheme, planning all along to try and wait out the 6-year New York statute of limitations on fraudulent transfers, then file bankruptcy and walk away from her multi-million debts due her brother and mother. But for the Southern District Federal Courts' work and the Turnover Motion, the plan may have worked.

15. Next, the Debtor schedules her husband as a secured creditor with a claim of $2,301,399.48, apparently legal fees incurred in the multiple losses at the courthouse involving the

Debtor's failed litigation against her brother and mother, and the Trumps. This Insider Claim deserves detailed scrutiny.

16. Next, is Kasowitz, Herschmann's law firm, and again an Insider[3], claiming still more legal fees for more losing litigation representation efforts, totaling $1,457,751.00, including the most recent loss on October 4, 2019, when Judge Jaffee denied the Trustee's request to reconsider her prior rulings and sever Dalia Genger out of that pending suit. Confirming these bills are a sham is the pending 9019 Motion and litigation, which includes Kasowitz working on a contingency fee basis to **defend** claims. Only one listed suit is as plaintiff for the estate. A court appointed appraiser listed the potential damages as $0 - $30k against Sagi. In any case, such damages would be subject to Sagi's $3 million+ offset. In other words, Kasowitz will continue to work for free.

17. Next is the Orly Genger 1993 Trust listed an unsecured creditor with a claim "unknown."

---

[3] Herschmann is clearly an "insider" to the Debtor Orly, as her non-filing spouse. Likewise, as a partners in the Kasowitch law firm, the law firm is an "insider" to Under 11 U.S.C.S. § 101, an "insider to an insider to the Debtor" is deemed an insider to a debtor. *In re Bos*, 561 B.R. 868, 885 n. 69 (Bankr. N.D. Fla. 2016), *citing In re Parks*, 503 B.R. 820, 835 (Bankr. W.D. Wash. 2013) (holding one-year preference period applicable because individual was an insider of an insider of debtor). Section 101(31)(E) also deems an "insider of an affiliate" to be an insider "as if such affiliate were the debtor." *See Sherron Assocs. Loan Fund XXI (Lacey) L.L.C. v. Thomas (In re Parks)*, 503 B.R. 820, 822 (Bankr. W.D. Wash. 2013). While "[a]ttorneys have not generally been considered insiders of their debtor-clients," where, as here, an attorney has been found to be an extra-statutory insider, that status has been imposed because of a relationship with the debtor that "transcended the normal attorney-client boundaries." *See, e.g., In re Arana*, 387 B.R. 868, 870 (Bankr. M.D. Fla. 2008); *see also In re Broumas,* 135 F.3d 769 (Table), 1998 WL 77842 (4th Cir. 1998) [published in full-text format at 1998 U.S. App. Lexis 3070], (attorney is an insider). An "insider to an insider to the Debtor" is under § 101 is deemed an insider to the Debtor. Under 11 U.S.C.S. § 101, an "insider to an insider to the Debtor" is deemed an insider to a debtor. *In re Bos*, 561 B.R. 868, 885 n. 69 (Bankr. N.D. Fla. 2016), *citing In re Parks*, 503 B.R. 820, 835 (Bankr. W.D. Wash. 2013) (holding one-year preference period applicable because individual was an insider of an insider of debtor). Section 101(31)(E) also deems an "insider of an affiliate" to be an insider "as if such affiliate were the debtor." *See Sherron Assocs. Loan Fund XXI (Lacey) L.L.C. v. Thomas (In re Parks)*, 503 B.R. 820, 822 (Bankr. W.D. Wash. 2013). While "[a]ttorneys have not generally been considered insiders of their debtor-clients," where, as here, an attorney has been found to be an extra-statutory insider, that status has been imposed because of a relationship with the debtor that "transcended the normal attorney-client boundaries." *See, e.g., In re Arana*, 387 B.R. 868, 870 (Bankr. M.D. Fla. 2008); *see also In re Broumas,* 135 F.3d 769 (Table), 1998 WL 77842 (4th Cir. 1998) [published in full-text format at 1998 U.S. App. Lexis 3070], (attorney is an insider).

18. The only non-insider, non-disputed claim creditor listed is Markel Surety for $750.00. The Debtor scheduled is Zeichner Ellman & Krause, LLP for $448,310.98, again the Debtor's former lawyers who she dismissed three years ago and who have apparently made no effort to collect and has made assertions of malpractice arising from their services.

19. In point of fact, the Debtor has no creditors that are not directly or indirectly tied to the underlying litigation pending in New York Courts to avoid a series of fraudulent conveyances made by the Debtor to frustrate Sagi's and Dalia's claims.

## COUNT #1
## DENIAL OF DISCHARGE
## 11 U.S.C. §727(A)(3)

20. Paragraphs 1-44 are incorporated herein for all purposes as if set out herein verbatim, as well as the factual recitation in the Motion to Dismiss and the District Court Memorandum.

21. 11 U.S.C. 727(a) -- The court shall grant the debtor a discharge unless –

> (3) the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, form which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

22. As set forth herein, the Debtor has concealed and lied about her interest and control over two promissory notes in the amount of $7.5 million each, and has failed to disclose assets that are under her control, has filed false statements and testimony about these assets and agreements related to her assets. She has participated in the back-dating of loan documents and related subordination in order to conceal assets under her control.

## COUNT #2
## DENIAL OF DISCHARGE
## 11 U.S.C. § 727(A)(5)

23. Paragraphs 1-47 are incorporated herein for all purposes as if set out herein verbatim, as well as the factual recitation in the Motion to Dismiss and the District Court Memorandum and are incorporated herein for all purposes as if set out herein verbatim.

