# EXHIBIT B

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | HON. BARBARA JAFFE | PART 12 |
| | *Justice* | |

-----------------------------------------------------------------------X

ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 TRUST (both in its individual capacity and on behalf of D & K Limited Partnership),

INDEX NO.        109749/2009
MOTION DATE
MOTION SEQ. NO.  61, 62

Plaintiff,

**DECISION AND ORDER**

-v-

DALIA GENGER, SAGI GENGER, LEAH FANG, D&K GP LLC, and TPR INVESTMENT ASSOCIATES INC.,

Defendants.

-----------------------------------------------------------------------X

Defendants Sagi Genger, D&K GP LLC, and TPR Investment Associates Inc. move pursuant to CPLR 4403 for an order confirming the May 16, 2017, report and recommendation of a judicial hearing officer, sitting as a special referee, so ordered by him on May 19, 2017. Plaintiff opposes and moves for an order rejecting the report and recommendation.

## I. PERTINENT BACKGROUND

By decision and order dated April 8, 2016, plaintiff was awarded summary judgment on her cause of action, *inter alia*, for a breach of fiduciary duty, and a special referee was directed to hear and report with recommendations "regarding the damages arising from defendants' breach

109749/2009   GENGER, ORLY vs. GENGER, DALIA                    Page 1 of 7
Motion No.  061 062

1 of 7

of their fiduciary duties to plaintiff and the value of the subject shares that were transferred in the February 2009 auction." (NYSCEF 1518). That decision was affirmed. (147 AD3d 443 [1st Dept 2017]). At that auction, 240 shares of TPR had been sold and bought back by TPR for $2.2 million.

Then, by decision and order dated September 1, 2016, I denied plaintiff's motion for an order clarifying the April 2016 order and conforming the pleadings to the evidence adduced to that date at the trial before the assigned judicial hearing officer. Plaintiff essentially alleged that it had been shown at the trial that Dalia Genger's 51 percent interest in TPR that she was to have received from Arie Genger in resolution of their 2004 divorce, had never been assigned and transferred to her but was retained by TPR with its TRI shares. Thus, plaintiff maintained that the TRI shares should be considered for purposes of determining her damages for the breach of fiduciary duties. In support, she offered evidence that the August 22, 2008, stock purchase agreement and side letter agreement whereby TPR sold the family interest in TRI to the Trump Group, were "part and parcel of" the foreclosure and UCC sale of the D&K note. I held as follows:

> Here, numerous considerations, including the prejudice alleged by defendants, warrant the denial of plaintiff's application, not the least of which is her potential double recovery: Should the motion be granted and plaintiff prevail on the amended claim, she would receive the value of the TRI shares that she had already been found to have "monetized" in her settlement with the Trump Group. Plaintiff's failure to address these significant obstacles to her application precludes a reply, which in any event, was never sought, and given the extensive litigation of these cases, plaintiff should have anticipated that defendants would advance this argument, as well as the other arguments that the dismissal of the claim for breach of fiduciary duty in the 2010 action bars the proposed amendment, and that her contrary positions estop her from advancing her new position.

(NYSCEF 1392).

In observing that plaintiff had monetized the value of her TRI shares in her settlement

109749/2009  GENGER, ORLY vs. GENGER, DALIA
Motion No.  061 062

Page 2 of 7

2 of 7

with the Trump Group, I relied on *Genger v Genger*, 76 F Supp 3d 488, 491 (SDNY 2015), an unrelated litigation brought by Sagi against plaintiff. There, the court rejected plaintiff's argument that a 2004 agreement she had entered into with Sagi to provide financial support for their mother, Dalia Genger, was void for lack of consideration, observing that the consideration was the transfer of Dalia's TRI shares to the two siblings' trusts as part of their parents' 2004 divorce agreement. In discrediting plaintiff's denial that her trust had received her portion of the shares, the court found that there was no "genuine dispute as to whether [plaintiff] has so benefited [from her trust's receipt of a beneficial interest in the TRI shares]" and that her claims to beneficial ownership of those shares individually and as trust beneficiary "enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement agreement."

That decision was affirmed by the Second Circuit on September 29, 2016. In addressing plaintiff's denial that she had received any money in exchange for relinquishing her rights to the TRI shares she had received, the Court stated that "surely any $32 million transaction for her shares would confer upon her more than a peppercorn, which is all we need to conclude (and all we do conclude) as to the extent of any benefit she received." The Court also observed that plaintiff "does not dispute that she was part of a group that settled a claim involving the shares she was to receive as part of the Divorce Stipulation," and held that plaintiff had "benefitted from the shares regardless of whether the settlement money went to Orly, as a gift to Arie, or to pay debts owed to her litigation partners." (*Genger v Genger*, 663 Fed.Appx. 44, 49 [2d Cir 2016]).

On March 16, 2017, I denied plaintiff leave to reargue the September 1 decision. (NYSCEF 1502).

109749/2009 GENGER, ORLY vs. GENGER, DALIA
Motion No. 061 062

Page 3 of 7

3 of 7

The trial before the judicial hearing officer was held on August 2, 3, 8, 9, 10, and 11, 2016. Plaintiff's witnesses were plaintiff, Sagi Genger, Leah Fang, Dalia Genger, and Mark Hirsch. Sagi called the sole expert witness. The JHO stated that the sole issue for resolution was the value of 240 TPR shares that were sold at the "sham" UCC auction held on February 2, 2009, and that based on the testimony of defendants' expert witness, he found that plaintiff had sustained no damages. According to the expert, no reasonable prospective investor would pay more than the $2.2 million obtained at the auction for a minority interest in a company that had been losing money for many years, was not paying dividends, and would not likely pay dividends, and that no prospective investor would invest in a company with shareholders like the Gengers, who persistently engage in resource-draining litigation. He also relied on the economic recession. (NYSCEF 1517).

