# EXHIBIT G

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

## THIRD AMENDED VERIFIED PETITION FOR REMOVAL
## OF DALIA GENGER AS TRUSTEE

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("Petitioner" or "Orly"), by her attorneys, Platzer, Swergold,

Karlin, Levine, Goldberg & Jaslow, LLP, respectfully alleges as her Third Amended Verified

Petition (the "Third Amended Petition") for Removal of Dalia Genger as Trustee as follows:

1.     Orly, domiciled at 780 Greenwich Street, Apartment #4P, New York, New

York 10014, is the current and sole beneficiary of the Orly Genger 1993 Trust dated December

13, 1993 (the "Orly Trust"). Annexed hereto as **Exhibit "A"** is a copy of the Orly Trust.

2.     Dalia Genger ("Dalia" or "Respondent"), residing at 200 East 65th Street,

Apartment #32W, New York, New York 10021 is Orly's mother and is the current sole Trustee

of the Orly Trust. Dalia was appointed successor Trustee in January, 2008.

3.     The Orly Trust provides for discretionary payments of income and principal

to Petitioner during her lifetime with the remainder to be distributed to her descendants, per

stirpes. If Petitioner dies leaving no descendants, the remainder of the trust property is to be

distributed to the Sagi Genger 1993 Trust (the "Sagi Trust"). Sagi Genger ("Sagi") is Orly's

brother.

4. For the reasons set forth herein, Petitioner respectfully requests that this Court enter an order:

(a) Pursuant to Surrogate Court's Procedure Act ("SCPA") § 711(2)(3)(7) and/or (8) providing for the immediate removal of Dalia as Trustee of the Orly Trust as a result of her: (i) numerous and continuous breaches of her fiduciary duties to the Orly Trust and Petitioner as its sole beneficiary; (ii) waste and dissipation of the Orly Trust's assets; (iii) repeated and willful engagement in an ongoing fraudulent scheme with Sagi to loot, encumber, pledge and transfer the assets of the Orly Trust; (iv) deliberate and willful violation and contempt of the prior Order of this Court dated July 1, 2009 (the "July 2009 Order") (as well as her deliberate and willful violation and contempt of prior restraining Orders imposed upon her by other New York Courts in related proceedings) as set forth herein; and, (v) imprudent management and injury to the assets of the Orly Trust committed to her charge, all as set forth in this Third Amended Petition;

(b) Suspending the Letters of Appointment heretofore issued to Dalia;

(c) Appointing Joel Isaacson as successor trustee; and,

(d) Granting such other and further relief as this Court deems to be just equitable and proper.

## PRELIMINARY STATEMENT

5. Petitioner is the sole beneficiary of the Orly Trust. Dalia is Petitioner's mother and is the sole Trustee of the Orly Trust. Petitioner is filing this Third Amended Petition as a result of Dalia's egregious, willful, malicious, deliberate and surreptitious scheme to pledge, encumber, transfer and dissipate all of the assets of the Orly Trust in violation of her fiduciary duties as Trustee and in violation of the July 2009 Order.

6. As will be set forth further below in this Third Amended Petition, Dalia

-2-

and Sagi have continuously engaged in a secretive and machiavellian scheme to loot, encumber, pledge, waste, dissipate and transfer the assets of the Orly Trust for personal gain and/or as punishment of Orly for her maintaining her relationship with her father, Arie Genger ("Arie"), during and after acrimonious divorce proceedings between Arie and Dalia.

7.     In addition to this scheme being an egregious breach of Dalia's fiduciary duties to the Orly Trust, Dalia's actions in this regard also constitute a blatant and willful disobedience of the July 2009 Order by pledging and encumbering the assets of the Orly Trust and completely dissipating their value without any prior notice to Petitioner as required under the July 2009 Order, all in breach of Dalia's fiduciary obligations.

8.     Most recently, the Petitioner discovered that Dalia and Sagi entered into various secretive agreements (as will be set forth in this Third Amended Petition) to loot, dissipate, pledge, encumber and transfer the assets of the Orly Trust by agreeing to allow the potential foreclosure against valuable assets of the Orly Trust by Manhattan Safety Company ("MSCo"), a recently created entity in St. Kitts, which upon information and belief is controlled by a professional gambler. All of these recent secret agreements were entered into by Dalia and Sagi without prior notice to Petitioner as required under the July 2009 Order.

9.     As further set forth below, Dalia and Sagi's secretive scheme to loot, pledge, encumber and transfer the assets of the Orly Trust is so brazen in its nature, constitutes such an egregious breach of Dalia's fiduciary duties as Trustee and Dalia's contempt of the July 2009 Order is so clear, that her immediate removal as Trustee of the Orly Trust is both warranted and necessary in order to prevent any further irreparable harm from occurring to the assets of the Orly Trust and Petitioner, as its sole beneficiary.

10.     Dalia's immediate removal as Trustee is necessary because it is clear that

-3-

the prior Orders and warnings of this Court (and as will be shown in this Third Amended Petition, the prior Orders of other courts as well) mean absolutely nothing to her and Sagi. Thus, as long as Dalia is Trustee, any assets of the Orly Trust will remain vulnerable and subject to immediate irreparable harm as a result of her ongoing scheme with Sagi.

11.     Dalia's ongoing conspiracy and scheme with Sagi in this regard is akin to Dalia "thumbing her nose" at this Court and Petitioner, as sole beneficiary of the Orly Trust.

12.     A summary of the timeline of critical factual and procedural events surrounding this matter as well as the events which precipitated the filing of this Third Amended Petition appears immediately below and will provide the Court with the proper context in which to appreciate the severity of Dalia's misconduct. As set forth below, the lengthy summarization of the factual history is necessary in order to show that Dalia's actions cannot be viewed in a "vacuum" and constitute a pattern of ongoing conduct for approximately the past four (4) years which is specifically intended to harm Petitioner and the Orly Trust.

## THE FORMATION OF D & K LP AND THE FORMATION AND INITIAL FUNDING OF THE ORLY TRUST FOR PETITIONER'S BENEFIT, AS SOLE BENEFICIARY

13.     Dalia and Arie were married in 1967 and their marriage subsequently ended in divorce in 2004.

14.     Prior to 1993, Dalia and Arie formed D & K LP ("D & K") a family owned limited partnership, whose name was shorthand for "Dalia and Kids". At the time of its formation, Dalia was the general partner and held a 4% interest. Petitioner and her brother, Sagi, were the limited partners who each held a 48% interest.

15.     In December, 1993, Dalia and Arie established identical irrevocable inter vivos trusts for the benefit of Petitioner and Sagi, the Orly Trust and the Sagi Trust (jointly, the Orly Trust and the Sagi Trust shall be referred to hereinafter as the "Trusts"). For estate-

-4-

planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the Trusts was to ensure that both Petitioner and her brother received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both Trusts and remained Co-Trustees until Petitioner's parents' divorce in 2004. After the Trusts were funded, Sagi and Petitioner each assigned their 48% interests in D & K to their respective Trusts.

## THE CREATION OF THE D & K NOTE

16.     At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) of TPR Investment Associates, Inc. ("TPR"), a closely held family corporation for the sum of $10,200,000. The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000. The balance was satisfied with a recourse $8,950,000 Promissory Note (the "D & K Note"). Annexed hereto as **Exhibit "B"** is a copy of the D & K Note.

