**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| ORLY GENGER, | § | **CASE NO. 19-10926-TMD** |
| | § | |
| | § | |
| Debtor. | § | |

**OBJECTION TO CHAPTER 7 TRUSTEE'S APPLICATION UNDER**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND**
**LOCAL RULE 9019 TO APPROVE COMPROMISE**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE

Michael Oldner, in his capacity as the trustee ("Trust Trustee") of The Orly Genger 1993 Trust (the "Trust"), a nominal pre-petition creditor of the Debtor ("Orly" or the "Debtor") under the above-captioned, putative Chapter 7 case ("Bankruptcy Case"), files this Objection ("Objection") to the *Application Under Federal Rule of Bankruptcy Procedure 9019 and Local Rule 9019 to Approve Compromise* [Docket No. 52] (the "Application") filed by Ron Satija ("Chapter 7 Trustee"), and, in support would respectfully show the Court as follows:

## I.    SUMMARY

1.    This objection is expressly subject to the Trust Trustee's contemporaneously filed Joinder ("Joinder") in and to the *Motion to Dismiss this Chapter 7 Bankruptcy Case or, Alternatively, to Transfer Venue, and Memorandum of Law in Support* [Docket No. 32] (the "Dismissal Motion") filed by Sagi Genger ("Sagi").

2.    By his Application, the Chapter 7 Trustee is misusing his authority and power as putative trustee for the bankruptcy estate in order to improperly promote a blatant forum shopping effort by the Debtor and her nondebtor insiders and fraudulent conspirators, regarding claims that are not property of the estate and in which the bankruptcy estate can have no bona

1

fide interest whatsoever.

3. Under his proposed settlement agreement ("<u>Settlement Agreement</u>"), which the Chapter 7 Trustee insufficiently marketed or failed to market at all, he has agreed to "take all necessary steps to remove and transfer" three (3) litigation cases; all pending before New York state courts and involving entirely state law claims relating to $32.3 million in proceeds of the Genger family's interests in Trans-Resources, Inc. ("<u>TRI</u>").  **The holder of the TRI interests at relevant times, to the extent that such interests relate to the Debtor, was the Trust**.  The Debtor never held any interests in TRI.  All of the underlying claims asserted by the Debtor in these proceedings are expressly claims asserted derivatively on behalf of the Trust, or assert the Debtor's interests as beneficiary of the Trust.  Accordingly, these claims are not property of the Debtor's estate.

4. Ever since the time that the Debtors' parents' divorce of was finalized, her father, ("<u>Arie</u>"), has been obsessed with attempting to reclaim control over TRI or the value of TRI shares that he and the Debtors' mother ("<u>Dalia</u>"), previously agreed to devote to the Trust that the parents established in order to ensure for the Debtor's livelihood, and now that of her daughter.  Out of familial love, loyalty and perhaps other misguided reasons, the Debtor has been supporting her father's attempts.  Notwithstanding, the Trust Trustee insists, like the Debtor's mother before him, that the corpus of the Trust must be protected beyond the reach of the Debtor's estate and its creditors, in order to ensure the Trust's ability to provide for the maintenance of its beneficiaries, as its grantors and Congress intended.

5. The Settlement Agreement ignores these facts for the purpose of trampling on the rights of the Trust—not even for the benefit of the estate but for the benefit of nondebtor insiders and fraudulent transferees.  Towards these ends, it goes even farther, and obligates the Chapter 7

Trustee to take all necessary steps to accomplish a stay of a separate litigation proceeding pending before the U.S. District Court for the Southern District of New York, entirely among nondebtor parties, "or any similar action." The Application constitutes a bad faith proposal intended for improper purposes that cannot be accomplished, and provides insufficient consideration for the Chapter 7 trustee's outlandish commitments. It attempts to compromise claims belonging to the Trust, is not in the best interests of the estate and should be rejected.

## II.     BACKGROUND

6.     On July 12, 2019, the Debtor filed her voluntary petition under chapter 7 of Title 11 of the United States Code, §§ 101 *et seq*. (as amended, the "Bankruptcy Code"), thereby initiating this putative Bankruptcy Case. On the Petition Date, Ron Satija was appointed as (interim) Chapter 7 Trustee.

**A.**     **The Genger Family's and the Trust's Interests in TRI**

7.     The Genger family has been litigating for over a decade claims relating to the family's prior interests in TRI, a fertilizer company that was owned through TPR Investment Associates, Inc., another Genger family company ("TPR,"). *See Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 183 (Del. 2011).

8.     Prior to that time, in 1993, the Debtor's parents, Arie ("Arie") and Dalia ("Dalia") Genger, established the Trust as a spendthrift trust under New York law, for the benefit of the Debtor and her descendants, contemporaneously with a separate trust (the "Sagi Trust" and collectively with the Trust, the "Trusts") that the Debtor's parents established for the benefit of the Debtor's brother, Sagi ("Sagi"). A true and correct copy of the Trust Agreement establishing the Trust is attached hereto as **Exhibit "A"** and incorporated herein by reference.

9.     In 2001, a group known as the "Trump Group" (this group has no relation to the President) purchased a minority stake in TRI. *Id*. at 184.

3

10.     The same year, divorce proceedings initiated between the Debtor's parents.  In 2004 the parents agreed to reallocate the family's interests in TRI under their divorce separation agreement.  Specifically, Arie and Dalia agreed to transfer TPR's shares of TRI out of TPR to Arie and the two Trusts.  *Id*. at 185.  As the Southern District of New York later found, in exchange for Dalia's corresponding agreement to this arrangement, Sagi agreed, pursuant to an integrated agreement, to financially support his mother, on demand, up the value attributable to the TRI shares gifted to the Trusts, and the Debtor agreed to indemnify Sagi for 50% of such payments. *Genger v. Genger*, 76 F.Supp.3d. 488, 492-493 (S.D.N.Y. 2015).

