IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| ORLY GENGER, | § | |
| | § | CASE NO. 19-10926-TMD |
| Debtor. | § | |

**RESPONSE TO CHAPTER 7 MOTIONS TO QUASH SUBPOENAS SUBJECT TO CONFIDENTIALITY FILED BY THE TRUSTEE AND THE DEBTOR**
[Related Dkt. Nos. 60 and 62]

TO THE HONORABLE TONY M. DAVIS, U.S. BANKRUPTCY JUDGE:

Dalia Genger and D&K GP LLC (collectively "Dalia") file this Response to the Motions to Quash a Subpoena served on Ron Satija, the Chapter 7 Trustee ("Trustee"), Orly Genger, the Chapter 7 Debtor ("Orly") (as well as a protective motion filed by her husband Eric Herschman ("Herschman") seeking document production in connection with certain pending matters, including this Court's show cause order, [Dkt. No. 43], the pending Motion to Dismiss [Dkt. No. 32]; the Trustee's Rule 9019 Motion to Compromise $32 million fraudulent transfer claims and claims against the Debtor's Austin condo, [Dkt. No. 52]; and the retention by the Trustee of the conflicted law firm Kasowitz Benson Torres LLP ("Kasowitz law firm") [Dkt. No. 59].

## I.
## PRELIMINARY STATEMENT

> We too have emphasized the importance of full disclosure in bankruptcy proceedings. *See Brown Mfg. v. Mims (In the Matter of Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, ***the importance of this disclosure duty cannot be overemphasized***."), *citing Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985) for the proposition:
>> 'The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive. . . . When it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion.'

*McLain v. Newhouse (In re McLain),* 516 F.3d 301, 315-16 (5th Cir. 2008) [Emphasis added].[1]

This Motion addresses the Trustee, the Debtor, her father and her husband's demand of secrecy and non-disclosure of documents related directly to the evaluation this Court must undertake to even consider granting the relief requested by the Trustee, the Debtor and her insiders.

This Chapter 7 case is very unusual for a number of reasons and from a number of perspectives, including the fact that this Debtor (herein sometimes "Orly" or the "Debtor") who the Southern District of New York has twice found in Second Circuit affirmed opinions "monetized" her trust assets in 2013 for $32 million (the Trust which her parents created in 1993, and which to which 2004 Dalia's $12.5 million in assets were transferred subject to a claw back) four (4) years later pays a Chapter 7 lawyer $75,000.00 to file a liquidating Chapter 7 case now claiming that all but $56,000.00 remain as assets of her estate.

From another perspective, the Debtor claims that the $32 million she monetized from her trust in late 2013[2] was given to: (i) her father ("Arie") and her father's creditors [not Orly's

---

[1] Since the Bankruptcy Code was meant to discharge only an honest debtor, the Code should be liberally applied to protect the debtor only in those cases where there is no intent to violate its provisions. In re Suttles, 819 F.2d 764, Bankr. L. Rep. (CCH) ¶; 71819 (7th Cir. 1987). the strong public interest and policy in full, open, and proper administration of a bankruptcy case by a trustee, including a thorough investigation of the debtor's assets. *See id.* at 417 (citing *Dougherty v. Capitol Cities Comm., Inc.,* 631 F.Supp. 1566, 1571 (E.D.Mich.1986) (internal citation omitted)). Without doubt, a debtor's honest and full disclosure is " 'essential to the administration of the bankruptcy estate.' " *Roudebush v. Sharp (In re Sharp),* 244 B.R. 889, 891 (Bankr.E.D.Mich.2000) (quoting *Cohen v. McElroy (In re McElroy),* 229 B.R. 483, 488 (Bankr.M.D.Fla.1998)). "'The integrity of the entire bankruptcy system rests upon full and honest disclosure by debtors of all of their assets.'" *In re Walker,* 323 B.R. 188, 198 (Bankr.S.D.Tex.2005) (quoting *Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y.1996)); *see Schechter v. Hansen (In re Hansen),* 325 B.R. 746, 757 (Bankr.N.D.Ill.2005) (noting that " 'the very integrity of the bankruptcy court and the successful administration of the bankruptcy system rest upon compliance with the debtor's obligation of disclosure' ") (quoting *Urological Group, Ltd. v. Petersen (In re Petersen),* 296 B.R. 766, 790 (Bankr.C.D.Ill.2003)). To that extent, a debtor "who comes to the bankruptcy court must come clean, make full disclosure of all information relevant to the administration, and must fully cooperate with the trustee." *U.S. Tr. v. Gardner (In re Gardner),* 344 B.R. 663, 667 (Bankr.M.D.Fla.2006) (citing *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *N. Trust Co. v. Garman (In re Garman),* 643 F.2d 1252 (7th Cir.1980)); *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). [As such, this [c]ourt expects debtors who seek such protection to deal with this [c]ourt, the [t]rustee, and all creditors with all candor.")]; *U.S. Tr. v. Halishak (In re Halishak),* 337 B.R. 620, 624 (Bankr.N.D.Ohio 2005) (noting that "in exchange for receiving the benefits of a bankruptcy discharge, debtors are expected to fully, honestly and unconditionally cooperate with the bankruptcy process").

