IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| ORLY GENGER, | § | |
| | § | CASE NO. 19-10926-TMD |
| Debtor. | § | |

**OBJECTIONS TO DEBTOR'S EXEMPTIONS**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN 21 DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW D&K GP LLC ("D&K"), a creditor and party in interest in the above-captioned bankruptcy case, and hereby files his *Objections to Debtor's Exemptions* (the "Objections"), and would show the Court as follows:

**I.
PRELIMINARY STATEMENT**

1.  This claim to this exemption of the multi-million dollar Austin Condo (and the suggestion that it would be too costly to obtain an opinion of fair market value) is as contrived as this Chapter 7 case. The bad faith conduct of the multi-millionaires husband and Debtor-wife has already been the subject of extensive criticism of both Southern District of New York and Western District of Texas federal courts. The most recent criticism of their "fast and lose" conduct comes from Magistrate Judge Austin of this District Court, in dealing with a motion brought by the Debtor's (non-estranged) husband, who claims to be an owner of 50% of the exemption claimed,

seeking to quash a subpoena. The issue of their residency was at issue and in ordering the matter transferred to the Southern District of New York, Judge Austin made the following relevant finding:

> [Eric] Herschmann and [Orly] Genger, as owners of multiple residences, have used this fact to their legal advantage by claiming to reside in whichever location most suits their legal needs at the time.

*See Genger v. Genger*, Civil Action No.: 1:19-mc-00366-LY (W.D. Tex.), Docket No. 11 (p. 5 of 6).

2. As noticed by Judge Austin, the Debtor has repeatedly claimed in other courts that she is a resident of the country of Israel, with no intention to move back to the United States, but now what "most suits their legal needs" is to change that story and decide that Austin, Texas will be her residence, notwithstanding the fact that the Debtor has been in Israel almost continuously before and since filing of the bankruptcy and only a few hours before the filing of this bankruptcy, the Debtor described herself, again, her domiciled in Israel in her brief for *en banc* review to the Second Circuit Court of Appeals.

3. D&K asserts that this is not the homestead of Orly or her husband under Texas law or the true facts, just as the conveyance of lien rights in this "homestead" by this Debtor to her husband recently was solely intended to be "belt and suspenders" to this phony homestead claim. The lien to her husband is just as phony.

## II.
## JURISDICTION AND VENUE

4. D&K has filed and joined in the pending Motion to Dismiss this Chapter 7 case (Dkt. No. 124). To the extent that this Court determines to hear this Chapter 7 case, the Court has jurisdiction to consider these Objections and the relief requested herein under 28 U.S.C. §§ 157 and 1334 as a core proceeding.

5. D&K has filed and joined in the pending for alternative to the Motion to Dismiss this Chapter 7, seeking to transfer venue of this case to the Southern District of New York. Venue is not proper in the Western District of Texas.

## III.
## BACKGROUND FACTS

6. The applicant D&K is a creditor and party in interest in this case which was filed on July 12, 2019 (the "Petition Date").

7. This is a Chapter 7 case of a wealthy, misguided, or intentionally deceptive Debtor, after having paid her Chapter 7 lawyer $75,000.00 in legal fees (including a $20,000.00 retainer) to advise on and file this bankruptcy.

8. On August 8, 2019, the Debtor filed her *Schedules of Assets and Liabilities and Statement of Financial Affairs* (the "Schedules") [Dkt. No. 20] accompanied by a list of disclaimers such that the Debtor disclaimed any accuracy of the information set out in those filings and disclaimed that the filings were made under penalty of perjury. *See*, "*Global Notes, Methodology and Specific Disclosures Regarding the Debtor's Schedules*".[1]

9. The need for disclaiming the accuracy is clear throughout the Schedules, including that portion where the Debtor claimed exemptions under the laws of the State of Texas.[2] The

---

[1] Begin with the "Introduction" that is a 3 page-single-spaced disclaimer of the accuracy of the disclosures and the purported lack of knowledge of the Debtor in completing and filing her Schedules and Statement of Affairs. This is a remarkable attempt to modify the "penalty of perjury" obligation upon execution by a Debtor of her schedules and statements.[1] As an example:
> Although the Debtor has made reasonable efforts to ensure the accuracy and completeness of such financial information, inadvertent errors or omissions, as well as the discovery of conflicting, revised or subsequent information, may cause a material change to the Schedules and Statement. Thus, the Debtor is unable to warrant or represent the Schedules and Statement are without inadvertent errors, omissions or inaccuracies. … **Notwithstanding the foregoing, the Debtor shall not be required to update, amend or supplement the Schedules and Statement, but reserves the right to do so**.

After claiming "reasonable" effort to ensure accuracy, the Debtor disclaims her clear obligation to "update, amend or supplement the Schedules and Statement …" with accurate information even when it is discovered and known to exist.