24. 11 U.S.C. 727(a) -- The court shall grant the debtor a discharge unless –

> (5) the debtor has failed to explain satisfactorily, before the determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

25. As set forth herein the Debtor has not filed or explained the assets she currently owns, including but not limited to $15 million of notes held by her husband's law firm and subject to her authority and control with her Father.

## COUNT #3
## DENIAL OF DISCHARGE
## 11 U.S.C. §727(a)(4)(A)

26. Paragraphs 1-50 are incorporated herein for all purposes as if set out herein verbatim, as well as the factual recitation in the Motion to Dismiss and the District Court Memorandum and are incorporated herein for all purposes as if set out herein verbatim.

27. Pursuant to 11 U.S.C. 727(a) -- The court shall grant the debtor a discharge unless
> (4) the debtor knowing and fraudulently, in or in connection with the case –
>> (A) made a false oath or account.
>> …
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

28. Those elements are the debtor: (1) made a false statement under oath; (2) the statement was false; (3) knew the statement was false; (4) the debtor made the statement with fraudulent intent; and 95) the statement related materially to the bankruptcy case. *Cadle Co. v.*

*Pratt (In Re Pratt)* 411 F.3d 561, 566 (5th Cir. 2005) (quoting *In Re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). In the course of the prior case to avoid the fraudulent transfer the Debtor has filed false pleadings and made false oath respect to the concealed Escrow Agreement, her schedules, statements of affairs and the assets under her control as of the Petition date.

## COUNT #4
## DENIAL OF DISCHARGEABILITY
## 11 U.S.C. §523a)(2)

29. Paragraphs 1-53 are incorporated herein for all purposes as if set out herein verbatim.

30. Pursuant to § 523(a) - A discharge under section 727, … of this title does not discharge an individual debtor from any debt—

> (2) for money, property, services, … to the extent obtained by—
>
>> (A) false pretenses, a false representation, or *actual fraud*, other than a statement respecting the debtor's or an insider's financial condition;

31. The misrepresentations include but are not limited to the Debtor's promise she would pay Sagi one-half (½) of the support obligations for her Mother's support and that she would agree that the shares of the TRI state would be under the control of her Trust. She then fraudulently transferred the assets away from the Trust to her insider group of creditors, including her Father and her husband.

## COUNT #5
## DENIAL OF DISCHARGEABILITY
## 11 U.S.C. §523(a)(4)

32. Paragraphs 1-56 are incorporated herein for all purposes as if set out herein verbatim.

33. Pursuant to § 523(a) - A discharge under section 727, … of this title does not discharge an individual debtor from any debt—
> (4) for fraud … , embezzlement, or larceny;

34. As set forth herein the Debtor engaged in a fraudulent scheme to move assets away from her creditors and then the Debtor and her counsel and business partners lied under oath and in pleadings in the Southern District of New York, the Second Circuit and the New York Supreme Court about the existence of the Escrow Agreement that governs her rights to the $15 million of Notes held by her husband's law firm for her and her Father's benefit.

WHEREFORE, Plaintiffs pray for the relief above requested and for such other and further relief that Plaintiffs, or any one of them, may be justly entitled, both at law and in equity.

Respectfully submitted,

By: */s/ Sabrina L. Streusand*
Sabrina L. Streusand
State Bar No. 11701700
Streusand Landon, Ozburn & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
(512) 236-9901 (Telephone)
(512) 236-9904 (Facsimile)
streusand@slollp.com

and

John Dellaportas (admitted *pro hac*)
Emmet, Marvin & Martin, LLP
120 Broadway
New York, New York 10280
(212) 238-3000 (Telephone)
jdellaportas@emmetmarvin.com

**COUNSEL TO JUDGMENT CREDITOR SAGI GENGER AND TPR INVESTMENT ASSOCIATES, INC.**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 15, 2019, a true and correct copy of the above referenced document was served via ECF filing and/or regular U.S. mail on the following parties:

Eric Herschmann
210 Lavaca St., Unit 1903
Austin, TX 78701-4582

Eric Herschmann
c/o Raymond Battaglia
66 Granburg Circle
San Antonio, TX 78218-3010

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Kasowitz, Benson, Torres LLP
Attn: Daniel Benson, Esq.
1633 Broadway, 21st Floor
New York, NY 10019-6708

United States Trustee
903 San Jacinto, Suite 230
Austin, TX 78701-2450

Zeichner Ellman & Krause LLP
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-6149

Eric J. Taube
Waller Lansden Dortch & Davis, LLP
100 Congress Ave., Suite 1800
Austin, TX 78701-4042

Orly Genger
210 Lavaca St., Unit 1903
Austin, TX 78701-4582

Ron Satija
P.O. Box 660208
Austin, TX 78766-7208

Arie Genger

c/o Deborah D. Williamson
Dykema Gossett PLLC
112 East Pecan St., Suite 1800
San Antonio, TX 78205

Aaron M. Kaufman
Dykema Gossett PLLC
Comerica Bank Tower
1717 Main St., Suite 4200
Dallas, TX 75201

Arie Genger
19111 Collins Ave., Apt. 706
Sunny Isles, FL 33160-2379

SureTec Insurance Co.
c/o Clark Hill Strasburger
901 Main Street, #6000
Dallas, Texas 75202

Sagi Genger
c/o John Dellaportas
Emmet Marvin & Martin LLP
120 Broadway, 32nd Floor
New York, NY 10271-3291

The Orly Genger 1993 Trust
c/o Jay Ong
Munsch Hardt Kopf & Harr PC
303 Colorado Street, #2600
Austin, Texas 78701

Shelby A. Jordan
Jordan Holzer & Ortiz, P.C.
500 N. Shoreline Blvd, Suite 900
Corpus Christi, Texas 78401

*/s/ Sabrina L. Streusand*
Sabrina L. Streusand