## II. DISCUSSION

### A. Preliminary issues

Defendants misconstrue the April 8 decision and order as calling for a valuation of the TPR shares as of the time of the auction. Rather, the use of the word auction in the second clause ("the value of the subject shares that were transferred in the February 2009 auction") identifies the shares as those sold at the auction, without an indication that the value is to be assessed as of that date. Had it been otherwise, there would have been no need for expert testimony because the value on the day of the auction would be the $2.2 million at which TPR bought back the shares. Moreover, as the auction was a sham and conducted in a commercially unreasonable manner, the price at which the shares were bought back provides no reliable or equitable basis on which to assess damages brought about by defendants' misconduct. Consequently, absent any dispute that the sham auction was conceived on August 22, 2009, that is the date of the breach and thus, the

109749/2009  GENGER, ORLY vs. GENGER, DALIA
Motion No.  061 062

Page 4 of 7

4 of 7

date on which the assessment of damages commences. Nonetheless, for the reasons underlying my September 2016 decision referenced *supra*, the TRI shares are not part of plaintiff's damages.

Plaintiff misconstrues the Second Circuit's September 2016 decision as foreclosing defendants' claim that she had monetized her interest in the TRI shares. In concluding that the $32 million transaction for plaintiff's TRI shares had conferred upon her "no more than a peppercorn," the Court found that she had received a benefit therefrom, certainly more than a peppercorn. The Court did not state that the shares were not worth $32 million, and did not hold that plaintiff had not monetized her interest in the TRI shares.

### B. Burden of proof on damages for breach of fiduciary duty

It is well-settled that the plaintiff bears the burden of proving damages, and that where there is a breach of fiduciary duty, "the normally stringent rules for damage calculation are relaxed." (NY PJI 3:59, at644 [2019]). Consequently, the court has "significant leeway in ascertaining a fair approximation of the loss so long as [its] methodology and findings are supported by inferences within the range of permissibility." (*Id.*, and cases cited therein). Moreover, where the calculation is difficult due to the defendant's "misconduct, some uncertainty may be tolerated." (*Id.*, citing *Wolf v Rand*, 258 AD2d 401 [1st Dept 1999]). Nonetheless, the plaintiff must present "competent evidence" of loss sufficient to result in an award that is not "merely speculative." (*Id.*, and cases cited therein).

### C. Contentions

#### 1. Plaintiff (NYSCEF 1418, 1495, 1526, 1564)

Plaintiff argued to the JHO that she had met her burden of proving her damages by presenting defendant Sagi's admissions and other "credible evidence" of TPR's "valuable assets"

109749/2009 GENGER, ORLY vs. GENGER, DALIA		Page 5 of 7
Motion No. 061 062

5 of 7

which include the TRI shares. She also maintained that she had proven "that a willing buyer would pay a reasonable price in the many millions for such assets," relying on the payment by the Trump Group of $44 million for TRI shares, and that defendants' assertion of TPR's liabilities was unreliable.

Otherwise, plaintiff attacked defendants' expert testimony as based on unreliable and wrongfully withheld evidence, thus arguing that the burden thereby shifted to defendants by virtue of adverse inferences to be drawn. She claimed that defendants were unable to meet her proof and raised alternative and invalid theories. She also deemed irrelevant the 2009 recession on which the expert had partly relied, and criticized his reliance on defendants' 2008 corporate tax returns, contending that the 2007 return was more reliable as it was "more likely" to have been prepared before the foreclosure sham had started in late 2008. Thus, she asserted, the TRI shares, which were not sold to the Trump Group until after the sham auction was conceived, are properly considered as part of her damages.

For the same reasons, plaintiff argued that TPR's liabilities should not be considered, and sought to rely on adverse inferences for her case on damages, while also maintaining that TPR's net operating losses must be considered. She bases her motion for an order rejecting the JHO's report on the same arguments.

<u>2, Defendants (NYSCEF 1516, 1559)</u>

Defendants assert that the JHO correctly reported that the shares had no value based on the testimony of their expert and observe that plaintiff had offered no expert evidence to rebut his testimony. They maintain that the measure of damages is that employed where there is a breach of contract or conversion.

109749/2009  GENGER, ORLY vs. GENGER, DALIA
Motion No.  061 062

Page 6 of 7

6 of 7

D. Analysis

Notwithstanding the relaxed burden of proving damages here, lessened even further by Sagi's wrongful conduct, the JHO was apparently stymied in discerning any competent evidence of loss presented by plaintiff sufficient to award her damages. While plaintiff was not required to present expert evidence, she took the risk of failing to offer a clear factual or evidentiary basis for awarding her damages and did not rebut defendants' expert opinion. She offers TPR's 2007 tax return without any explanation, expert or otherwise, of how it reflects the value of her portion of the 240 shares even in August 2008, and without considering the TRI shares. Thus, as plaintiff does not sustain her burden of demonstrating the amount of her damages, she provides no basis for rejecting

Accordingly, it is hereby

ORDERED, that defendant's motion for an order confirming the report of the judicial hearing officer is granted as to the result only; it is hereby

ORDERED, that plaintiff's motion for an order rejecting the report of the judicial hearing officer is denied; and it is further

ORDERED, that plaintiff's motion for an award of damages is therefore denied.

3/25/2019
DATE

BARBARA JAFFE, J.S.C.

| CHECK ONE: | x | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | | GRANTED IN PART | x | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

109749/2009 GENGER, ORLY vs. GENGER, DALIA
Motion No. 061 062

Page 7 of 7

7 of 7