17.     As set forth further below in this Third Amended Petition, there was never any intention by Arie, Dalia, Sagi and Orly for TPR to collect upon the D & K Note.

18.     Pursuant to the D & K Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The D & K Note was secured by a pledge of the 240 TPR shares owned by D & K. (See **Exhibit "B"- Pledge Agreement**) Each of the Trusts and Dalia assumed liability on the D & K Note in proportion to its/her direct interest in D & K. Accordingly, each of the Trusts, assumed a 48% liability on the D & K Note and acquired a 23.52% indirect interest in TPR. Dalia assumed a 4% liability on the D & K Note and acquired a 1.96% indirect interest in TPR.

19.     At the time of the above-described transaction, Arie owned the remaining 51% of TPR, which held investments in various securities including common stock in Trans-Resources, Inc ("TRI"), as well as its interest in the D & K Note. TRI was a successful and

valuable company which was engaged in the business of manufacturing specialty chemical products for agricultural and industrial end uses.

20.     Payments were made on the D & K Note out of dividends paid by TRI until 1999. Thereafter, when TRI stopped paying dividends, D & K stopped making payments under the D & K Note with the consent of the interested parties.

21.     As of March 20, 2001, TPR held a 52.85% interest in TRI. The remaining minority interest in TRI (47.15%) was owned by various entities controlled directly and indirectly by Jules and Eddie Trump (the "Trump Group").

## ARIE AND DALIA'S DIVORCE IN 2004 AND ITS EFFECT ON THE TRUSTS' ASSETS

22.     On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of Settlement as a final settlement of their divorce (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Dalia received, *inter alia,* Arie's 51% interest in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust (the "Orly Trust TRI Shares") and (iii) 19.43% to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime voting proxy over their TRI shares (annexed hereto as **Exhibit "C"**). Therefore, after October 29, 2004, Arie and the Trusts held a controlling interest in TRI and TPR no longer owned any TRI common stock.

## DALIA CEDES CONTROL OF D & K AND TPR TO SAGI AND THE FORMATION OF D & K GP LLC

23.     In connection with the divorce settlement, Dalia took measures to cede management of D & K to Sagi. On October 21, 2004, days before signing the Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"). Dalia exchanged her 4% interest in D & K and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1%

membership interest in D & K GP for $1.00. Pursuant to D & K GP's Limited Liability Agreement (annexed hereto as **Exhibit "D"**), Sagi was given the power to select a manager of D & K GP whose function would be to control D & K's assets. Sagi selected himself to act as manager; thus, Dalia effectively handed Sagi the authority to control D & K and its assets. Also, by forming D & K GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K, including any personal liability related to the D & K Note. This left the Trusts solely liable for any obligations due under the D & K Note.

24.     On October 30, 2004, Dalia entered into a shareholder's agreement with TPR that provided for the management of TPR. Specifically, pursuant to the TPR shareholder's agreement (annexed hereto as **Exhibit "E"**), D & K, which owned 49% of TPR, was given authority to appoint one board member to the TPR board. Sagi, as the managing partner of D & K appointed himself as a board member of TPR. As the majority owner of TPR, Dalia was named as the other board member. In addition, the shareholder agreement appointed Sagi as Chief Executive Officer ("CEO") of TPR. Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had done with D & K.

25.     For the Court's convenience, below is a summary of Arie, Dalia, and the Trusts' interests in TPR both before and after the divorce and Settlement Agreement:

| Person | TPR Interest Before | TPR Interest After |
|---|---|---|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96%[1] |
| Orly Trust (indirectly through D & K) | 23.52% | 23.52% |
| Sagi Trust (indirectly through D & K) | 23.52% | 23.52% |
| **Total** | **100%** | **100%** |

26.     In connection with the Settlement Agreement, Dalia required that the

Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced

with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi

Trust, all of whom were affiliated with Sagi in one way or another and were controlled by him.

David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law)

were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle

Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi

Trust.

## THE SHAM ASSIGNMENT AND SALE OF THE D & K NOTE

27.     On or about October 31, 2004, the TPR Board (consisting of Dalia and

Sagi) passed a resolution to sell the D & K Note. Sagi was charged with the responsibility of

selling the D & K Note to a "third party".

28.     In December, 2005, Sagi filed amended 2002 and 2003 tax returns for

---

[1] Dalia held a 1.96% indirect interest in TPR prior to the divorce as a result of her 4% interest in D & K. Pursuant to the Settlement Agreement, Dalia received an additional 51% direct interest in TPR from Arie. Just prior to the Settlement Agreement, as stated above, Dalia transferred her 4% interest in D & K (and thus, her 1.96% indirect interest in TPR) to D & K GP.

-8-

TPR, writing off the entire D & K Note and declaring it as a loss in the approximate amount of $8,700,000.

29.     On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K and TPR, assigned and sold the D & K Note, which then had an approximate value of $11,000,000 as a result of the accrued interest, to Mr. Parnes in his individual capacity for the sum of only $12,000 (a copy of the Memorandum dated August 2, 2006 (the "D & K Note Memorandum"), assigning and selling the D & K Note is annexed hereto as **Exhibit "F"**). The D & K Note Memorandum asserts unspecified claims by D & K against TPR and Sagi expressly memorialized that D & K "denies enforceability of the [D & K Note]". (**See Exhibit "F"**)

30.     Sagi signed the D & K Note Memorandum on behalf of both TPR as the holder and D & K as the maker. Dalia was copied on the D & K Note Memorandum but Petitioner did not receive a copy of same.     At the time of the D & K Note Memorandum, Mr. Parnes was acting as trustee of both Trusts. Shortly after the D & K Note Memorandum, Mr. Parnes summarily resigned as Trustee of the Orly Trust without explanation.

## THE D & K NOTE WAS NEVER INTENDED TO BE ENFORCED

31.     Mr. Parnes testified in Arie and Dalia's matrimonial arbitration (See **Exhibit "G"**, which contains the relevant portions of the transcript of Mr. Parnes' testimony from the arbitration) that:

>     (i)     As the Trustee of both Trusts, he was a "trusted" person to keep the D & K Note to make sure it would never be collected. (See Pages 460-461);
>
>     (ii)     D & K does not have to make payments to TPR; (Page 452)
>
>     (iii)     The D & K Note is uncollectible (Page 453); and,
>
>     (iv)     Sagi's job was to "bury the D & K Note in the woods" (Page 461)

32.     Sagi testified in the same arbitration (See **Exhibit "H"**, which contains the relevant portions of the transcript of Sagi's testimony from the arbitration) that:

(i)        The purpose of the D & K Note was for estate planning (Pages 367-380);

(ii)       The D & K Note was never declared in default (Page 370);

(iii)      There was no intention of collecting the D & K Note (Page 370); and,

(iv)      The D & K Note is worth nothing (Pages 375-377)

33.      In addition, Dalia, who was copied on the D & K Note Memorandum, previously admitted in her Pre-Hearing Memorandum submitted to the Court in connection with the matrimonial arbitration that the D & K Note was never intended to be collected upon because the:

> "…collection by TPR of the D & K Note would simply transfer
> wealth from the children, Sagi and Orly, to their parents,
> Arie and Dalia, thus undoing the estate planning scheme which
> had transferred that wealth to the children.
> (See **Exhibit "I"**, excerpt from Dalia's Pre-Trial Memorandum
> Page "26")

34.      Ultimately, the Gengers' matrimonial arbitrator, Judge I. Leo Milonas, specifically determined that the D & K Note was never intended to be collected from its inception.