11.     Four years later, in 2008, the Trump Group brought suit in the District Court for the Southern District of New York, asserting that Arie's divorce settlement, without notice to the Trump Group, violated TRI's Stockholders' Agreement and the Trump Group's right of first refusal thereunder, such that the 2004 transfers were void and the Trump Group was entitled to acquire the shares from TPR.  *Genger*, 26 A.3d at 185-187.  The Trump Group acquired the shares held by the Sagi Trust, and also sought to acquire the shares of TRI that were purportedly held by Arie and by the Trust (the "Trust Shares").  *Id.  See also Genger v. Genger*, 966 N.Y.S.2d 346, at *4 (N.Y. Sup. Ct., N.Y. Cty. 2013).

12.     At no time has the Debtor ever had title to any shares of TRI.

13.     At Arie's request, the Southern District of New York action was stayed in favor of a Delaware Chancery Court action to which Arie and the Trumps, but neither the Trust nor TPR, were parties.  *See Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F.Supp.2d. 292, 297 (S.D.N.Y. 2012).

14.     In 2011, the Delaware Supreme Court affirmed a 2010 Chancery Court opinion finding that: (i) Arie had misrepresented to his wife TPR's ability to transfer its interests in TRI;

4

(ii) the 2004 transfers were void as to record ownership; and (iii) Arie's conduct was perfidious and included the intentional spoliation of evidence "in the dead of night" (for which he was sanctioned $4 million). *See TR Investors, LLC v. Genger*, 2009 Del.Ch.LEXIS 203, *3 (Del.Ch. 2009); *TR Investors, LLC v. Genger*, 2013 Del.Ch.LEXIS 48, *14, *23-24 (Del.Ch. 2013); *Genger*, 26 A.3d at 191-192.

15.     Because, however, the Trust and TPR (necessary parties) had been left off the suit, the Delaware Supreme Court held that beneficial ownership of the TRI shares putatively conveyed by TPR to Arie and the Trust, respectively, could not be adjudicated in that action. In a subsequent action naming TPR, the Delaware Chancery Court then extinguished Arie's claims to beneficial ownership of the TRI shares in question and thereafter explicitly warned him against continued re-litigation, on pain of contempt of court. *See TR Investors, LLC*, 2013 Del.Ch.LEXIS 48, at *7 *21, *45, *91-93. **As a result, Arie had no further claim to any shares in TRI from and after the entry of this judgment**. Because, however, the Trust was not a party to that action, the Chancery Court did not determine any issue of beneficial ownership of the TRI shares that had been transferred to the Trust in 2004.

**B.     The 2013 Settlement**

16.     While the Delaware courts continued to grapple with the parties, in 2010, the Debtor and her father filed a further proceeding in New York state court, styled *Arie Genger et al. v. Sagi Genger et al.*, No. 651089/2010 (N.Y.Sup.Ct., N.Y.Cy.) (the "2010 Action").

17.     In the 2010 Action, the Debtor asserted both personal and derivative claims expressly and purportedly on behalf of the Trust, against Dalia, Sagi, and the Trump Group, seeking hundreds of millions in damages, **all in relation to the Trust Shares**. *See Third Amended Complaint*, filed September 20, 2011, 2010 Action [Docket No. 112] ("2010 Action Complaint"), at ¶¶ 20, 190-241, 247-264. A true and correct copy of the 2010 Action Complaint

is attached hereto as **Exhibit "B"** and incorporated herein by reference. The New York Supreme Court later held that the Debtor had legal standing to bring claims on the Trust's behalf. *See Genger v. Genger*, 38 Misc.3d 1213(A), *6 (N.Y.Sup.Ct., N.Y.Cy. 2013).

18. Accordingly, as noted above, the Trump Group proceeded before the Delaware Chancery Court to prosecute its motion for contempt against Arie for continuing to attempt to re-litigate the claims finally disposed of by the Delaware Court. Promptly following the Trump Group's request to the Delaware Chancery Court on June 14, 2013 (No. 3994-CS) to Arie in contempt of court for prosecuting the 2010 Action, and the Chancery Court's indication that it would do so absent Arie's immediate withdrawal of the 2010 Action, Arie and the Debtor settled with the Trump Group (the "2010 Settlement").

19. Under the 2013 Settlement, in exchange for free and clear title to the Trust Shares, the Trump Group provided $32.3 million in settlement proceeds, comprised of a cash payment of $17.3 million, and two promissory notes of $7.5 million each. Because the Debtor's claims against the Trump Group were expressly cast as derivative claims, and she asserted no interests in the Trust Shares other than in her capacity as the beneficiary of the Trust, the Trump Group expressly required under the settlement that Arie and the Debtor would take all actions necessary to obtain a judicial declaration "that [the] members of the Trump Group own all right, title and interest … to the shares of [TRI] purportedly transferred by TPR in October 2004 to Arie Genger… **and to the Orly Genger 1993 Trust (the 'Orly Trust Shares')**." 2013 Settlement, at § 4 (emphasis supplied). A true and correct copy of the 2013 Settlement is attached hereto as **Exhibit "C"** and incorporated herein by reference for all purposes.

20. Critically, in structuring this settlement, the Debtor under the guise of her derivative action purportedly asserted on behalf of the Trust, conspired with her father, her (also

4825-6508-5097v.2

extremely wealthy) husband Eric Herschman, and their insiders to divert the entirety of these settlement proceeds to these conspirators while saddling the Debtor's estate with millions of dollars in fraudulent debts. The obvious objective of this scheme was to denude the Debtor and her estate of any ability to pay Sagi's judgment, and through him, Dalia's claims for familial support.