creditors], (ii) to her wealthy lawyer husband ("Herschmanm") and (iii) Herschmann's law firm ("Kasowitz Law Firm"), the latter to pay for legal services which were represented as *pro bono*, and in any event never yielded or were designed to yield her a dime.

Finally, Orly claims that her rights in a multimillion dollar penthouse condominium located at the top of the "W" Hotel in downtown Austin, were transferred to her multi-millionaire lawyer-husband Herschmann in 2018 after judgment was entered against her.

In other words, Orly has almost no assets from which creditors such as Dalia may be paid, but continues to live a privileged and lavish lifestyle, including through her father and husband, and his law firm who are millions of dollars richer from her fraudulent transfers. For the true details of this bad faith Chapter 7 case, Dalia incorporates herein the Omnibus Statement of Background Facts [Dkt. No. 112] in this Response as if set out herein *verbatim*.

## II.
## THE DOCUMENTS SOUGHT ARE NECESSARY TO RESPOND TO THE DEBTOR AND TRUSTEE'S PENDING MATTERS BANKRUPTCY RULE 9019 STANDARDS REGARDING DALIA'S NEED FOR THE WITHHELD DOCUMENTS

Because only the Trustee may propose a settlement and prosecute a Rule 9109 Motion [*i.e.* *"[o]n motion by the trustee* and after notice and a hearing, the court may approve a compromise or settlement."] it is the Trustee that must carry the burden of proof on any settlement. Yet here it is the Trustee and his counter-parties - the Settling Insiders - that are keeping documents relevant to the Trustee's pending motions, including the Rule 9019 Settlement Motion, hidden from Dalia.

The overarching criteria permits approval of a settlement only if it is expressly found by the bankruptcy court that the settlement was negotiated in "good faith" and at "arms-length". *In*

---

[2] CPLR 213(8) provides that for "an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued…."

*re Asarco LLC*, No. 05-21207, 2009 Bankr. LEXIS 5721 at *34-35 (Bankr. S.D. Tex., 2009).[3] In that regard, the Fifth Circuit requires close scrutiny must be observed in any settlement among Insiders. *In re Foster Mortgage Co.*, 68 F.3d 914, at 918 (5th Cir. 1995) (noting that a settlement between insiders—the debtor and its parent company -- reached without the participation of creditors required careful scrutiny). This is true because, according to the Supreme Court, the Bankruptcy Court "…must apprise itself of 'all facts necessary for an intelligent and objective opinion of probabilities of ultimate success should the claim be litigated.'" *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968). The Fifth Circuit, in implementing this mandate and process, requires the Bankruptcy Court to review and determine the following:

• The probability of success in the litigation, (here, among others, the likelihood of success of the $32 million fraudulent transfer) with due consideration for the uncertainty in fact and law.[4] *In re Cajun Elec. Power Coop.*, 119 F.3d 349, 355-56 (5th Cir. 1997) finds "(e)ssential to the process of evaluating proposed settlements, then, 'is the need to compare the terms of the compromise with the likely rewards of litigation.'" (*citing*) *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009)(citations omitted)."

• Next, the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay. *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980), citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson ("TMT Trailer")*, 390 U.S. 414, 425, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d 1,

---

[3] *In re Palacios*, No. 14-70076, 2016 Bankr. LEXIS 249, at *1 (Bankr. S.D. Tex. Jan. 27, 2016) [a court must examine "… and the extent to which a settlement is truly the product of arms-length bargaining **and not of fraud or collusion**." *See, also In re ADPT DFW Holdings LLC*, 577 B.R. 232, 237 (Bankr. N.D. Tex. 2017)

[4] "The probability of success in litigation encompasses two factors – damages (and) liability." *See, In re Tex. Extrusion Corp.*, 68 B.R. 712, 719-20 (N.D. Tex. 1986) citing *Jackson Brewing* at 602; *And See*, *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop. Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997).