[2] Regarding the $3+ million condominium located in the "W Hotel" downtown Austin, the disclaimers state that "Debtor owns an undivided interest in a condominium property with her non-filing spouse which was granted by

Schedules disclose almost nothing about the true history of the denuding of well over $32 million in Debtor's assets to her father, his insiders, and her husband and his insider law firm and law partners.³ The Schedules of assets do not even mention $15 million in assets that the Debtor has in escrow in her husband's law firm, held in the name of one of her husband's law partners.

10. Among other things, in her Schedules Debtor makes exemptions claims to a valuable piece of improved real property known as the Penthouse of the "W Hotel" in downtown Austin, located at 210 Lavaca St., Unit 1903, Austin, Texas 78701. The Debtor owns a one-half undivided co-tenancy interest (the "Condominium") and a piece of art identified as the *Alfredo Jaar (chilean born 1956) Searching for Gramsci, 2004 inkjet print with silkscreen text on paper, 22 x 30 in (55.9 x 76.2 cm)* (the "Alfredo Jaar Print") [*see* Schedules at Schedule C].

11. Debtor claims the Condominium under Texas' homestead exemptions and provides

---

gift…." This intentionally vague reference is not only intended to confuse, but when followed by a reference that the ownership rights ("but has no parking rights or other contractual rights with respect to that property") makes clear that the Debtor does not want to talk about the actual purchase price. This intentionally vague statement suggesting that valuation of her asset is not possible defies logic and good faith [*See*, "Specific Disclosures" 2nd ¶ pg. 4].

³ The Disclaimers continue:

• Regarding her assets, the Debtor suggests that "… the Debtor may not have identified and/or set forth all of her (filed or potential) causes of action against third parties as assets in her Schedules and Statement" (who else would know what the Debtor's purported claims are, if not the Debtor?) then claims that "[t]he Debtor reserves all of her rights with respect to any causes of action against third parties" presumably even the undisclosed one, notwithstanding the fact that "the Debtor" no longer owns any of these causes of action, disclosed or not, all belong to the estate. [*See*, "Causes of Action" pg. 3].

• Remarkably, this same suggestion is also referenced by the Debtor as to the obligations to honestly complete Schedule A/B, first, when the debtor claims "Debtor has identified *claims that third parties, in various litigation, may have suggested that she owns* (and which Debtor does not agree exist)" which apparently the Debtor is not intending to disclose (at least voluntarily). Without the detailed history the Court and parties in interest would have no idea to what this disclaimer refers. However, with this Debtors history disclosed, this reference is to the $32 million in fraudulent transfer the Debtor made.

• Next the Debtor claims that (although she lives off the funds and cash of her multi-millionaire husband) and, according to the Debtor although "Schedules I and J request information on the Debtor's non-filing spouse's financial assets and income… [s]uch information is not available to the Debtor, and is, accordingly not listed." The Schedules do not "request" any information – they "requires" full, honest, and truthful disclosures. These answers to the questions are not optional, or at the pleasure of a debtor. The Debtor simply refuses to disclose the information, all of which is "available" to the Debtor. [*See*, "Specific Disclosures" 1st ¶ pg. 4]. Incredibly, the trustee even proposed to retain this same husband/lawyer who holds such non-disclosed information.

a value for the Condominium of $2,466,974.00. D&K believes the Condominium's true value is in excess of $3.5 million.[4]

12. Based upon the publicly available deed records, Dalia believes that Debtor obtained her interest in the Condominium on or about October 27, 2016 (the "<u>Condominium Transfer Date</u>"). There were roughly 988 days between the Condominium Transfer Date and the Petition Date. Pursuant to 11 U.S.C. §522(p), Debtor's claim of exemption in the Condominium, even if allowed, may not exceed the sum of $170,350.00 because Debtor's interest in the Condominium was acquired within the 1,215 days before the filing of the bankruptcy petition.

13. Debtor claims the Alfredo Jaar Print as an exempt home furnishing. With respect to the Alfredo Jaar Print, Debtor identifies it in her Schedules as a collectible. Dalia submits that the Alfredo Jaar Print does not qualify as a "home furnishing" for purposes of the claimed exemption. Accordingly, Debtor's claimed exemption in the Alfredo Jaar Print is improper and

---

[4] *See*, https://www.realtor.com/realestateandhomes-detail/210-Lavaca-St-Apt-1903_Austin_TX_78701_M85796-44916



must be disallowed.

14. Furthermore, due in part to the lack of specificity in the Schedules and in part to having received information from a third-party that suggests that the Debtor has not adequately disclosed all of her assets, D&K makes a general objection to the Debtor's valuations of her personal property identified at Lines 6, 7, 8, 11, and 12 of the Schedules and alleges that the values might exceed the relevant statutory caps. Accordingly, D&K seeks to obtain an independent appraisal of those items.