> "The arbitrator finds for Dalia on this issue. The D & K [N]ote
> was part of the estate planning scheme to transfer wealth to the
> children. The parties never intended for this note to be collected
> and to do so would re-transfer wealth back to the parents and
> defeat their estate plan.
> (See **Exhibit "J"**, Final Arbitration Award in Genger divorce
> proceeding, Page "15")

35.      Petitioner was well aware of, and relied upon, the agreement that the D & K Note would never be enforced. Petitioner was also aware of, and relied upon, Judge Milonas' award declaring the D & K Note worthless and uncollectible, and Dalia, Sagi and Mr. Parnes' sworn statements and/or written submissions to that effect.

## THE D & K AGREEMENT IS ENTERED INTO WITHOUT PETITIONER'S KNOWLEDGE AND PURPORTEDLY AUTHORIZES D & K TO PLEDGE AND ENCUMBER THE ORLY TRUST TRI SHARES

36.     On or about November 23, 2007, Leah Fang (Sagi's sister-in-law), the then sole Trustee of both Trusts[2], and Sagi, acting in his capacity as manager of D & K GP, executed an "Amended and Restated Limited Partnership Agreement of D & K Limited Partnership (the "D & K Agreement"). Among other things, the D & K Agreement purported to grant D & K GP authority to "mortgage, hypothecate, pledge, create, a security interest in or lien upon, or otherwise encumber [the Orly Trust TRI Shares] for the benefit of [D & K] or that of third parties, in connection with the [D & K Note]". (See a copy of the D & K Agreement attached hereto as **Exhibit "K"**, Page "11"). There was no legitimate need or purpose for the amendment. It was a preliminary step in Sagi and Dalia's scheme to punish Petitioner and attempt to loot the Orly Trust of this valuable asset.

37.     By its terms, the D & K Agreement, does not require D & K GP (i.e. Sagi) to give notice to anyone, including Petitioner or the Orly Trust, if a decision is made to encumber the Orly Trust TRI Shares in any way.

38.     Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession it gave to D & K GP under the D & K Agreement. Indeed, the D & K Agreement was merely an instrument created for the specific purpose of encumbering the Orly Trust and Petitioner as its beneficiary, with debt.

39.     Leah Fang never informed Petitioner of the existence of the D & K

---

[2] In 2007, Mr. Gribetz resigned as the trustee of both Trusts, without appointing a successor, thereby leaving Mr. Parnes as the sole remaining trustee. Thereafter, as set forth above, Mr. Parnes resigned as trustee of the Orly Trust appointing Leah Fang as successor Trustee.

Agreement. In January, 2008, Dalia was appointed successor trustee of the Orly Trust, despite Petitioner's objections. At that time, Dalia, notwithstanding her knowledge that the D & K Note was not intended to be collected, did nothing to attempt to rescind or nullify the D & K Agreement, nor did she do anything to advise Petitioner as beneficiary that the prior trustee had granted D & K GP authority to encumber the Orly Trust TRI shares. By that time, as a result of Dalia's granting Sagi control of TPR and D & K through the appointment of his friends and relatives as successor trustee of the Trusts, Sagi had effectively obtained control over all of the assets held by D & K, TPR, the Sagi Trust and the Orly Trust.[3]

40.     Through the above-mentioned transactions, Dalia allowed Sagi to obtain direct control over TPR and its interest in the D & K Note to the detriment of Petitioner and the Orly Trust. Notably, Sagi's role as CEO of TPR, (the creditor on the D & K Note) is in direct conflict with his role as manager of D & K (the debtor on the D & K Note), whose role was to repay the D & K Note or contest its enforceability.

### ORLY'S INITIAL APPLICATION TO REMOVE DALIA AS TRUSTEE

41.     In February, 2008, Petitioner filed an initial application with this Court (the "Initial Application") to remove Dalia as Trustee of the Orly Trust on the grounds that she feared Dalia would not protect her interests while serving as Trustee because of Dalia's animosity towards Arie, and her collusion with Sagi.

42.     Surrogate Roth denied the Initial Application as premature, believing

---

[3] In addition, by stock purchase agreement dated January 18, 2007, Sagi as CEO of TPR sold 2% of TPR's shares to his mother-in-law, Rochelle Fang, thereby eliminating Dalia's majority ownership interest of TPR by diluting it to 49%. Around the time that she became sole Trustee to the Orly Trust in January 2008, Dalia purportedly divested herself of the balance of her TPR shares. Thus, in addition to being CEO, Sagi effectively controlled TPR through the 49% owned by D & K, which Sagi controlled and the 2% owned by Rochelle Fang, also controlled by Sagi. (See **Exhibit "L"**, Transcript of Hearing before the Honorable Jane S. Solomon dated August 22, 2011 in the action entitled Orly Genger v. Sagi Genger, Supreme Court of the State of New York, County of New York, Index No. 100697/2008) (Pages "53" to "55" for example)

-12-

Dalia should be given the chance to demonstrate whether she intended to act in Orly's interests or against Orly's interests. Surrogate Roth gave Dalia the benefit of the doubt based, in part, on sworn statements by Dalia to the Surrogate Court that she intended to protect the Orly Trust and its assets.

> "[I]t appears that Dalia (who states that she is ready and able to act as fiduciary) has yet to assume the duties of trustee in deference to her daughter's position in this litigation. As a validly appointed trustee, she should be given the opportunity to do what she deems necessary to manage and protect the trust's assets.
>
> Based upon the foregoing, the appointment of a "special trustee" is unwarranted at this time and, accordingly, the application is denied, without prejudice to renewal if future circumstances warrant such relief.
> (See copy of Surrogate Court Decision dated December 31, 2008 annexed hereto as **Exhibit "M"**, Pages 7-8) (emphasis added).

43. At the time of the Surrogate's decision, the extent of Dalia's complicity in the conspiracy with Sagi was not fully understood.

## WITHIN WEEKS OF SURROGATE ROTH'S DECISION, RATHER THAN PROTECT THE ORLY TRUST, DALIA HELPED SAGI STRIP THE ORLY TRUST OF ITS ONLY ASSETS

44. Sadly, Dalia's every action since Surrogate Roth's decision has proven Petitioner's fears were well grounded and the benefit of the doubt given to Dalia by Surrogate Roth was unjustified. As described below, rather than protecting the Orly Trust, Dalia has used her position as Trustee to help Sagi Genger strip the Orly Trust of its two assets: (1) 1,102.80 shares of common stock in TRI; and (2) a 23.52% indirect interest in TPR.