21.     The 2013 Settlement provided for two types of settlement proceeds. First, the Trump Group made an initial cash payment upon dismissal of the claims listed in the agreement. Second, the Trump Group provided for an additional $15 million payment—memorialized in two $7.5 million promissory notes—that would not be paid until all potentially related claims have been dismissed and the corresponding statutes of limitations expired. *See* 2013 Settlement, Exh. A (Form of Subordinated Note), § 3. The promissory notes were originally made out to her attorney in the 2010 Action, purportedly as the Debtor's nominee. Later, when the Debtor married, new notes were issued to her husband's partner, Michael Bowen, as her nominee. Mr. Bowen also represents the Debtor in her derivative capacity, purportedly on behalf of the Trust, in multiple New York state court actions.

22.     Rather than transferring the initial settlement proceeds to the Trust where they belonged, as governing New York law required, the Debtor claims that she caused those funds to be paid to creditors of Arie pursuant to a "Genger Litigation Trust Agreement." *See Genger v. Genger*, 663 F.App'x 44, 49-50 (2d. Cir. 2016) ("Orly asserts that the record does not reveal that she actually received any money from the settlement….Orly benefitted from the shares regardless of whether the settlement money went to Orly, as a gift to Arie, or to pay debts owed to her litigation partners."). As a result of these fraudulent transfers, both the Trust and the Debtor have been left unable to meet their obligations to creditors.

23. Incredibly, the Debtor fails to list either of these unmatured promissory notes in her bankruptcy schedules as potential assets of the estate. Laughably, the fraudulent transferees now contend that neither the Debtor nor the Trust have ever had any interest in the proceeds of the 2013 Settlement that produced $32.3 million dollars based on the value of the TRI shares, despite that, upon information and belief, the Debtor continues to maintain signatory authority over those notes. Only the Trust and, through the Trust, the Debtor as beneficiary had or could have asserted any claims to such interests at the time of the 2013 Settlement. A simple review of the agreement and the litigation claim compromised thereby proves this.

24. Indeed, the 2013 Settlement goes on to expressly affirm that the purpose was to quiet the Trump Group's title to "the shares of Trans-Resources purportedly transferred by TPR in October 2004 to Arie and to the Orly Genger 1993 Trust". 2013 Settlement, at § 4.

25. The parties to the 2013 Settlement have all expressly stated that the 2013 Settlement settled derivative claims brought with respect to the Trust Shares. *See* Letter from Thomas Allingham to Justice Jaffe, dated June 28, 2013, 2010 Action, Docket No. 485 ("Allingham Letter"). In the Allingham letter, counsel for the Trump Group represented to the Court, on behalf of all settling parties, including the Debtor, that the parties under the 2013 Settlement refused to accept a proposed limiting clause that would have excised from the scope of the settlement derivative claims asserted on behalf of the Trust, because these were expressly intended to be settled under the 2013 Settlement:

> …on behalf of [all] parties to the settlement agreement…Certain of Orly Genger's claims against the Trump Group in this action have been held by Justice Freeman to be derivative in nature, brought by Orly on behalf of the Orly Genger 1993 Trust. … Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement.

4825-6508-5097v.2

A true and correct copy of the Allingham Letter is attached hereto as **Exhibit "D"** and incorporated herein by reference.

26. Notwithstanding that joint letter, the Debtor's counsel later reversed course and claimed that the 2013 Settlement had only settled Orly's personal claims and that Dalia could step in to pursue the Trust's claims. But the New York court rejected that argument, expressly ruling that, as the parties intended, all of the claims, including the Trust derivative claims, had been dismissed. *See* Order entered November 25, 2014, 2010 Action [Docket No. 1153] ("November 2014 Order"), at p. 2 ("pursuant to a stipulation So-Ordered by the Court on July 1, 2013, all of Plaintiffs' remaining claims against the Trump Group were discontinued with prejudice."), *aff'd* 41 N.Y.S.3d 414, 415 (N.Y. App. Div., 1st Dep't 2016) ("that order did not dismiss any claims; rather, it recognized that all claims had previously been dismissed or discontinued by prior court orders"). A true and correct copy of the November 2014 Order is attached hereto as **Exhibit "E"** and incorporated herein by reference.

## C. The Trust's and Sagi's Attempts to Avoid and Recover the Fraudulent Transfers

27. As a result of the foregoing fraudulent scheme, shortly prior to the Petition Date, in June 2019, Recovery Effort, Inc. ("REI"), a wholly owned subsidiary of the Trust to which the Trust has assigned its rights in connection with the 2013 Settlement, brought suit in the Southern District of New York, styled *Manhattan Safety Maine, Inc. & Recovery Effort, Inc. v. Michael Bowen, et al.*, Civil Action No. 1:19-cv-5642 (S.D.N.Y. 2019) (the "Trust Avoidance Action"), in order to recover the 2013 Settlement proceeds that rightfully belonged to the Trust (and/or its assignee REI). The Debtor is not a defendant in the REI Action, which is, rather, directed to the transferees of her fraudulent transfers.

4825-6508-5097v.2

28. Concurrently and also prior to the Petition Date, Sagi also sought to pursue and recover those same 2013 Settlement proceeds assets as a judgment creditor in that certain proceeding styled *Dalia Genger v. Sagi Genger v. Orly Genger*, Civil Action No. 1:17-cv-8181 (S.D.N.Y. 2017) ("Sagi Avoidance Action"). Following the filing of a Motion on June 11, 2019, to compel certain of the recipients of the Debtor's fraudulent transfers (including Arie) to turn over the proceeds of their fraudulent transfers, these parties sought and obtained an extension of the deadline to respond, and instead, filed notice of the Debtor's intervening bankruptcy filing. *See* Sagi Avoidance Action, Docket Nos. 214, 217, 218 and 221.[1]

29. Prior to that time, in support of her effort to control the claims of the Trust, the Debtor also applied before the New York Surrogate's Court to attempt to remove Dalia as the Trust Trustee and appoint a successor trustee or "special trustee" to investigate Dalia's alleged wrongdoing as Trust Trustee. However, the Surrogate's Court rejected these claims entirely. *See Decision*, entered January 2, 2009 ("Trustee Affirmation Ruling"), *In re the Orly Genger 1993 Trust*, No. 0017/2008 (N.Y.Sur.Ct. N.Y.Cy. 2009). In the Trustee Affirmation Ruling, the Surrogate's Court traced the history of the trusteeship and trustee appointments with respect to the Trust, determined that Dalia was duly appointed and acting as Trust Trustee, found that the Debtor's request to remove Dalia as Trust Trustee was based on "What appears to a material misstatement" and otherwise vague and speculative allegations.