10 (1968). Here, only some litigation is settled with some insiders. Those insiders paying to settle want to maintain their litigation against Dalia and Sagi. Thus, the delay is all the Debtor's litigation strategy – otherwise the Debtor and her Insiders would have filed their response to the Turnover Motion ripe for hearing in the pending SDNY case before District Judge Forrest.

- Finally, the Court must consider "…all **_Other Factors_** bearing on the wisdom of the compromise." *In re Jackson Brewing*, 624 F.2d at 602 (citations omitted). These other factors include:

    a. *the paramount interest of the creditors; Id. Jackson Brewing*, at 602; and

    b. <u>the best interests of the creditors</u>, "with proper deference to their reasonable views."[5]

In evaluating the interests of the creditors, the court must take into account the consideration offered by the settling party and the degree to which the creditors object to determine whether the settlement furthers their best interests. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Coop., Inc.)*, 119 F.3d 349, 358 (5th Cir. 1997).

Dalia alleges that this Court cannot make these decisions while creditors are deprived of the evidence relevant to, and that impacts those decisions.

### III.
### THE DALIA SUBPOENAS

Attached hereto as **Exhibits 1** and **2** are true copies of the two subpoenas, along with the attached and incorporated letter setting out the limited conditions of compliance, served on the Trustee and Sagi attached hereto as Exhibit 3. The Subpoenas were directed only to the two parties

---

[5] *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *See, also In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980); *See, also In re Tex. Extrusion Corp.*, 68 B.R. 712, 719-20 (N.D. Tex. 1986).

to the Confidentiality Order – namely Orly (through her Chapter 7 Trustee[6]) and Sagi, reciting the referenced Contested Matters Doc # 31, 32, 36, 42, and 52 [the pending motions].  Critical to reviewing of these subpoenas is the fact that Dalia sought only "consent" to view documents:

> … in the possession of any party and withheld from public view by any party, including those documents currently redacted or filed under seal in the Contested Matters' pleadings, *and **expressly subject to Requesting Party and their law firm's agreement and obligation to be subject to any existing confidentiality order (by execution of such acknowledgment of the confidentiality obligations of the firm, the client and any professionals authorized to access or view such confidential documents)*** or subject to any proposed confidentiality order allowing restricted confidential access to which Requesting Parties' lawyer shall agree.

There was never an attempt to obtain documents free from the Confidentiality Order or to require the Trustee to produce anything.  Dalia's counsel also attached to and served with the Subpoenas the correspondence attached to each Subpoena providing as follows:

> It is the intention of this request that this Firm ***to obtain your client's consent*** to the production of your respective client's documents previously withheld from public view and filed under seal, or redacted in pleadings and filings, or that may be later withheld or redacted. ***It is not intended that you marshal and produce such documents at the time indicated in the Subpoenas if you simply agree that upon execution of all necessary confidentiality agreements currently burdening these documents with copies circulated to each of you, those documents will be made available to the Firm. Ms. Streusand, on behalf of her client(s) consented to this request,*** subject to your consent and the execution by this Firm (and its professionals or experts) of the confidentiality agreement.

As reasonable and efficient as Dalia's counsel attempted to make this process, not only have no documents been produced nor has there been any consent by parties to the Confidentiality Order

---

[6] "[T]he general maxim of bankruptcy law that a trustee stands in the shoes of a debtor, *see In re Maunakea*, 448 B.R. 252, 266 (D.Haw. 2011);  Gottlieb v. Rose (In re Khalil), Nos. 1:12-bk-11156-MT, 1:13-ap-01234-MT, 2014 Bankr. LEXIS 1976, at *20, 21 (Bankr. C.D. Cal. May 1, 2014),*citing Maunakea*:
> when Debtors filed for Chapter 7 bankruptcy, all of their assets became the property of the bankruptcy estate. See 11 U.S.C. § 541(a)(1). The Chapter 7 trustee then administers that estate, not only as a representative or 'in the shoes' of Debtors, but as both a legal representative and fiduciary of the estate. ***The impartial trustee must act in the best interests of the creditors and the bankruptcy estate, not solely Debtors***.  (Emphasis added.)