## IV.
## ARGUMENTS AND AUTHORITIES

15. This false claim to a homestead, and intentional vagueness as to valuations, demonstrate repeatedly the bad faith filing of this case. Making false homestead claims, even were the remainder of the schedules not materially false (as they in fact are) is sufficient to bar discharge in addition to disallowing the homestead claim [*See, e.g. Capital One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330 (Bankr. E.D.N.Y. 2018)] or sufficient to support dismissal of a case with prejudice. *See, e.g. In re Lehr*, 479 B.R. 90 (Bankr. N.D. Cal. 2012).

16. Further, it is clear that the Debtor anticipated loss of the homestead exemption, so the Debtor knowingly transferred her interest by granting a lien on this claimed "exempt" property, not for the purchase price or improvements, but only to protect the property from the judgment liens filed and to be filed by the Debtor's true judgment creditor. This transfer of a lien over the Debtor's property to her husband, is nothing more than an insider preference (if any debt actually existed, which D&K argues it does not) and/or an actual fraudulent transfer in keeping with this Debtor's intentional denuding of her estate for the purposes of filing a Title 11 case. See, *In re Kucharek*, 79 B.R. 393, 394 (Bankr. E.D. Wis. 1987) (a transfer of homestead to an insider six months before bankruptcy, for no consideration, is both an insider preference "…as well as a

fraudulent transfer made with intent to hinder, delay and defraud creditors.").

17.     This Court should not reward such blatant hypocrisy and fraudulent conduct.  The Debtor's exemption should be denied, the false or fraudulent lien should be set aside, the asset treated as property of the estate, valued and ordered sold in its entirety.[5]  *See, e.g. Hill v. Herring (In re Herring)*, 550 B.R. 119, 126 (Bankr. S.D. Tex. 2016) (Debtor's transfer of homestead to her mother for no consideration is an insider fraudulent transfer).

WHEREFORE PREMISES CONSIDERED, D&K GP LLC prays that Debtor's claimed exemption in the Condominium be disallowed or alternatively, limited to the statutory cap, to the Alfredo Jaar Print be disallowed, and that her personal property exemptions be limited to the relevant statutory caps, and for such other and further relief to which she may be entitled.

Dated:   October 21, 2019

Respectfully submitted,

 /s/ *Shelby A. Jordan*
Shelby A. Jordan
Texas Bar No. 11016700
**JORDAN HOLZER & ORTIZ, P.C.**
500 N. Shoreline Blvd., Suite 900
Corpus Christi, Texas 78401
Telephone:  (361) 884-5678
Facsimile: (361) 888-5555
sjordan@jhwclaw.com
**ATTORNEYS FOR D&K GP LLC**

---

[5]     See, Bankruptcy Code §363(h)(2), (3).  As an example particularly relevant to this case is *In re Gauthreaux,* 206 B.R. 502 (Bankr. N.D. Ill. 1997), stating that "it is generally accepted that sale of a bankruptcy estate's undivided one-half interest will generate substantially less than the sale of the entire property interest free of each owner's interest because of the chilling effect the sale of such a limited interest has on prospective purchasers of the property, especially when the co-owner could continue to live on the property as is the case here." The court took judicial notice of this fact under Federal Rule of Evidence 201.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certified that a true and correct copy of the foregoing instrument has been served on this 21st day of October 2019 upon the parties listed in the attached service list and via ECF notification.

                                                  */s/ Shelby A. Jordan*
                                                  Shelby A. Jordan

**Via ECF**
United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd., Suite 230
Austin, Texas 78701

**Via ECF**
Arie Genger
c/o Deborah D. Williamson
Dykema Gossett PLLC
112 East Pecan St., Suite 1800
San Antonio, TX 78205

**Via ECF**
c/o Trustee Ron Satija
Brian Talbot Cumings
Graves, Dougherty, Hearon & Moody
401 Congress Avenue, Suite 2700
Austin, Texas 78701

**Via ECF**
Arie Genger
c/o Deborah N. Williamson
Dykema Gossett PLLC
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205

**Via ECF**
Eric Herschmann
c/o Raymond Battaglia
66 Granburg Circle
San Antonio, TX 78218-3010

**Via ECF**
Sagi Genger
c/o Sabrina Streusand & TPR Investment
Streusand, Landon, Ozburn & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746

**Via ECF**
Eric J. Taube
Waller Lansden Dortch & Davis, LLC
100 Congress Ave, Suite 1800
Austin, Texas 78701

**Via ECF**
Thomas A. Pitta
Emmet, Marvin & Martin, LLP
120 Broadway
New York, NY 10271

**Via ECF**
The Orly Genger 1993 Trust
c/o Jay Ong
Munsch Hardt Kopf & Harr PC
303 Colorado Street, #2600
Austin, Texas 78701

**Via ECF**
SureTec Insurance Co.
c/o Ryan Brent DeLaune
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, Texas 75202

**Via ECF**
Ron Satija
P.O. Box 660208
Austin, TX 78766-7208

**Via ECF**
Michael Paul Bowen
Kasowitz Benson Torres LLC
1633 Broadway
New York, NY 10019