45. As set forth below, Dalia was an active and willing participant in Sagi's scheme to strip the Orly Trust of its assets, thereby causing harm to Petitioner as the Orly Trust's sole beneficiary.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF THE ORLY TRUST TRI SHARES

46.     Dalia has always understood the true value and importance of the Orly Trust TRI Shares to Petitioner and to the Orly Trust. Indeed, during the Initial Application to remove Dalia as Trustee, Dalia's attorney sent Surrogate Roth a letter stating that "the most valuable asset in the Orly Genger Trust is the shares of TRI'" and "the TRI Shares held by the Orly Trust are potentially worth <u>tens of millions of dollars</u>." See November 11, 2008 Letter to Hon. Renee R. Roth from J.G. Kortmansky, Esq. annexed hereto as **Exhibit "N"**. (emphasis supplied)

47.     On August 22, 2008, unbeknownst to Petitioner, Rochelle Fang, (Sagi's mother-in-law) who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi Trust's 19.43% in TRI to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.[4] In connection with the supposed sale, Sagi and David Parnes were given seats on TRI's board of directors. This sale, which was consummated after Dalia was appointed successor trustee of the Orly Trust, has diluted and diminished the value of the Orly Trust's interest in TRI since Arie will no longer have a controlling interest in TRI (which he previously had by virtue of his voting proxy over the Trust's shares, see **Exhibit "C"**) and thus, the Orly Trust would no longer own a portion of the controlling block of TRI shares. [5]

---

[4] In response to Dalia and Sagi's collusive efforts to sell the TRI shares to the Trump Group, Petitioner, on behalf of herself, individually and the Orly Trust, commenced an action in the Supreme Court for New York County seeking to determine, among other things, the ownership of the Orly Trust TRI Shares. See <u>Arie Genger and Orly Genger, in her individual capacity and on behalf of The Orly Genger 1993 Trust v. Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, The Sagi Genger 1993 Trust, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, Jules Trump, Eddie Trump and Mark Hirsch</u>, Index No. 651089/2010 (the "New York TRI Action"). The New York TRI Action is still pending before Justice Feinman.

[5] In 2011, without prior notice to Petitioner as required under the July 2009 Order, Dalia, as Trustee of the Orly Trust and in a transparent forum shopping move, commenced an action in the Delaware Chancery Court seeking a declaration that the Orly Trust is the beneficial owner of the Orly Trust TRI Shares. Dalia has been restrained from pursuing this action pursuant to a prior Order of the Court issued in the New York TRI Action.

48.     On or about January 31, 2009, only weeks after making sworn statements

to the Surrogate Court that she intended to protect the Orly Trust and its assets, Dalia executed a

document entitled "Meeting of Partners of D & K LP- Jan. 31, 2009 & Agreement (the "Meeting

Agreement"). Annexed hereto as **Exhibit "O"** is a copy of the Meeting Agreement. Like the D

& K Agreement, the Meeting Agreement purported to grant D & K GP (i.e., Sagi) unfettered

authority to encumber the Orly Trust TRI Shares:

> "The partners wish to clarify that the authority vested in the General
> Partner to make limited partners' assets subject to a pledge shall be
> done in substantially the same manner in which TPR Investment
> Associates, Inc. shares were pledged in conjunction with the
> aforementioned note [the D & K Note]. However, the General
> Partner shall be authorized to sign for the partnership and/or each
> individual partner."
> (See **Exhibit "O"**, Paragraph "3")

49.     In another naked act of self-dealing in violation of Dalia's fiduciary duties

as Trustee, the Meeting Agreement also purports to:

> "Indemnify and provide a general release from any claim or
> right at equity, law, or contract or otherwise the current and
> former general partner, its officers, the partnership's holdings
> (including TPR Investment Associates, inc.) and the officers
> of its holdings to fullest extent permitted in connection with
> any claim by the partnership and/or its partners. Irrespective
> of the above, nothing herein shall serve to release or indemnify
> Arie Genger, William Dowd, Lawrence Small or Edward
> Klimerman." (See **Exhibit "O"**, Paragraph "1")

50.     Upon information and belief, the Orly Trust received no consideration and

no direct or indirect benefit in exchange for the substantial concession, Dalia, acting as trustee,

gave to D & K GP under the Meeting Agreement. Indeed, the Meeting Agreement, like the D &

K Agreement, was merely another instrument created for the specific purpose of depleting the

Orly Trust of its assets.

51.     Both the D & K Agreement and the Meeting Agreement were negotiated

and executed without ever informing Petitioner. Moreover, Dalia never subsequently informed Petitioner of the existence of either agreement, even though Petitioner made repeated requests to Dalia for information about the Orly Trust and its assets during her tenure as Trustee. The Meeting Agreement was only disclosed on or about October 2009 in connection with the New York TPR Action (defined and discussed below) which was commenced by Petitioner in the Supreme Court for New York County.

52.     Notably on January 10, 2009, just days before Dalia signed the Meeting Agreement granting Sagi unfettered authority to dispose of the Orly Trust TRI Shares (and purporting to indemnify Sagi regardless of any actions he took in connection with same), Petitioner sent Dalia a letter reminding her (once again) that the Orly Trust TRI Shares needed to be protected and retained.

> "For now, and until further notice, it is my strong desire to retain all
> of the shares of Trans-Resources., Inc. ("TRI") that are currently in
> the Trust, and I direct you not to sell them. If you are approached,
> or have been approached, with an offer to purchase any of the TRI
> shares in the Trust, please notify me immediately. If, despite my
> wishes, you consider accepting an offer, do not sell any shares until
> I have a reasonable period of time to maximize the benefit to the
> Trust, including possible alternative transactions."
> (See January 10, 2009 letter from Petitioner to Dalia (emphasis
> added), a copy of which is annexed hereto as **Exhibit "P"**)

53.     Dalia, in violation of her fiduciary obligations refused to agree not to dispose of the Orly Trust TRI Shares. To do so would be contrary to the fraudulent scheme in which Dalia was a willing participant.

54.     Likewise, although Dalia has given sworn statements to the Surrogate Court regarding the Orly Trust, she never disclosed the existence of the D & K Agreement or the Meeting Agreement to either Surrogate Roth or her successor Surrogate Webb. Basically, through the D & K Agreement, the Meeting Agreement and by ceding management of D & K

and TPR to Sagi, Dalia gave Sagi total control to pilfer the Orly Trust assets for his own use and benefit.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF ITS INDIRECT INTEREST IN TPR

55.     In Surrogate Roth's decision, she noted that in the Initial Application, "...petitioner has not alleged that Dalia has refused a request for information, which would warrant relief (SCPA 2102), or has failed as trustee to protect trust assets" (see **Exhibit "M"**, Page "7").

56.     On May 14, 2009, Petitioner's then counsel, Judith Siegel-Baum, sent Dalia's attorney, Robert Meister, a document demand relating to the Orly Trust's assets. (annexed hereto as **Exhibit "Q"**).

57.     On June 1, 2009, Mr. Meister responded to Ms. Sigel-Baum's document demand by advising her that the Orly Trust no longer owned any interest in TPR. According to the letter, Sagi, acting as CEO for TPR, had foreclosed on the D & K Note and sold D & K's 240 shares of TPR for $2,200,000. A copy of the letter is annexed hereto as **Exhibit "R"**. Before that time, Dalia had neither advised nor notified Petitioner that Sagi had foreclosed on the D & K Note, nor advised Petitioner that Sagi had sold the TPR shares at auction. This news came as a complete and utter shock to Petitioner.