30. Undaunted by the Trustee Affirmation Ruling, the Debtor continued to attempt to wrest control of the Trust. On August 24, 2009, both individually and expressly in a derivative capacity on behalf of the Trust, the Debtor sued Dalia (the then-trustee of the Trust, Sagi and certain Genger family entities in New York Supreme Court, which proceeding was assigned No.

---

[1] While REI and Sagi have somewhat different positions on ownership of the 2013 settlement proceeds, the two parties have agreed to share in any recovery, rather than expend limited resources competing with one another for the same funds.

4825-6508-5097v.2

109749/2009 (the "Dismissed Action"), alleging for the "Nature of the Action" that the defendants "engaged in a fraud and conspiracy designed to completely loot the Orly Genger 1993 Trust of its value…" *See Second Amended Verified Complaint*, filed August 11, 2010 ("Dismissed Complaint"), Dismissed Action [Docket No. 83], at ¶ 1.[2]

31.     Following a trial, the presiding Court entered its Decision dismissing the entire action, due to the Debtor's failure to establish that she suffered any damages on account of her claims.  Critically, the presiding Court, in rejecting the Debtor's attempt to include as damages the alleged value of the TRI shares transferred to the Trust in 2004, explained that such an approach would allow the Debtor to obtain a double recovery, because prior courts, including the Second Circuit Court of Appeals, had already determined that the Debtor had "monetized" her beneficial interest in these shares through the 2013 Settlement.  Decision, entered March 25, 2019, Dismissed Action [Docket No. 1594] ("March 25, 2019 Decision"), at p. 2.  A true and correct copy of the March 25, 2019 Decision is attached to the Trust's Joinder and is incorporated herein by reference.  *See also Genger v. Genger*, 76 F.Supp.3d 488, 501 (S.D.N.Y. 2015) ("Orly monetized her beneficial interest in the [TRI] shares for $32.3 million."), *aff'd,* 663 Fed. Appx. 44 (2d. Cir. 2016).

32.     Subsequently, after the New York Supreme Court exonerated her of all wrongdoing, Dalia appointed Mr. Oldner as successor Trust Trustee, which the Trust Trustee accepted, in June 2019.  The Trust Trustee is a retired bond trader.

**D.     The Settlement and Continued Efforts to Misappropriate Trust Property**

33.     Following the Petition Date, the Trust engaged with the Chapter 7 Trustee in order to address their competing claims to the 2013 Settlement proceeds, by proposing a

---

[2] Notwithstanding the pendency of Dalia's position as Trustee, the Debtor was granted standing to assert derivative claims on behalf of the Trust in the Dismissed Action.  *See Genger v. Genger*, 39 Misc.3d 1235(A), *14 (N.Y.Sup.Ct. N.Y.Cy. 2013).

recovery-sharing arrangement under which one half of any recovery by the Trust and estate would each share equally with the other the proceeds of any such avoidance claim recoveries. In connection with same, the Trust also procured Sagi's agreement to fund the estate's pursuit of the fraudulent transfer and related claims that Sagi had initiated and situated for a decision prior to the Petition Date. The Chapter 7 Trustee did not agree to the proposal, nor did he offer any opportunity to compete with the Settlement Agreement.

34.     Instead, on September 16, 2019, Eric Herschmann's law firm, Kasowitz Benson Torres, LLP ("Kasowitz"), appeared in the previously Dismissed Action, cloaked with the Chapter 7 Trustee's authority, for the purpose of attempting to resurrect a Cause of Action No. 4 that had been previously dismissed by the New York Supreme Court, expressly intending to remove and transfer that litigation to this Court for re-trial. A true and correct copy of the Chapter 7 Trustee's Memorandum in support of his Motion to Reargue and Sever, filed in the Dismissed Action, is attached to the Joinder and incorporated herein by reference for all purposes.

35.     Cause of Action No. 4 formerly asserted in the Dismissed Action specifically pled that: (i) Dalia conspired to implement the bad faith enforcement of a note owed by D&K Limited Partnership, a Genger family entity ("D&K LP"); (ii) Dalia misrepresented that she, in fact, "never intended to protect either **the Orly Trust's** interest in D&K's Pledged Shares of the **Orly Trust's TRI Shares**"; (iii) Dalia failed to inform the Debtor of an agreement "endangering **the Orly Trust's ownership interest in TRI**"; (iv) **as Trust Trustee**, Dalia had a fiduciary duty to the Debtor to inform her about the Trust's affairs; and (v) the Debtor has suffered damages comprised of the "total loss of **the Orly Trust's interest in TPR…** [and] a possible further foreclosure on **the Orly Trust's TRI Shares**…," and attorneys' fees. Dismissed Complaint, at

12

¶¶ 133-143 (emphasis supplied).

36. The Chapter 7 Trustee was in no hurry to disclose these activities to the Court and parties in interest contemporaneously with his authorization for Kasowitz to use his authority to attempt to assert a previously dismissed claim that cannot belong to the estate.