Even in the circumstance of a Trust, "…the Chapter 7 Trustee to stand in the shoes of the Debtor…."  *West v. Parker (In re Watson)*, 325 B.R. 380, 387 (Bankr. S.D. Tex. 2005).

to allow such review (upon execution of the Confidentiality Order and agreement by Dalia's counsel) but a remarkable series of pleadings seeking protection from ever disclosing these documents has resulted.

## IV.
## THE DELUGE OF MOTIONS TO QUASH AND
## FOR PROTECTION OF THE SECRET DOCUMENTS

### A. The Trustee's Motion To Keep The Documents Secret

Initially, counsel for the Trustee responded that "The trustee does not believe the confidentiality belongs to him (*i.e.* they are not "his" documents and information). So, he does not oppose Sabrina providing them to you." [Cumings Email dated 9/30/19 sent 844 PM]. As a result of this confusing disclaimer by the Trustee (as the party to the Confidentiality Order) Dalia's counsel asked for clarification. The Trustee's counsel responded:

> .. our view is that ***both the Trustee and the Debtor*** are simultaneously possessed of the confidentiality rights in the NY litigation.
> Again, the Trustee does not oppose you receiving any copies of documents from the NY proceeding that are subject to the confidentiality order therein.

[*See*, Cuming's Email dated 10/1/19 sent 10:50 AM]. Ultimately the Trustee has also filed a Motion to Quash the Dalia Subpoena ("Trustee's Motion to Quash"), contending that the Trustee does not have "confidentiality rights" in the requested information:

> Counsel for Dalia Genger appears to operate under the assumption that the Trustee holds confidentiality rights in the requested information. The Trustee believes that view is mistaken and that ***it is the Debtor*** and possibly other persons associated with the Debtor who may have confidentiality rights with the respect to the requested documents.

[Dkt. No. 60] (Trustee's Motion to Quash, ¶3, including footnote). Dalia's counsel has no idea what the Trustee means not having rights in the Debtor's documents. In any event, as talking with the Trustee failed, Dalia's counsel contacted the Debtor's counsel.

### B. The Debtor's Motion To Quash The Trustee's Subpoena

When Dalia's counsel reached out to the Debtor's Chapter 7 counsel he indicated that an Objection would be filed and that the Debtor would oppose allowing Dalia access to the documents. When the Objection was filed, the Debtor's Motion to Quash failed to disclose the attached letter accompanying the subpoena, and simply ignored its contents. In fact, all that Dalia sought was the "consent" by the Trustee (a party to the NY federal court case and the Confidentiality Agreement) to allow Sagi's counsel (the counter-party to the NY federal Court case #8181 and the other party to the Confidentiality Agreement) to furnish a copy to Dalia's counsel (also a party to the NY federal court case but not named in the Confidentiality agreement) <u>upon signing of the Confidentiality Agreement by Dalia's counsel</u> This request, directed initially to the relevant parties, and copied to all ECF parties in interest (*See*, COS, Dkt. No. 61) seemed the most efficient manner to allow access to confidential documents directly relevant to the Pending Motions – all of which counsel for Dalia has not yet seen, while maintaining the "confidential" status. However, the Debtor's Objection disagrees, but asserts a number of matters that are simply not true.

First, the Debtor suggests that Dalia is not a creditor, yet the Debtor scheduled Dalia as a creditor (*See*, Dkt. No. 20 at pg. 19, Schedules and Statements - judicial notice). In fact, she is a creditor with claims against the Debtor and the Debtors' insiders and recipients including claims for the $32 million in fraudulent transfers designed to denude the Orly Trust and the Debtor's estate to avoid paying that which the Debtor agreed in writing to pay in 2004.

Next, in the Motion to Quash by the Debtor states as if a fact that:

> "[b]ecause the Subpoenas explicitly demand production of "documents currently redacted or filed under seal," they are an obvious attempt by Sagi to get around this Court's September 26, 2019 order ... ***that restricts the use of confidential information produced in a now-stayed litigation pending in the***

> ***U.S. District Court for the Southern District of New York*** (the "SDNY Protective Order"). [Emphasis added].

Sagi already has those documents and has not furnished copies. This argument simply makes no sense, however, is also ***not factually correct***. Paragraph 5 the Protective Order (attached as **Exhibit 4**) expressly permits Sagi to use these document not simply in the SDNY action, but also

> "<u>in any other proceeding or action brought to enforce or collect the final judgment against Orly Genger</u>, dated August 17, 2018 (ECF Doc. No. 112) (the "Judgment"), including locating and levying against any assets of Orly Genger and setting aside any fraudulent conveyances made by Orly Genger (so long as the sole purpose of such fraudulent conveyance action is to set aside a conveyance that would enable Sagi Genger to enforce the Judgment)." [Emphasis Added.]