58.     Despite the clear and consistent agreement among the Genger family members that the D & K Note was never to be collected upon or enforced, the sworn testimony and/or Court submissions of Dalia, Sagi and Mr. Parnes, the assignee and purchaser of the D & K Note, and Judge Milonas' award and specific determination to this effect, upon receipt of Mr. Meister's letter, Petitioner learned for the first time that:

-17-

(a)     Sagi caused TPR to reclaim the D & K Note from Mr. Parnes.[6]  Then, on August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the general manager of D & K, that D & K was in default under the D & K Note and declared that unless the entire unpaid principal amount of the D & K Note was paid immediately, TPR would sell, at auction, the 240 shares pledged as collateral. A copy of this purported Notification dated August 31, 2008 is annexed hereto as **Exhibit "S"**. Dalia, who knew that the D & K Note was never intended to be enforced and who previously had sworn to as such, in violation of her fiduciary duties as Trustee, never sought to block Sagi from foreclosing on the D & K Note and selling the TPR shares. Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust had a clear interest in the TPR shares at issue.

(b)     Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K (of which he remained managing partner) that D & K's 240 shares of TPR stock would be auctioned to the highest bidder on February 27, 2009, and that the money received from the sale would be used to reduce the outstanding debt under the D & K Note. A copy of this purported Notification is annexed hereto as **Exhibit "T"**. Sagi purported to notify the interested parties of the sale by publishing notice of the sale in the New York Post in October 2008 and February 2009. At all relevant times, Sagi had Petitioner and Dalia's contact information. Despite this, Petitioner was never informed of the impending sale. At the time that Sagi secretly schemed with the connivance of Dalia to structure the bogus sale, it was clear that the value of the TPR shares was significantly higher than any purported value of the D & K Note (although as previously stated the D & K Note had no value).

---

[6] On or about May 25, 2008, Mr. Parnes rescinded, *ab initio*, the assignment of the D & K Note. Petitioner was also not notified of that action.

(c)     On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the 240 shares of TPR and "auctioned" the shares (the "TPR Sale"). Not coincidentally, TPR purchased the shares at auction for $2,200,000, which was substantially less than their estimated value, making no effort to collect on the D & K Note from the Sagi Trust. (See **Exhibit "U"**). The $2,200,000 proceeds of the TPR Sale were purportedly used to decrease D & K's obligations under the D & K Note. The deficiency under the D & K Note was deliberately manufactured by this sham auction in order to provide Sagi and TPR with a future basis to foreclose upon the Orly Trust's only remaining principal asset, the Orly Trust TRI Shares.

59.     TPR and Sagi, with the connivance of Dalia in breach of her fiduciary duty, effectively stripped the Orly Trust of its indirect interest in the TPR shares by improperly foreclosing on the D & K Note and conducting the TPR Sale notwithstanding the fact that the Genger family never intended the D & K Note to be enforced. Notably, this alleged and purported notification process and sham TPR Sale took place without Dalia objecting in any way, taking preventive action of any kind, or notifying Petitioner in any way.    In short, Dalia, allowed the sham TPR Sale to transpire, did not notify Petitioner of same and clearly violated her duties as a fiduciary to the Orly Trust and Petitioner, as sole beneficiary by failing to protect the valuable trust asset.

60.     The forgoing scheme injured Petitioner and the Orly Trust in a number of ways. The Orly Trust's interest in D & K is now worthless, as it purportedly no longer owns any interest in TPR, while Sagi now has control over the foreclosed TPR shares. The scheme also destroyed Arie and Dalia's tax and estate planning intent that both children have equal shares in the family wealth.

61.     Dalia, who knew that the D & K Note was never intended to be enforced, should have immediately sought to block Sagi from foreclosing on the D & K Note and selling

the TPR shares. Certainly, she should have informed Petitioner so Petitioner could make her own efforts to block the sham TPR sale or, at the least, arrange for other bidders to be at the sale. Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust has a clear interest in the TPR shares at issue.

62.     As if this was not an egregious enough breach of Dalia's fiduciary duties to the Orly Trust, Dalia has made no effort whatsoever to date to seek any contribution from the Sagi Trust for its share of purported amounts due under the D & K Note (although as previously stated at length herein, no such purported sums are due under the D & K Note because it was never intended to be enforced). In other words, if the D & K Note was truly a "liability" of both Trusts, in theory, TPR should have foreclosed on the Sagi Trust's interests as well. Of course, this will never happen as long as Sagi is still the CEO of TPR (the holder of the D & K Note) and the manager of D & K, (the maker of the D & K Note). By ceding management authority of TPR and D & K to Sagi, Dalia deliberately created Sagi's clear and unequivocal conflict of interest and "paved the road" for his self-dealing. This has resulted in Sagi looting the Orly Trust for his own benefit with the tacit or express approval of Dalia.

63.     As a fiduciary of the Orly Trust with prior, as well as continued knowledge, of the TPR foreclosure, Dalia had a duty to protect the Orly Trust's indirect ownership of the TPR shares. Instead of taking proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR shares for himself to the detriment of the Orly Trust. Moreover, in connection with her appointment as successor trustee of the Orly Trust in January, 2008, as previously stated above, Dalia purportedly divested herself of her TPR shares for the sum of $5,000,000 (without informing the Court or Petitioner as to when she transferred her interest) in a further attempt to distance herself from any attributable wrongdoing.

-20-

64.     Dalia knew of Sagi's plan to foreclose on the D & K Note as early as August, 2008, thus she withheld information from Petitioner concerning the TPR Sale for almost 10 months. Even then, she only provided the information until she received a demand letter from Petitioner's counsel and realized that legal action was imminent.

65.     In fact, the notice of the TPR Sale in the New York Post was specifically designed by Dalia and Sagi not to provide Petitioner with notice and an opportunity to object to same. Dalia and Sagi were both aware of Petitioner's address at this time but instead of notifying Petitioner, they chose to deceive her by publishing notice in the newspaper.

66.     As a result of the sham TPR Sale, on or about June 9, 2009, Petitioner commenced an action which is pending before the Supreme Court for New York County entitled, Orly Genger et al v. Dalia Genger, Sagi Genger, D & K GP LLC, TPR Investment Associates, Inc. and Leah Fang, Index No. 109749/2009 (the "New York TPR Action"). In the New York TPR Action, Petitioner is seeking, *inter alia,* monetary damages and the return of the TPR shares.[7]

## THE JULY 2009 ORDER AND INJUNCTION AND PETITIONER'S RENEWED APPLICATION WITH THIS COURT TO REMOVE DALIA AS TRUSTEE

67.     Upon learning of the sham TPR Sale, which stripped the Orly Trust of its indirect interest in its shares of TPR, Petitioner renewed her petition with this Court to remove Dalia as Trustee of the Orly Trust by filing same on or about June 22, 2009. Petitioner also filed a Motion with this Court and sought a temporary restraining order which enjoined and prohibited

---

[7] By Decision and Order of the Honorable Paul G. Feinman dated June 28, 2010 in the New York TPR Action, Justice Feinman determined that the Petitioner's claim with respect to Dalia's breach of her fiduciary duty as sole Trustee of the Orly Trust should be decided by the Surrogate's Court. Further, in the same Decision and Order, Justice Feinman denied Dalia's Motion for Summary Judgment and determined that there is a "...question of fact as to whether Dalia Genger acted with intent to commit fraud against plaintiff's trust [the Orly Trust], and to lull plaintiff [Orly] into a false sense of security as to the status of her trust." (See **Exhibit "V"**, Decision and Order of Justice Feinman dated June 28, 2010, Pages "17" and 19")

Dalia, *inter alia*, and anyone acting on her behalf from attempting to sell, transfer, pledge and encumber or take any act with respect to the Orly Trust TRI Shares without providing Petitioner with at least 10 days prior notice. A copy of the June 22, 2009 Petition (without the exhibits attached to it which are duplicative) is annexed hereto as **Exhibit "W"**.