37. Predictably, the Chapter 7 Trustee's wholly improper effort, apparently without having duly investigated the Dismissed Action, was a complete and utter failure. On October 4, 2019, the presiding New York Supreme Court entered its order flatly rejecting the Chapter 7 Trustee's rehearing motion and holding, once again, that the entire case has been dismissed with no award of damages on account of the Debtor's alleged claims against Dalia and/or Sagi. A true and correct copy of the Supreme Court's Decision and Order, entered October 4, 2019, is attached to the Joinder and incorporated herein by reference.

38. It was not until Sagi filed a Motion to Show Cause in order to bring to this Court's attention the Chapter 7 Trustee's engagement of a clearly conflicted law firm [*see* Docket No. 42] that the Chapter 7 Trustee filed his Application, on September 27, 2019. Under the Application, the Chapter 7 Trustee proposes to receive:

a. $200,000 from Herschmann in exchange for the estate's interests in the Debtor's luxury, penthouse condominium located at the top of the "W" Hotel in downtown Austin, which the Debtor herself values, **net** of her exemption and Herschmann's 50% interest, in the amount of approximately $1,063,137.00, along with a waiver of Herschmann's purported and plainly avoidable lien that was granted to him within 1 year of the Petition Date;

b. $1,000,000.00 from the Debtor's insiders in exchange for a release of any and all claims assertable by the estate against them. However, only $250,000.00 is payable presently. The estate cannot receive the remaining balance until the two promissory notes granted under the 2013 Settlement are paid to these insiders. However, because these insiders control the Orly Genger Litigation Trust, they can unilaterally prevent that contingency from ever coming to pass. Furthermore, upon information and belief, neither note is payable unless and until Sagi and his related

13

entities consent. Accordingly, **75% of this supposed settlement consideration is illusory**;

    c.     Contingent recovery (also subject to contingency fees) on any estate litigation claims that Kasowitz "determines are viable" against Sagi, the Trust Dalia, and related parties. By this term, the Chapter 7 Trustee has incredibly abdicated his authority to control the liquidation of the estate's assets, and exposed the estate to receiving no value in exchange for extremely valuable releases granted to Kasowitz's partner (Herschmann) and the Debtor's other insiders. Moreover, as should be clear from the foregoing, tortured litigation history, the belief that there remain any unasserted, valuable claims that the Debtor may hold against Sagi is beyond all credulity, and her claims against the Trust and Dalia have been dismissed.

*See* Application, at ¶¶ 9, 12; Settlement Agreement, at §§ 3, 4, 7, 8.

    39.     In exchange, the Chapter 7 Trustee is obligated to:

take all necessary steps to remove and transfer to the Bankruptcy Court (i) the action captioned *In the matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No. 0017/2008 (Anderson, J.), (ii) the action captioned *In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust…*, New York County Surrogate's Court File No. 2008-0017/E, and (iii) the fraud claim against Dalia Genger ("<u>Dalia</u>") that Orly has asserted in the action captioned *Orly Genger, etc. v. Dalia Genger, et al.*, New York County Supreme Court Index No. 109749/09 (Jaffe, J.), with respect to which KBT has already been authorized by the Trustee to make a motion to sever that claim from the other claims in that proceeding to facilitate the removal and transfer thereof. In the event severance of the fraud claim against Dalia not granted by the New York court, the Trustee will take all necessary steps to remove and transfer the entirety of the action to the Bankruptcy Court…

Settlement Agreement, at § 2.

    40.     The Chapter 7 Trustee further obligates himself to attempt to stay additional litigation that runs entirely among nondebtor parties. Settlement Agreement, at § 2 ("If not dismissed pursuant to a motion to dismiss, the [Chapter 7] Trustee shall take all necessary steps to support the stay of the action captioned *Manhattan Safety Maine, Inc., et al., v. Michael Bowen, et al*, S. D.N.Y. Case No. 19-cv-05642 (Schofield, J.) **or any similar action**.") (emphasis supplied). The referenced civil action is the Trust Avoidance Action.

14

### III.     ARGUMENTS AND AUTHORITIES SUPPORTING RELIEF

**A.     Applicable Law**

41.     To be approved, a settlement must be "fair and equitable and in the best interest of the estate." *In re Jackson Brewing Co*., 624 F.2d 599, 602 (5th Cir. 1980). *See also In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). *Jackson Brewing* sets out a three-part test to determine whether a settlement is fair and equitable. *Jackson Brewing*, 624 F.2d at 602. The bankruptcy court must evaluate:(i) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (iii) all other factors bearing on the wisdom of the compromise. *Age Refining*, 801 F.3d at 540 (describing the *Jackson Brewing* test).

42.     The "other factors" contemplated under the *Jackson Brewing* standard include: (i) "the best interests of the creditors, with proper deference to their reasonable views"; and (ii) "the extent to which settlement is truly the product of arm's-length bargaining, and not of fraud or collusion." *In re Cajun Elec. Power Coop*., 119 F.3d 349, 356 (5th Cir. 1997) (*quoting In re Foster Mortg. Corp.*, 68 F.3d 914, 917–18 (5th Cir. 1995)).

43.     Critically, "Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced." *In re Devon Capital Management*, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001), *citing In re AWECO, Inc*., 725 F.2d 293, 297-98 (5th Cir. 1984), *cert. denied*, 469 U.S. 880, 105 S. Ct. 244, 83 L. Ed. 2d 182 (1984). *See also In re Zale Corporation*, 62 F.3d 746, 754 (5th Cir. 1995), ci*ting Cullen v. Riley*, 957 F.2d 1020, 1026 (2d. Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval.")