This misrepresentation of the Protective Order restriction to only the SDNY pending Turnover Motion is made by several other of the Debtor's insiders. *See, infra*. This Bankruptcy proceeding and this Bankruptcy Court would certainly qualify as such a proceeding, which is why Sagi has filed its Motion to Seal with this Court, as well as the redacted Motion to Dismiss, both recognizing confidentiality but asserting rights to access and discuss these documents in this Bankruptcy Court. As importantly, the debtor's hiding documents as a precursor to the request for a hearing on the Trustee's Settlement Motion that purports to settle the very suit on which this request is based is the antithesis of full and honest disclosure, candor and openness, and the good faith and arms-length transaction mandates to approve any bankruptcy settlement.[7]

---

[7] The overarching criteria permits approval of a settlement only if it is expressly found by the bankruptcy court that the settlement was negotiated in "good faith" and at "arms-length". *In re Asarco LLC*, No. 05-21207, 2009 Bankr. LEXIS 5721, at *36 (Bankr. S.D. Tex. June 5, 2009) recites the following rules:
> One factor to be considered in determining whether to grant the Settlement Motion is "the extent to which the settlement is truly the product of arms-length bargaining, *and not of fraud or collusion*." *In re Foster Mortgage Co.*, 68 F.3d at 918 (noting that a settlement between insiders—the debtor and its parent company—reached without the participation of creditors required careful scrutiny). ***Another factor weighing on the wisdom of compromise is the interests of the creditors, with proper deference to their reasonable views. Id*. at 917. . .** whether the settlement furthers their best interests. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Coop., Inc.)*, 119 F.3d 349, 358 (5th Cir. 1997) *Id.* Asarco at *34-35.
>
> … Parties should demonstrate good faith with respect to settlement negotiations by showing, for example, that negotiations were at arm's length. (citing) *Hercules*, 961 F.2d at 800; *Exxon Corp.*, 697 F. Supp. at 693. *Id*. at *115. ***Procedural fairness is measured by examining the negotiation***

C.  **The Herschmann Demand (and Threat) for Protection From Disclosure of the Documents**

An even more disturbing objection to the Subpoenas was received by counsel for the Debtor's husband, Herschmann, as noted, a target defendant in the pending fraudulent transfer Turnover Motion:

> <u>To the extent the Trustee is in possession of confidential Discovery Materials provided by Ms. Streusand</u>, Mr. Delaportes, Sagi Genger or anyone acting on their behalf. ***The submission of those materials to the Trustee was in clear violation of the Protective Order***. That violation cannot be purged through a subpoena issued upon the Trustee or upon Sagi Genger, particularly when done through an entity created and controlled by Sagi Genger. Nor can it be relieved by the mere execution of a confidentiality agreement.
> 
> ***Mr. Herschmann objects to the production of any confidential Discovery Material and intends to hold anyone knowingly violating the Protective Order accountable before the District Court that issued the order***. [Emphasis added]

[*See*, Email Battaglia October 1, 2019 at 11:10 AM]. Now even the debtor's Husband is threatening anyone that furnished Dali, and even **<u>the Debtor's Chapter 7 Trustee</u>** with documents subject to the Confidentiality Order with actions **not in this bankruptcy court, but in the NY federal Court**. Again, this threat hardly evidences ". . . the level of "candor, openness, and bargaining balance" mandated to approve, much less even consider, a compromise and settlement. *Id* Asarco at *115. The threat to drag Dalia's counsel to New York has, however, an interesting twist discussed below.

D.  **The Conflicting Representation By These Insiders in This Bankruptcy Court and in the SDNY Pending Turnover Motion Proceeding**

Dalia has discovered that the Debtor's husband's law firm ("Kasowitz Law Firm") is taking