68. As a result of the Petitioner's forgoing motion for a restraining order, the July 1, 2009 Order was entered pending the outcome of this proceeding and which imposed certain protective restraints (the "Restraints") upon Dalia as previously set forth above. Dalia declined to attend the hearing.

69. During counsel's oral argument of Petitioner's motion for a restraining order, Surrogate Webber noted to Dalia's counsel that:

> "They [Dalia and Sagi] are on notice of all of your fears [with respect to the dissipation of the Orly Trust's assets]. So for them now to do something which would obviously be against their duties and responsibilities would be somewhat glaring in terms of what the surcharge [to be imposed against Dalia] would be." (emphasis supplied) (See excerpt from transcript from July 1, 2009 hearing annexed hereto as **Exhibit "X"**, Page "23")

70. The Restraints were later confirmed by this Court on August 18, 2009, reconfirmed and supplemented with additional restraints by this Court on July 16, 2010 and made a part of a stipulation between Petitioner and Dalia which was entered on September 8, 2010 (see **Exhibit "Y"**).

71. On or about September 21, 2010, Petitioner filed the Second Amended Verified Petition (the "Second Amended Petition") to remove Dalia as Trustee. Dalia has filed a Motion to Dismiss the Second Amended Petition and the decision on the Motion to Dismiss still remains *sub judice*.

## THE ADDITIONAL RESTRAINTS PLACED UPON DALIA AND
## SAGI BY THE NEW YORK COURTS IN THE NEW YORK TRI ACTION
## AND THE NEW YORK TPR ACTION

72.     In addition to the Restraints imposed upon Dalia by the July 2009 Order, on or about July 28, 2010, the Court in the New York TPR Action also restrained Dalia, Sagi and the co-defendants to that action from transferring, selling, pledging, assigning, or otherwise disposing of D & K's 48% ownership interest in TPR. (the "TPR Action Restraints") (See **Exhibit "Z"** at page "32")

73.     The Court in the New York TRI Action also entered certain restraints against Dalia, Sagi and the other co-defendants to that action with respect to the Orly Trust TRI Shares.[8] (the "TRI Action Restraints") (See **Exhibit "AA"**, December 28, 2011 Order in New York TRI Action, Pages "14" through "15").

## DALIA HAS WILLFULLY AND REPEATEDLY DISOBEYED
## THE JULY 2009 ORDER BY ENTERING INTO A FURTHER
## SCHEME TO ENCUMBER AND DISSIPATE THE ORLY TRUST'S ASSETS

74.     Petitioner submits that it could not be any more clear to Dalia, her counsel, Sagi and the other co-defendants to the New York TPR Action and the New York TRI Action that Dalia was forbidden from transferring, pledging, encumbering, assigning, selling and/or dissipating any assets of the Orly Trust without prior notice to Petitioner as a result of: (i) the Restraints set forth in the July 1, 2009 Order; (ii) Surrogate Webb's statement to Dalia's counsel on the return date that Dalia and Sagi are on notice of Petitioner's fears that the Orly Trust's assets will be dissipated (and therefore, any actions taken by Dalia against her duties and responsibilities would obviously be "glaring") (See **Exhibit "X"**, Page "23"); (iii) the Stipulation entered into between Petitioner and Orly further confirming the Restraints (See **Exhibit "Y"**;

_____

[8] Both the New York TRI Action and the New York TPR Action are before Justice Paul Feinman.

and, (iv) the restraints imposed by Justice Feinman in the New York TRI Action and New York TPR Action (collectively, the "Supreme NY Restraints"). All these restraints were specifically and expressly intended to preserve the "status quo" until the Courts rendered a final decision.

75.     Notwithstanding the forgoing, rather than honor any of these restraints, subsequent to the Petitioner's filing of the Second Amended Petition, Dalia, Sagi and their cohorts, have continued to conspire together and in secret to render all of these restraints a nullity.

76.     Instead of treating this Court's July 2009 Order and the Supreme NY Restraints as Orders to be obeyed and boundaries to be honored, Dalia, Sagi and their cohorts saw them as obstacles to be hurdled. To that end, Dalia, D & K (through D & K GP), and/or TPR (in other words, Dalia and Sagi) secretly executed eight (8) agreements[9] encumbering the Orly Trust with $4.44 million in new debt, which the Orly Trust has no hope of paying off.

77.     In breach of Dalia's fiduciary duties as Trustee, the Secret Agreements were specifically designed and intended as part of Dalia and Sagi's scheme to encumber the Orly Trust with debt but not to similarly encumber the Sagi Trust with any debt whatsoever.

78.     Petitioner discovered the existence of the Secret Agreements on or about July 6, 2012 solely in response to discovery requests made by Petitioner's counsel in the New York TPR Action. These documents were only first produced on or about July 6, 2012 notwithstanding the fact that: (i) the initial Secret Agreements, namely, the $4,000,000

---

[9] These eight secret agreements (collectively, the "Secret Agreements") will be further described immediately below and are: (i) the $4,000,000 Promissory Note dated October 3, 2011 (See **Exhibit "BB"**); (ii) the Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note executed on May 15, 2012 (See **Exhibit "CC"**); (iii) the $4,240,000 Amended and Restated Promissory Note dated May 15, 2012 (See **Exhibit "DD"**); (iv) the $200,000 Promissory Note dated May 15, 2012 (See **Exhibit "EE"**); (v) the Agreement Amending Terms of Promissory Note dated March, 2012 (See **Exhibit "FF"**); (vi) the purported TPR Settlement Agreement dated October 3, 2011 (See **Exhibit "GG"**); (vii) the purported Amended and Restated TPR Settlement Agreement dated March 16, 2012 (See **Exhibit "HH"**); and, (viii) the Bill of Sale and Note Assignment dated May 15, 2012 (See **Exhibit "II"**).

-24-

Promissory Note and the TPR Settlement Agreement were both executed approximately nine (9) months earlier on October 3, 2011; (ii) the July 2009 Order expressly required that Dalia provide Petitioner with prior notice of any and all acts which would affect the Orly Trust TRI Shares; and, (iii) the Supreme NY Restraining Orders expressly required that Dalia provide prior notice of any and all acts which would affect the Orly Trust's respective interests in the Orly Trust TRI Shares and TPR.