**B.      The Settlement Attempts to Take Custody of, and Compromise, the Trust's Claims**

44.     The proposed Settlement Agreement requires the Chapter 7 Trustee to do whatever is necessary to remove and transfer to this Court three proceedings pending in New York state court, two of which were commenced in 2008, another in 2009, one of which is the fully and finally Dismissed Action, and another of which is an entirely defensive matter as to which any involvement by the estate could only inure to the benefit of nondebtor insiders.

45.     Critically, only one of these proceedings include claims that are property of the estate.  The other three involve exclusively Trust matters.

46.     The first listed matter, *In the matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No. 0017/2008 (Anderson, J.) (the "First Surrogate Court Case"), is, like the Dismissed Action, an action that is wholly based on the Debtor's status as a beneficiary of the Trust and in which the estate can have no potential interest whatsoever.

47.     As is obvious from the very title and caption of this action, it concerns the Debtor's request as beneficiary of the Trust, to remove Dalia, as the then-Trust Trustee.  A review of the Debtor's operative Third Amended Petition in the First Surrogate Court Case ("Third Petition") confirms this.  A true and correct copy of the Debtor's Third Petition is attached hereto as **Exhibit "F"** and incorporated herein by reference.

48.     The Third Petition expressly proceeds in the Debtor's capacity as beneficiary of the Trust, and expressly pleads for relief the removal of Dalia as trustee and the appointment of a proposed replacement trustee.  *See* Third Petition, at pp. 1, 31.

49.     Sometimes referred to as the "spendthrift trust exclusion", section 541(c)(2) of the Bankruptcy Code excepts from property of the estate a debtor's beneficial interests in a trust that contains valid spendthrift provisions restricting the transfer of interests.  "The United States

16

Supreme Court has ruled that in accordance with the plain meaning of § 541(c)(2), property is excluded from the estate when 1) debtor has a beneficial interest in a trust, 2) there is restriction on the transfer of such interest, and 3) the restriction is enforceable under applicable nonbankruptcy law." *Colish v. United States (In re Colish)*, 289 B.R. 523, 539 (Bankr. E.D.N.Y. 2002) (citing and quoting *Patterson v. Shumate*, 504 U.S. 753, 757-758, 119 L. Ed. 2d 519, 112 S. Ct. 2242, (1992)). *See also Traina v. Sewell (In re Sewell)*, 180 F.3d 707, 709, (5th Cir. 1999) (Debtor's beneficial interest in ERISA plan containing spendthrift provision is exempted from property of the estate under section 541(c)(2)).

50.     As indicated by the Trustee Affirmation Ruling, the Trust is a valid spendthrift trust under New York law. *See also In re Hilsen*, 405 B.R. 49, 55-56 (Bankr. E.D.N.Y. 2009) (Also stating that, "Under New York law, 'all express trusts are presumed to be spendthrift unless the settlor expressly provides otherwise.'").

51.     Of course, any claim asserted by the Debtor on behalf of the Trust or for damages suffered proximately by (or through) the Trust is a derivative claim that actually belongs to the Trust. *Yudell v. Gilbert*, 99 A.D.3d 108, 113 (N.Y.Sup.Ct., N.Y.Cy. 2012). The same is true of claims asserted by the Debtor for damages suffered by D&K LP. The Debtor has never held any direct interest in D&K LP, but rather, her nexus to that entity is once again through the Trust, which holds 48% of the interests in D&K (with the Sagi Trust holding 48% and D&K GP, D&K's general partner, holding the remaining 4%. D&K GP is wholly owned by Dalia and Sagi, and therefore, the Debtor has no interest in D&K other than indirectly, as a beneficiary of the Trust). Dismissed Complaint, at ¶¶ 8-11.

52.     Rule 17 of the Federal Rules of Civil Procedure, made applicable to the Bankruptcy Case and any purported or attempted adversary proceeding hereunder via Rules 7017

4825-6508-5097v.2

and 9014 of the Federal Rules of Bankruptcy Procedure, provides that, "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Here, neither the Chapter 7 Trustee nor the estate can have an interest in any such claims. They are purely derivative claims, and even if they are not derivative, they are obviously, facially and indisputable asserted in the Debtor's capacity as a beneficiary of the Trust, and no such beneficial interests may be brought under the estate.

53.     Therefore, because there can be no benefit to the estate, there can be no standing to pursue this action, and the trustee's attempt to take possession of it violates applicable law and cannot be authorized. *TWA v. Travelers Int'l AG. (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 969-71 (Bankr. D. Del. 1994) (there is no standing, right to recover, where there is no possible benefit to the estate).

54.     The second implicated litigation, *In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between Arie Genger, as Grantor, and Lawrence M. Small and Sash A. Spencer, as Trustees, to Turnover Property of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No. 0017/2008 (Anderson, J.) is an entirely state law matter consolidated with the First Surrogate Court Case (the "Surrogate Court Turnover Claims"). It arises under the same proceeding and constitutes a claim asserted by the Trust against the Debtor and her fraudulent transferee insiders for the turnover of the 2013 Settlement proceeds which belong to the Trust. The Trust has made no effort to prosecute these claims against the Debtor individually, on a post-petition basis, or to file any proof of claim in the Bankruptcy Case on account of same. Therefore, any argument that attempted removal and transfer to this Court for disposition would be wholly premature and unnecessary at this point, if ever.

4825-6508-5097v.2

55.     Yet, the Trust does have the right to sever its claims against the Debtor and to proceed presently against nondebtors.  Accordingly, this provision in the Settlement Agreement is intended to benefit nondebtors.  The fact that the Settlement Agreement, incredibly, purports to require the Chapter 7 Trustee to attempt to stay claims that are asserted entirely against nondebtor parties expressly confirms this.  The Chapter 7 Trustee's supposed basis for agreeing to such a provision is that the Trust's claims compete with the estate's own claims to the proceeds of the 2013 Settlement.  However, his own Settlement terms refute this: under the very same agreement, the Chapter 7 Trustee is wholly agreeing to waive and release any such claims, which is further confirmed by the fact that the majority of his settlement consideration is not payable by the Brosers unless and until they receive the remaining proceeds of the fraudulent transfers.  Settlement Agreement, at §§ 4, 9.  As a result, the Chapter 7 Trustee could have no valid interest in any such effort.