---

***process to determine the level of "candor, openness, and bargaining balance***." *Id*.; *United States v. Wallace*, 893 F. Supp. 627, 632 (N.D. Tex. 1995). Parties should demonstrate good faith with respect to settlement negotiations by showing, for example, that negotiations were at arm's length. *Hercules*, 961 F.2d at 800; *Exxon Corp.*, 697 F. Supp. at 693. *Id Asarco* at *115

conflicting positions in this bankruptcy court and in the SDNY regarding the production of these documents. As the Court knows, on September 13, 2019, Sagi Genger filed in this Court a Motion for an Order, Pursuant to Bankruptcy Rule 9018 and Section 107(b) of the Bankruptcy Code, Authorizing Sagi Genger to File Under Seal Certain of the Exhibits and Portions of the Motion to Dismiss Bankruptcy Case, or Alternatively, to Transfer Venue, and Memorandum of Law in Support [Dkt. No. 31] (the "Motion to File Under Seal"). On September 26, 2019, the Court entered its Order Pursuant to Rule 9018 and Section 107(b) of the Bankruptcy Code Requiring Supplemental Information Filed Under Seal [Dkt. No. 49] (the "Order"). This started Dalia's counsel's preparation of subpoenas to be able to view these documents.

Responses to the Motion to File Under Seal and the Order, as well as universal objections to Dalia's access to their designation of documents as "confidential" have been filed by the Debtor and the Debtor's Insiders:

    1.    Orly Genger (Dkt. No. 66),[8] - arguing that this Bankruptcy Court does not have the power "to effectively overrule an order of another Federal Court …." [*i.e.* there is nothing this Bankruptcy Court can do to compel production].

    2.    Arie Genger arguing that the documents have been "… deemed confidential by another federal district court . . ." (which is simply untrue, since the documents at issues have only been "designated" as confidential by the unilateral designation of Arie's counsel, and not reviewed by determined to be confidential by any court) because "there is no

---

[8] As noted above, the Debtor's Response to the Order [Dkt. No. 66] filed in the Bankruptcy Case alleges that she

> "does not believe that this Court can effectively over-rule an order of another Federal Court by motion before this Court and does not waive any rights that she may have in connection with the SDNY Protective Order."

Debtor further alleges "it is clear that the Motion to File Under Seal was designed to effect such a waiver and to have the Court consider otherwise irrelevant and inadmissible 'evidence'." *Id.*

authority under section 107(b) of the Bankruptcy Code and Rule 9018 of the Federal Rules

of Bankruptcy Procedure to force disclosure of information deemed confidential by other

district courts" (i.e., again, there is nothing this Court can do to require production). (Dkt.

No. 67[9] and 76[10])

3.     Eric Herschmann (Dkt. No. 70[11]) likewise arguing that this Court "should

---

[9]     Similarly, Arie Genger ("Arie") filed a response to the Motion to File Under Seal and the Order in the Bankruptcy Case as well ("Arie Response to Order"). [Dkt. No. 67]. In his response, Arie alleges that "[t]he Motion to File Under Seal seeks to turn the rule on its head by forcing disclosure of information that has been deemed confidential by another federal district court in a different proceeding." [Dkt. No. 67, p. 2]. The Arie Response to Order further alleges the following:
> Sagi did not challenge the terms of the SDNY Protective Order or the confidential designations at the time of the production, over six months ago. Only now, months later and through the Motion to File Under Seal, Sagi seeks to undermine and overturn two federal district courts' orders. Because there is no authority under section 107(b) of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure to force disclosure of information deemed confidential by other district courts, Arie generally objects to all redacted statements and documents.

[10]    Arie has also filed a Motion for Protective Order in the Bankruptcy Case alleging the following:
> In a now-stayed litigation pending in the U.S. District Court for the Southern District of New York (the "SDNY Litigation"), an agreed protective order was entered which covered all production by Arie and his deposition. *See* Protective Order, *Genger v. Genger*, S.D.N.Y. Case No. 17-cv-8181, Doc. No. 181 (filed Feb. 7, 2019) (the "SDNY Protective Order"), a copy of which is attached hereto as **Exhibit C**. **Specifically, the SDNY Protective Order prohibits disclosure or use of information produced in that action to anyone except Sagi or counsel retained by Sagi in that litigation. Nevertheless, through his motion to file under seal, Sagi requests this Court to exclude certain confidential documents from the SDNY Protective Order**. *See* ECF No. 31, at ¶ 3.
> …
> Pursuant to FED. R. CIV. P. 26(c)(1)(A) and FED. R. CIV. P. 32(a)(8), made applicable by Bankruptcy Rules 7026 and 7032, **Arie seeks to "forbid the disclosure or discovery" of documents and information obtained pursuant to the SDNY Protective Order**. Arie also objects to the use of prior discovery, which was served upon Arie in the SDNY Litigation in an alleged attempt to collect on a debt that Orly owes Sagi. Sagi's Motion to Dismiss is not the "same subject matter" as the attempts to collect on a debt. *See Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.,* 38 F.3d 1429, 1439 (7th Cir. 1994) (providing that information is not discoverable if it is not relevant).