## THE 2011 PROMISSORY NOTE

79.     Unbeknownst to Petitioner, on October 3, 2011, Dalia and TPR purported to cancel the $4,500,000 deficiency remaining on the D & K Note after the disputed TPR Sale and replace it with a $4,000,000 promissory note that directly obligated the Orly Trust to pay TPR (the "2011 Promissory Note"). (See **Exhibit "BB"**, copy of 2011 Promissory Note and the TPR Settlement Agreement (defined below), **Exhibit "GG"**).

80.     By so doing, Dalia wrongly attempted to: (i) transfer $4 million dollars of liability from D & K to the Orly Trust (See **Exhibit "GG"**, TPR Settlement Agreement at 5); (ii) replace the unenforceable D & K Note with a putatively enforceable one (id); (iii) acknowledge the legality of the sham TPR Sale and the resulting deficiency (id. at 2-3); and, (iv) ensure that this $4 million dollar liability would not fall within the release that was part of the purported TPR Settlement Agreement reached that same day between Dalia, Sagi and the other defendants to the New York TPR Action, but would continue to burden the Orly Trust (id. at 5).

81.     The 2011 Promissory Note was payable to TPR the earlier of: (a) November 1, 2012; or, (b) the receipt of any proceeds from the sale of the Orly Trust TRI Shares, "notwithstanding anything to the contrary herein or in the parties' accompanying [TPR] Settlement Agreement". See **Exhibit "BB"** at 1.

82.     By executing the 2011 Promissory Note on behalf of the Orly Trust, Dalia (i) obligated the Orly Trust to pay all of TPR's legal fees (See **Exhibit "BB"** at 2); (ii) **made her removal as Trustee an "Event of Default" making the 2011 Promissory Note immediately due and payable** (id. at 1, emphasis added); and, (iii) agreed to the law and jurisdiction of the State of Delaware (id at 2)[10]

## THE 200K PROMISSORY NOTE AND THE CREDIT AGREEMENT

83.     In May, 2012, TPR assigned the 2011 Promissory Note to MSCo, a St. Kitts entity. In exchange for an alleged $400,000 received from MSCo, Dalia had the Orly Trust sign another promissory note for $200,000 (the "200K Note") (See **Exhibit "EE"**) and increased the 2011 Promissory Note to $4,240,000.[11] (See **Exhibit "CC"**, Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note (the "Credit Agreement" and **Exhibit "EE"**, (the 200K Note).

84.     Further, Dalia, purporting to act as Trustee wrongfully attempted to: (i) waive any defenses the Orly Trust would have to payment, including any defenses with respect to MSCo., TPR, or any prior holder of the 2011 Promissory Note (See **Exhibit "CC"**, Credit Agreement, §6.1(c)); (ii) have the Orly Trust broadly indemnify MSCo., should Orly or any future Trustee legally attack the 2011 Promissory Note, the Amended Promissory Note, or the Credit Agreement (id., §7); (iii) make the Orly Trust liable for all costs of collection, including attorneys' fees (See **Exhibit "DD"**, Amended and Restated Promissory Note (the "Amended 2011 Note") § 6); (iv) **make Dalia's replacement as the Orly Trust Trustee an "Event of**

---

[10] In March, 2012, unbeknownst to Petitioner, TPR, D & K and the Orly Trust (i.e. Dalia and Sagi) purported to enter into an "Agreement Amending Terms of Promissory Note" to provide for New York law and jurisdiction in any competent court (See **Exhibit "FF"**). This Agreement also gave Dalia and Sagi the power to amend the 2011 Promissory Note at will.

[11] In other words, Dalia pledged $440,000 of Orly Trust assets in exchange for a purported $400,000.

Default" making the Amended 2011 Note and the 200K Note (jointly, the "Notes")
immediately due and payable (See **Exhibit "CC"**, Credit Agreement, § 6.2, emphasis added);
(v) agree to pay the 200K Note from the sale of the Orly Trust TRI Shares "notwithstanding
anything to the contrary" (**Exhibit "EE"**, 200K Note, §1.3); and, (vi) make the Credit
Agreement and Notes fully assignable without the consent of, or notice to, the Orly Trust (See
**Exhibit "CC"**, Credit Agreement, § 10).


## THE PURPORTED SETTLEMENT AND AMENDED SETTLEMENT

85.     On October 3, 2011, Dalia (supposedly on behalf of the Orly Trust), TPR
and D & K (by Sagi Genger) purported to settle the New York TPR Action.

86.     Petitioner and her counsel in the New York TPR Action were not
informed of this purported settlement nor was Petitioner consulted in any way regarding its
terms.

87.     In violation of the July 2009 Order, the Supreme NY Restraints, Surrogate
Webb's admonishment to Dalia concerning the dissipation of the Orly Trust's Assets, and the
Stipulation entered into between Petitioner and Dalia, the purported settlement agreement (the
"TPR Settlement Agreement", which incorporates the 2011 Promissory Note by reference)
purports to have the Orly Trust transfer all its interests in D & K and disclaim all interest in TPR.
The settlement agreement also has TPR relinquish its claims to the Orly Trust TRI Shares:

> (a) TPR hereby relinquishes in favor of the OG Trust [the Orly Trust] any
> economic interest in the TRI Shares [the Orly Trust TRI Shares] and assigns
> to the OG Trust its right to any economic benefits of the TRI Shares
> including any proceeds from the sale thereof, including but not limited to
> the $10.3 million in proceeds otherwise owing to TPR in the future pursuant
> to the terms of the August 22, 2008 letter agreement; (b) the OG Trust -
> irrespective of any claim made or asserted on its behalf by Orly Genger –
> hereby transfers to TPR its limited partnership interest in DK (the "DK
> Interest"), and disclaims any interest in, any shares of or TPR, either directly

or indirectly through DK (the "TPR Interest");... and (c) TPR agrees to pay $100,000 for the legal fees of the OG Trust.[12]
(See **Exhibit "GG"**, TPR Settlement Agreement, Paragraph "1")

88.     On March 16, 2012, Dalia (supposedly on behalf of the Orly Trust), TPR, and D & K GP (by Sagi Genger) entered into a purported Amended and Restated Settlement Agreement (the "Amended TPR Settlement Agreement"). Once again, Petitioner was not informed or consulted in any way. The purported "settlement" was restated, and then amended to purportedly cancel and void "the (i) the Amended and Restated Limited Partnership Agreement of D&K Limited Partnership dated as of October 30, 2004 and signed November 22, 2007, and/or (ii) the Meeting of Partners of D&K L.P. January 31, 2009 and Agreement." See **Exhibit "HH"**, March 16, 2012 Amended TPR Settlement Agreement, Paragraph "1").