56.     Even were that not the case, the probate exception to federal jurisdiction renders improper any effort to place before this Court the liquidation of any Trust claim against the Debtor for the turnover of trust property.  *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296 (1946); *Mercer v. Bank of New York Mellon, N.A.*, 609 Fed.Appx. 677 (2015) (where New York Surrogate's [probate] Court had taken supervisory custody over the administration of a trust, causes of action sought in federal court by beneficiaries of against trustees for breach of fiduciary duty and breach of contract, were properly dismissed); *Janvey v. Hamric*, 2015 U.S. Dist. LEXIS 193158, *20 (N.D. Tex. 2015) (where request for turnover implicated res subject to the probate exception, court denied same).

57.     For this reason also, the Debtor's estate can have no valid interest in the removal and transfer of this action.

58. The third improper proceeding that the Chapter 7 Trustee has obligated himself to take custody of and place before this Court is…the fully Dismissed Action. The Chapter 7 Trustee sought to revive, bifurcate, and transfer to this Court these previously dismissed claims, solely for the benefit of estate defendants. Predictably, this inexplicable attempt has already been demolished by the presiding Court, which admonished the Chapter 7 Trustee that remains nothing left to adjudicate, the Debtor's recovery on account of her prior claims having previously been entirely denied.

59. Moreover, as discussed above, review of the Dismissed Complaint should make (and should have made) it clear and obvious that these claims by the Debtor were exclusively comprised of claims asserted in her capacity **as a beneficiary of the Trust**; in other words, **<u>derivative claims</u>** that, in fact, belong to the Trust.

60. As a result, the Chapter 7 Trustee should know that he has no right, basis or ability, nor any valid interest or purpose, in attempting to take control over such a cause of action. It is not an asset of the estate and cannot benefit the estate.

61. This is, of course, also true of the claims that produced the 2013 Settlement and the proceeds of the Trust Shares in TRI, which is really what these disputes, and the Debtor's bankruptcy strategy, are all about. A close examination of the 2010 Action Complaint reveals that all of the Debtor's causes of action allege injury to the Trust, and even where styled as personal claims, such claims assert the Debtor's interests in her capacity as the beneficiary of the Trust. No such beneficial interests may be brought into the estate.

62. There can be no reasonable doubt that the claims and causes of action compromised under the 2013 Settlement were entirely claims asserted by the Debtor on account of her beneficial interests in the Trust, or the Trust's direct claims to ownership of the TRI

shares, which were derivatively settled by the Debtor. Again, that agreement was expressly in compromise of the claims to the shares of TRI that had been transferred to the Trust. 2013 Settlement, at § 4. While the 2013 Settlement purports to also settle Arie's claims to shares in TRI, as recited above, Arie's claims had, by that time, been wholly and repeatedly denied and rejected by prior courts, and his contrary assertion led directly to an invitation by the Delaware Chancery Court to entertain a contempt motion. The only other two settling parties, the Brosers, never held any interests in TRI.

63. Other actions taken by the Chapter 7 Trustee and his settling fraudulent transferees confirm that this case – and the Application – are entirely intended to support the diversion of the Trust Shares and their value from the Trust, and that their fraudulent scheme is objectively obvious. As noted above, in order to try to insulate the 2013 Settlement proceeds from recovery, the fraudulent transferees of those proceeds are now in the position of having to assert that neither the Debtor, nor the Trust, has any interest in the proceeds of the 2013 Settlement, despite that it was only these two parties (and the Debtor was proceeding derivatively for the Trust) who had any claims to settle with the Trump Group, and the 2013 Agreement, and the Debtor's own subsequent actions, refute such lunacy.

64. In the Trust Avoidance Action, Arie and the Brosers (Arie's litigation funders) argue that no portion of the $32 million proceeds from the 2013 Settlement belonged to the Orly Trust. *See* Defendants' Joint Letter to the Court, dated September 17, 2019, Trust Avoidance Action [Docket No. 31], at p. 3.

65. However, in the proposed Settlement Agreement, these same defendants argue that no portion of the $32 million in settlement proceeds "belong[s] to" Orly personally. *See* Settlement Agreement, ¶ 4. In other words, none of the proceeds of the 2013 Settlement belong

21

to either the Trust nor the Debtor, despite that the agreement resolved the Trump Group's rights to the Trust Shares, and as to which only the Trust and Debtor had asserted claims that had not previously been denied.

66.     In reality, these claims and the corresponding settlement proceeds all belong to the Trust.  The Chapter 7 Trustee's Application seeks to take control over, and to settle, property that belongs to the third party Trust, and/or is intended specifically to disproportionately prejudice the independent rights and interests of the Trust, and must be denied.

**C.     The Estate Receives Insufficient Consideration and the Settlement Agreement is Not in the Best Interests of the Estate**

67.     Finally, the consideration negotiated by the Chapter 7 Trustee also falls below the lowest range of reasonableness.  As discussed above, the Chapter 7 Trustee is seeking to assert claims that are not property of the estate, cannot benefit the estate, are purely defensive, and/or which have been dismissed.  No benefit can come to the estate by virtue of these efforts.

68.     As to the contingency arrangement, it is entirely up to Kasowitz under the agreement whether it chooses to assert any such claims.  Kasowitz can easily take the Chapter 7 Trustee's release for the benefit of its insiders, and then do nothing, and the Chapter 7 Trustee has abdicated his authority over any such decisions.  Even were this not the case, as detailed above, the Debtor and her insiders' have been trying for years to asset claims against the Trust Trustee and Sagi, and those claims have all been heretofore rejected.  Little if any ability remains to assert any valid claims by the estate against the Trust or Sagi – which explains why the Chapter 7 Trustee made his woeful effort to attempt to revive previously dismissed claims.