[Dkt. No. 76]; (Arie's Motion for Protective Order, ¶¶ 7, 17) (emphasis added).

[11]    Finally, Eric Herschmann ("Herschmann") takes the identical position in his response to the Order and Motion to File Under Seal ("Herschmann Response") and seeks protection from an unclear description of demands for access to the confidential documents. **[Dkt. No. 70]**. Specifically, the Herschmann Response states the following:
> …[o]n February 7, 2019, a Protective Order was entered in the case styled *Genger v. Genger*, pending in the United States District Court for the Southern District of New York under cause no.17-cv-8181-vsb-dcf (the "SDNY Protective Order"). On information and belief, Sagi and his counsel have repeatedly disregarded the Order of the United States District Court by disclosing "Confidential Discovery Materials" to parties not entitled to receive such information. Rather than address this issue with the Court that entered the SDNY Protective Order. **Sagi has used this Motion to File Under Seal, along with a series of collusive subpoena's issued through this**

not overrule an order of another Federal Court…"

Note that none of these Insiders informed this Court of the Confidentiality Order's express language allowing the "… use in any other proceeding or action brought to enforce or collect the final judgment against Orly Genger, dated August 17, 2018 (ECF Doc. No. 112) (the "Judgment"), of the documents before other Courts…." [*See*, Paragraph 5 the Protective Order **Exhibit 4**].

Thus, before this Bankruptcy Court the Objectors each suggest that the Bankruptcy Court, by ruling on confidentiality matters, is somehow "trodding upon the jurisdiction of the U.S. District Court for the Southern District of New York (SDNY)" (Sagi Reply, Dkt. No. 83, ¶3). Yet "[w]hat they have neglected to inform the Court is that the Debtor, through her counsel (the Kasowitz firm in which her husband is a partner) has been simultaneously telling the SDNY the opposite – that because of the 'automatic stay,' confidentiality designations can only be addressed *by this Court*." (*Id*.). In the New York case, and Insider Mr. Bowen, the law partner of Insider-Herschmann, complained in Southern District of New York that any attempt to defend his motion to quash a different subpoena, was a violation of the automatic stay:

> "This is KBT and Orly's reply to the opposition letters submitted by Sagi and a third party (Doc. Nos. 226 and 225), both dated September 23, 2019, concerning our application to enforce this Court's Protective Order, and also Orly's **response to Sagi's purported cross-motion included in his September 23 letter to de-designation a raft of confidential material**.
>
> **Sagi's purported "cross-motion" is a violation of the automatic stay** under the Bankruptcy Code and must be therefore summarily denied. **The code provides that no party – including Sagi – may seek relief against the debtor (in this case, Orly) by seeking adverse rulings even on procedural matters in any "proceeding**." 11 U.S.C. § 362(a)(1). Courts have given this statutory automatic stay an expansive reading commensurate with the legislative purpose to bring all

---

**Court and other courts, either to circumvent the SDNY Protective Order** or validate his prior violations of that Order…
  **Herschmann submits that this Court should not over-rule an order of another Federal Court** by motion before this Court and does not waive any rights he may have in connection with the SDNY Protective Order.
[Dkt. No. 76]; (Herschmann Response, ¶¶ 1-2) (emphasis added).

> proceedings outside the bankruptcy proceeding to a halt to allow for the orderly administration of the bankruptcy and to alleviate the cost and other burdens of litigation on the debtor and her estate. See S.E.C. v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) ("The automatic stay provision is intended 'to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'") quoting In re United States Lines, 197 F.3d 631, 640 (2d Cir. 1999). By even making such a motion, Sagi should be severely penalized by the Bankruptcy Court. *See, e.g., In re Chateaugay Corp.*, 920 F.2d 183, 186 (2d Cir. 1990) (noting bankruptcy courts are empowered to impose sanctions against individuals for willful violations of the automatic stay)."
>
> In contrast, the **enforcement of the Protective Order, sought by Orly, maintains the status quo and is permitted under the Bankruptcy Code**. Sagi's suggestion that this Court's Order needs to be abrogated to facilitate the bankruptcy is belied by the Code and common sense. The declaration from Ron Satija, the court-appointed Chapter 7 trustee in the bankruptcy proceeding, …" [remainder is blank] [**Correspondence from Michael Bowen to Judge Debra Freeman dated September 30, 2019**] (Emphasis added).