89.     Importantly, though the Amended TPR Settlement Agreement purported to void these two agreements *ab* initio, the purported settlement did nothing to reverse or unwind the sham TPR Sale that these two agreements purported to enable, or to cancel the supposed deficiency resulting from the TPR Sale.[13]

90.     Demonstrably, these various actions and agreements (agreed to in secret and never revealed to the Court or Petitioner despite numerous Court appearances, filings and outstanding documents requests) in the New York TPR Action and New York TRI Action violated the protective restraints imposed by this Court and the other New York Courts in a

---

[12] Dalia, Sagi, TPR, and D & K also purported to require the Orly Trust to pay D & K and TPR's attorneys' fees, should Petitioner continue to advance claims on the Orly Trust's behalf (see **Exhibit "GG"**, Paragraph "8") and purported to release one another from all claims, causes of action, lawsuits, demands, liability of any kind, asserted or unasserted, known or unknown, suspected or unsuspected, direct or derivative, in connection with the 1993 Note [D & K Note], the [Orly Trust] TRI Shares, the Share Transfer, the DK Interest, the TPR Interest, the 2008 Letter Agreement, or any other matters, through the date of the Agreement Id. at Paragraph "4")

[13] The parties also made sure that the Release in the TPR Settlement Agreement did not cover anyone on Sagi and Dalia's "enemies list" (See **Exhibit "HH"**, Amended TPR Settlement Agreement, Paragraph "3"), changed the governing law to New York law (id. at Paragraph "6"), and made their agreement to Delaware jurisdiction non-exclusive (id.).

number of independent ways. As to the TPR Settlement Agreement and the Amended TPR Settlement Agreement:

> (a) Pursuant to the July 2009 Order, Dalia and her counsel were required to give Petitioner 10 days advance notice of any transaction that impacted the Orly Trust TRI Shares, but failed to provide notice of either the TPR Settlement Agreement or the Amended TPR Settlement Agreement;
>
> (b) By agreeing in the TPR Settlement Agreement and the Amended TPR Settlement Agreement to have the Orly Trust relinquish its interest in TPR and transfer its interest in D & K to TPR, Dalia, Sagi, D & K GP, and TPR jointly and severally violated the TPR Action Restraints which forbade each of them from "transferring, pledging, assigning or otherwise disposing of the [Orly Trust TPR] Shares." (See **Exhibit "Z"** at 31-32)

91.     As to the Notes and the Credit Agreement, TPR's assignment of the 2011

Promissory Note to MSCo was an "…act by Respondent, her agents and all other persons acting

on her behalf to assign, mortgage, pledge, redeem, encumber, sell or otherwise alter the Orly

Trust's interest in TRI…" Accordingly, pursuant to the July 2009 Order, Dalia was required to

give Petitioner at least 10 days notice of the transaction but completely failed to do so. This

failure to notify Petitioner also violated various provisions of the Supreme NY Restraining

Orders.

## THE EVENT OF DEFAULT UNDER THE NOTES HAS BEEN TRIGGERED AS A RESULT OF THE DISMISSAL OF DALIA'S COUNSEL'S FEDERAL INTERPLEADER ACTION

92.     As a result of Dalia, TPR, D & K (through D & K GP) (i.e, Dalia and

Sagi's) actions, the $4.44 million dollars in new debt to MSCo is immediately due and payable

because of one of the poison pills that litter the Secret Agreements (in addition to the one that

provides an event of default if Dalia is removed as Trustee of the Orly Trust) has already been

triggered[14], and thus, MSCo is able to immediately proceed against the Orly Trust's assets in any

---

[14]The resolution of an interpleader action commenced by Dalia's counsel, Pedowitz & Meister LLP ("Pedowitz & Meister") is a triggering Event of Default under the Secret Agreements. Pedowitz & Meister was the

jurisdiction in the world (Delaware, St. Kitts, etc.) without notice or warning to the Orly Trust or to anyone.

93.    Thus, by her actions Dalia has created a situation where the assets of the Orly Trust could be in immediate peril of dissipation.

## DALIA NEEDS TO BE REMOVED AS TRUSTEE IMMEDIATELY

94.    As a result of all of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary of the Orly Trust, her violation of the terms and conditions of this Court's July 2009 Order and the Supreme NY Restraints, her ongoing conspiracy and scheme with Sagi to loot, transfer, pledge, encumber and dissipate the Orly Trust's assets and the immediate peril to those assets, Petitioner submits that Dalia's should be immediately removed as Trustee of the Orly Trust.

## JOEL ISAACSON SHOULD BE APPOINTED AS SUCCESSOR TRUSTEE

95.    As a result of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary

Escrow Agent with respect to the proceeds of the disputed sale of the Orly Trust TRI Shares and commenced an interpleader action against Petitioner, Dalia as Trustee of the Orly Trust and other parties in the United States District Court for the Southern District of New York, Pedowitz & Meister LLP v. TPR Investment Associates, Inc. Orly Genger, et al (Case No. 11 Civ. 5602) (the "Pedowitz & Meister Interpleader Action) whereby it sought, *inter alia,* a judgment from the Court determining who was entitled to the proceeds of the disputed sale of the Orly Trust TRI Shares.    Petitioner's counsel moved to dismiss the Pedowitz & Meister Interpleader Action on the grounds, *inter alia,* that the District Court lacked subject matter jurisdiction and in any event, all the parties and claims involved in the Pedowitz & Meister Interpleader Action were already pending before Justice Feinman in the New York TRI Action.    The Pedowitz & Meister Interpleader Action was recently dismissed by Judge John F. Keenan in the United States District for the Southern District of New York by Opinion and Order dated June 14, 2012, due to lack of subject matter jurisdiction and described by him as a "sham".    See Case No.'s 08 Civ. 7140 (JFK), 11 Civ. 5602 (JFK), et al), Docket No. 64).    Thus, the resolution of this sham action has triggered an Event of Default under the Secret Agreements.    It is worth noting that Pedowitz & Meister represents both Dalia in her individual capacity and as Trustee of the Orly Trust.

of the Orly Trust and her violation of the terms and conditions of this Court's July 2009 Order, Dalia should be immediately removed as Trustee and replaced with Joel Isaacson.

96.    Mr. Isaacson is the founder and CEO of Joel Isaacson & Co. LLC, which has been a leading independent wealth management firm in New York City for almost 20 years, and which is located at 546 Fifth Avenue, 20th Floor, New York, NY  10036. Mr. Isaacson specializes in financial services and tax planning and has acted as trustee for more than 100 trusts.  He holds a Bachelors of Science Degree in accounting and a Masters of Business Administration degree in financial planning. Mr. Isaacson is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR or D & K, is willing and prepared to succeed Dalia as Trustee immediately and has an understanding of the current status of the Orly Trust.


**WHEREFORE,** respectfully requests that an Order be entered: (i) immediately removing Dalia Genger as Trustee of the Orly Trust; (ii) suspending the Letters of Appointment heretofore issued to Dalia; (iii) appointing Joel Isaacson as successor trustee; and, (iv) granting such other and further relief as this Court deems to be just equitable and proper.

Dated: New York, New York
       October 15, 2012

                                        _____
                                             ORLY GENGER

## VERIFICATION

STATE OF NEW YORK         )
                                      ) ss.:

COUNTY OF NEW YORK     )

ORLY GENGER, the petitioner named in the foregoing Third Amended Verified

Petition, being duly sworn, deposes and says:

1.      I am the Petitioner in this matter.

2.      I have read the annexed Third Amended Verified Petition, know the contents thereof and the same are true to my knowledge, except those matters thereon which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____

ORLY GENGER

Sworn to before me this
15th day of October, 2012

_____

Notary Public

**Daniel B Fix**
Notary Public State of New York
New York County, LIC# 02F16239452
Comm Exp 04/18/2015

-32-