69.     In fact, upon information and belief, the Debtor has already liquidated her claims against Sagi, and those claims amount to…Zero.  In that certain proceeding styled *Orly Genger v. Sagi Genger*, Index No. 100697/08 (N.Y.Sup.Ct., N.Y.Cy.), the Debtor sued Sagi for alleged

fraudulent inducement. Although a liability ruling was initially made against Sagi, the New York Appellate Division vacated the ruling, following which the issue of injury/damages was referred by the presiding Court to a Court-appointed expert. On June 4, 2019, the CPA issued a 145-page report that any damages would, at most, be between $0.00 and $32,734. Because Sagi had provided a prior offer of judgment in excess of this amount (and of course holds an offsetting judgment exceeding $3 million), no net damages can be recovered.

70. The Chapter 7 Trustee is also proposing to compromise a real property interest worth well in excess of a $1 million, for only $200,000, because he supposedly fears litigating with Kasowitz partner Herschmann. The Chapter 7 Trustee's stated justification is that valuation and marketability of an encumbered homestead would be issues to surmount absent settlement. However, neither of these considerations justifies such a "sweetheart" deal. The Chapter 7 Trustee should know that the estate has the right to sell the penthouse condominium free and clear of any encumbering interests, and therefore, it is also the case that no separate valuation is required. The Fifth Circuit has repeatedly confirmed "the unremarkable proposition that a right of sale under federal law may be enforced as against a non-debtor spouse, in spite of the non-debtor spouse's homestead rights." *Kim v. Dome Entmt. Center, Inc. (In re Kim)*, 748 F.3d 647, 656 (5th Cir. 2014); *Thaw v. Moser (In re Thaw)*, 769 F.3d 366, 369 (5th Cir. 2014) (citing *Kim*); *Wiggains v. Reed (In re Wiggains)*, 848 F.3d 655, 665 (5th Cir. 2017) (describing holding in *Kim* as foreclosing argument that bankruptcy court lacked authority to order sale).

71. The consideration payable by the Brosers is also substantially illusory. 75% of that consideration is not payable until the Brosers receive the remaining proceeds of the 2013 Settlement and the Chapter 7 Trustee has no control over that contingency nor any expectation that it will ever manifest.

4825-6508-5097v.2

72. Essentially, the Chapter 7 Trustee has agreed to protect the Debtors' fraudulent conspirators and insider defendants from over $40 million in claims (inclusive of interest) assertable by the estate and independent third parties, for unconscionably low consideration. In the process, he has agreed to sell out the Debtor's true estate, with bona fide creditors holding millions of dollars in claims, who were on the precipice of recovering tens of millions of dollars – enough to satisfy the entire estate, when the Bankruptcy Case was commenced.

73. This Settlement Agreement is not a good faith proposal. It is poorly conceived, improper, and should be denied.

Dated: October 18, 2019

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Jay H. Ong_
    Jay H. Ong, Esq.
    Texas Bar No. 24028756
    Colorado Tower
    303 Colorado Street, Suite 2600
    500 N. Akard Street, Suite 3800
    Austin, Texas 78701
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149

**ATTORNEYS FOR MICHAEL OLDNER, TRUSTEE OF THE ORLY GENGER 1993 TRUST**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of October, 2019, I personally caused to be served a true and correct copy of the above and foregoing document, by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to all parties of interest receiving notice in this case through the CM/ECF system, and upon the party shown on the attached service matrix, via first class U.S. mail.


*/s/ Jay H. Ong*
Jay H. Ong

4825-6508-5097v.2

**SERVICE LIST**

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701

ARIE GENGER
19111 COLLINS AVE., APT 706
SUNNY ISLES, FL 33160

ARIE GENGER
C/O DEBORAH D. WILLIAMSON
DYKEMA GOSSETT PLLC
112 EAST PECAN ST., #1800
SAN ANTONIO, TX 78205

ERIC HERSCHMANN
210 LAVACA ST., UNIT 1903
AUSTIN, TX 78701

ERIC HERSCHMANN
C/O RAYMOND BATTAGLIA
66 GRANBURG CIRCLE
SAN ANTONIO, TX 78218

IRS
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA, PA 19101

KASOWITZ, BENSON, TORRES
ATTN: DANIEL BENSON
1633 BROADWAY, 21ST FLOOR
NEW YORK, NY 10019

SAGI GENGER
C/O JOHN DELLAPORTAS
EMMT MARVIN & MARTIN
120 BROADWAY 32ND FLOOR
NEW YORK, NY 10271

SAGI GENGER
C/O SABRINA STREUSAND
STREUSAND LANDON OZBURN &
LEMMON LLP
1801 S. MOPAC EXPWY #320
AUSTIN, TX 78746

U.S. TRUSTEE
903 SAN JACINTO, SUITE 230
AUSTIN, TX 78701

ZEICHNER ELLMAN & KRAUSE
1211 AVENUE OF THE AMERICAS
40TH FLOOR
NEW YORK, NY 10036

ERIC TAUBE
WALLER LANSDEN DORTCH &
DAVIS, LLP
100 CONGRESS AVE., STE 1800
AUSTIN, TX 78701

ORLY GENGER
210 LAVACA ST., UNIT 1903
AUSTIN, TX 78701

RON SATIJA
PO BOX 660208
AUSTIN, TX 78766

ERIC J. TAUBE
WWALLER LANSDEN DORTCH &
DAVIS, LLP
100 CONGRESS AVE., SUITE 1800
AUSTIN, TX 78701