[See, attached **Exhibit 5**, Dkt. No. 83, Exhibit "B"] (Correspondence from Michael Bowen to Judge Debra Freeman dated September 30, 2019, attached to Sagi Genger's Reply as Exhibit "B") (emphasis added).

Note also that the "*status quo*" sought by Orly is to shield financial and transactional document of the Debtor and her insiders – a *status quo* that ended upon filing of a Chapter 7 case.

In other words, the position taken by the Objectors in each Court is that *neither Court may act* to challenge their confidentiality designations. This position is absurd and disingenuous, pitting full disclosure mandates of the Bankruptcy Court, against any disclosure in the SDNY Court.

This "gamesmanship" engaged in by the Objectors is all designed to delay, and to conceal from the Bankruptcy Court a series of fraudulent transfers by the Debtor, as well as substantial assets held by the Debtor, whether in the Debtor's own name or within the Debtor's custody and control, hoping that their Settlement will end their concerns. Of course, it is exactly that – these

parties are asking this bankruptcy court to take over the pending Motion for Turnover in Judge Forests Court (SDNY), settle that Motion and leave these insiders with $31 million of the $32 million in fraudulent transfers, while allowing them to direct the Trustee in bringing actions against Dalia. If this is the opening and introduction to these Insider's Rule 9019 dreams, fairness and full disclosures will certainly awaken them from such dreams.

## V.
## RELIEF REQUESTED

Dalia is a creditor and party-in-interest in this bankruptcy proceeding and is entitled to full and honest disclosures, candor and openness to this process. It would be unprecedented to consider the relief now being sought by the Trustee while the Trustee and the settling Insiders shields creditors from access to documents directly related to the issues before the Court, including the retention of counsel and the Rule 9019 Motions.

Dalia requests an order allowing parties in possession of the documents marked confidential in the pending SDNY case Doc# 8181, be turned over to counsel for Dalia, subject to counsel's execution and compliance with the terms of such Confidentiality Order, and for such other and further relief that is appropriate.

Dated: October 18, 2019

                                            Respectfully submitted,

                                            /s/ *Shelby A. Jordan*
                                            Shelby A. Jordan
                                            Texas Bar No. 11016700
                                            **JORDAN HOLZER & ORTIZ, P.C.**
                                            500 N. Shoreline Blvd., Suite 900
                                            Corpus Christi, Texas 78401
                                            Telephone: (361) 884-5678
                                            Facsimile: (361) 888-5555
                                            sjordan@jhwclaw.com
                                            **ATTORNEYS FOR DALIA GENGER AND D&K GP LLC**

# CERTIFICATE OF SERVICE

The undersigned hereby certified that a true and correct copy of the foregoing instrument has been served on this 18th day of October 2019 upon the parties listed in the attached service list and via ECF notification.

*/s/ Shelby A. Jordan*
Shelby A. Jordan

**Via ECF**
United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd., Suite 230
Austin, Texas 78701

**Via ECF**
Arie Genger
c/o Deborah D. Williamson
Dykema Gossett PLLC
112 East Pecan St., Suite 1800
San Antonio, TX 78205

**Via ECF**
c/o Trustee Ron Satija
Brian Talbot Cumings
Graves, Dougherty, Hearon & Moody
401 Congress Avenue, Suite 2700
Austin, Texas 78701

**Via ECF**
Arie Genger
c/o Deborah N. Williamson
Dykema Gossett PLLC
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205

**Via ECF**
Eric Herschmann
c/o Raymond Battaglia
66 Granburg Circle
San Antonio, TX 78218-3010

**Via ECF**
Sagi Genger
c/o Sabrina Streusand & TPR Investment
Streusand, Landon, Ozburn & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746

**Via ECF**
Eric J. Taube
Waller Lansden Dortch & Davis, LLC
100 Congress Ave, Suite 1800
Austin, Texas 78701

**Via ECF**
Thomas A. Pitta
Emmet, Marvin & Martin, LLP
120 Broadway
New York, NY 10271

**Via ECF**
The Orly Genger 1993 Trust
c/o Jay Ong
Munsch Hardt Kopf & Harr PC
303 Colorado Street, #2600
Austin, Texas 78701

**Via ECF**
SureTec Insurance Co.
c/o Ryan Brent DeLaune
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, Texas 75202

**Via ECF**
Ron Satija
P.O. Box 660208
Austin, TX 78766-7208