**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **ORLY GENGER,** | § | **Case No. 19-10926-TMD** |
| ***(Debtor)*** | § | **Chapter 7** |

**DEBTOR ORLY GENGER'S RESPONSE TO MOTION TO TRANSFER VENUE**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Debtor, Orly Genger ("Debtor") files this Response to Sagi Genger's Motion to Transfer Venue (joined by Dalia Genger, D&K GP LLC and other entities Sagi and/or Dalia control) (the "Motion") to the Southern District of New York, and respectfully represents as follows:

**SUMMARY OF RESPONSE**

1. Since around the time of her marriage in 2016, Debtor has owned a half-interest in a condominium that is located less than one mile from the courthouse in Austin, Texas for the Western District of Texas Bankruptcy Court. This has been her home and her domicile at various points since 2016, and she has not resided or been domiciled in any other location in the United States since moving to Texas in 2016. Most importantly for the purposes of venue of this bankruptcy case pursuant to 28 U.S.C. § 1408, Debtor has lived and resided at this location in Austin since at least February 2019, well over 91 days before Debtor filed her voluntary Chapter 7 petition, on July 12, 2019. Additionally, the interest that she owns in the condominium, is her "principal asset" and is clearly located in the Western District of Texas. The filing of the bankruptcy proceeding in the Western District of Texas was therefore appropriate under 28 U.S.C. § 1408.

2. Nonetheless, on September 13, 2019, 65 days after Debtor filed the petition and 36 days from the filing of her Bankruptcy Schedules and Statement of Financial Affairs, Debtor's

brother Sagi Genger ("Sagi") – subsequently joined by their mother, Dalia Genger ("Dalia") and entities owned or controlled by Sagi and Dalia including TPR Investment Associates, Inc. ("TPR"), D&K GP LLC ("D&K") and a trust established in 1993 for Debtor's benefit but controlled by Sagi and Dalia, the Orly Genger 1993 Trust ("OG Trust") – filed a Motion to Dismiss this bankruptcy case, and alternatively asserted a motion to transfer venue to the Southern District of New York. [Doc #31.][1] (Sagi, Dalia, TPR, D&K and the OG Trust are referred to herein as the "Sagi Parties.") To the extent that counsel and the Court can sift through Sagi's volumes of irrelevant and inaccurate history of the decade-long disputes that have existed in litigation that is described, some involving Debtor and some not, and determine the actual allegations that have been asserted by the Sagi Parties, there are two basic allegations related to venue that appear to be asserted: 1) that venue was not proper under 28 U.S.C. § 1408; and 2) that venue should be transferred "in the interest of justice and for the convenience of the parties" pursuant to 28 U.S.C. § 1412. Neither of these bases for transfer of venue are supported by actual facts or applicable law.

3. Sagi and the entities that he owns or controls seek to have this case transferred to the Southern District of New York, which is more than 1,700 miles away from where Debtor lives here in Austin. They do this even though Sagi is not in New York (he lives in Connecticut or Florida), the purported Trustee of the OG Trust is not in New York (he lives in Arkansas), and D&K and TPR are Delaware companies owned and controlled by Sagi. Based upon Sagi's false assertion and his allegation that "... the central issue in this bankruptcy will be the Debtor's fraudulent conveyance of her $32.3 million in settlement proceeds to third parties, including her

[1] At the hearing on October 23, 2019, the Court determined that it would only hear the Motion to Transfer Venue on October 31, 2019, and would defer the Motion to Dismiss to a later time. Debtor will respond to the Motion to Dismiss at the appropriate time.

father and his creditors" [Motion, para 53], the Sagi Parties assert that this bankruptcy should proceed in New York because two promissory notes that Sagi asserts Debtor "retains signing authority over" are located there [Motion, para 48]. In fact, Debtor is not a named payee on those notes and does not claim any interest in those notes, so they are not property of the Bankruptcy Estate under 11 U.S.C. § 541. Additionally, the notes – which are held by an escrow agent – are governed by Delaware law and are payable anywhere. Even if Orly did have claims related to the notes (she does not), the alleged fraudulent transfers that the Sagi Parties assert are the "central issue" in this case, would either be claims that belong to the Chapter 7 trustee or claims that do not belong to the Bankruptcy Estate at all. They do not physically exist anywhere, and may be brought in the Western District of Texas to the extent that they exist at all.

4. Sagi also refers to what he says are eight related litigations pending in New York. Of these, one, Southern District of New York Case No. 17-cv-8181, does not have any claims related to fraudulent transfer – Sagi's motion concerning fraudulent transfer in that case was directed at numerous third-parties, and, importantly, was already denied by that court in light of Debtor's bankruptcy filing here. As for the other cases Sagi mentions, Debtor is only party to two, and motions to dismiss those claims have been *sub judice* for years.[2] All of the others do not even name the Debtor, and therefore should have no bearing on the venue of this bankruptcy case.

5. The Motion, as it relates to venue, is not brought for the convenience of the parties but appears to be pursued for the *inconvenience* of Debtor and to put her in a position where she cannot obtain the benefits of a bankruptcy filing. Debtor has no domicile or place to live in New York, and although she lived there several years ago, she has no intention to move back nor the

[2] The Chapter 7 trustee previously filed motions in New York to transfer those two cases to this jurisdiction, since if the claims against Debtor are not dismissed (as they should be), they could affect the administration of the bankruptcy estate. The Sagi Parties have not yet filed any responses to those two motions to transfer.

means to do so. A transfer of venue would require the Debtor to travel some 1,700 miles with her two-year-old daughter to a place that they do not live to participate in her own bankruptcy case and to defend herself from the allegations that have already been asserted by the Sagi Parties in this matter' which include already filed objections to her discharge and to the dischargeability of debt and objections to her elected Texas exemptions. Additionally, Debtor's counsel is not licensed in New York, and if this Motion is granted, Debtor will be required to (attempt to) retain new counsel, at great expense. For these reasons, a transfer or this case would put an undue burden on Debtor and make it nearly impossible for her to participate in her own bankruptcy case.

6. By contrast, the Sagi Parties have all hired counsel in the Western District of Texas and have already engaged in extensive activities in this jurisdiction in connection with their participation in this bankruptcy proceeding, including, *inter alia*, the filing of this Motion and objections to Debtor's discharge under either 11 U.S.C. § 523 or § 727, as well as the issuance of a multitude of subpoenas on parties and third parties, including even the Chapter 7 Trustee. The Sagi Parties have also filed or joined in objections to Debtor's Texas homestead and personal property exemptions. For all of these reasons, the motion to transfer should be denied.

## Argument & Authorities

### A. Venue Standards

Section 1408 of title 28 of the United States Code governs where a bankruptcy petition may be filed, and provides that a bankruptcy case may be commenced in the district:

> in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district.

28 U.S.C. § 1408.

7.      In fact, a bankruptcy court in the Western District of Texas Bankruptcy Court has held that even where an individual bankruptcy case was filed in an improper venue, it can be retained in that same improper venue for the convenience of the debtor, and that to prevent a debtor from filing at all based upon the geographic realities of venue would be improper. *In re Lazaro*, 128 B.R. 168 (Bankr. W.D. Tex. 1991). Thus, even if this Court determines that the Western District of Texas is an improper venue (which plainly it is not), it can still retain the case for the convenience of the parties because it is where Debtor and her counsel are located along with counsel for most of the active creditors in this case.

8.      With respect to the appropriateness of venue, Debtor has resided in Austin, Texas from February of 2019 through the date of filing. That is, at a minimum, the greater of 180 days prior to the filing of the bankruptcy petition (91 days prior to July 12, 2019 is April 13, 2019) and satisfies the venue standard. The Sagi Parties appear to assert that Debtor's residence or domicile was in Israel at the time of her bankruptcy filing. The allegation is simply inaccurate and without basis. However, in all cases, the statutory language of 28 U.S.C. § 1408 in fact only contemplates the appropriateness of venue where a debtor has lived in *multiple Districts in the United States* during the 180 days prior to filing for bankruptcy. Here, where Debtor had her residence or domicile abroad before February 2019, venue in the Western District of Texas is proper under the plain language of the statute, as she has lived in Austin (and no other location in the U.S.) for the greater part of the 180 days prior to the bankruptcy filing.

9.      Moreover, even if the Sagi Parties were correct (they are not) and Debtor actually resided in Israel for the greater of 91 days prior to the bankruptcy filing (she didn't), Debtor, who is indisputably a United States citizen, cannot be denied bankruptcy relief if she can establish another basis for venue – such as the location of her principal assets. *See* 28 U.S.C. § 1408(1).

There is no dispute that since 2016 Debtor has owned, and still owns today, a one-half interest in a condominium at the W Residences in Austin, Texas, less than a mile away from where the Bankruptcy Court is located. Although the Sagi Parties make the false claim that Debtor's "retain[ed] signing authority" over promissory notes that are in New York is significant, Debtor asserts no claims to the notes, so they cannot form the basis of proper venue (additionally, as discussed above, the notes are governed by Delaware law, and payable to the escrow agent when they come due at any location). As a consequence, Debtor's entitlement to filing for bankruptcy relief in the United States Bankruptcy Court for the Western District of Texas cannot be seriously questioned, and like with other allegations that have been made already by the Sagi Parties, does not withstand the examination of the facts related to them. Insert highlighted paragraphs below.

10. Transfer of venue is governed by 28 U.S.C. § 1412 and provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. This provision, even to the extent applicable at all here, provides the Court permissive authority, and not a mandate, to transfer venue under an analysis of all relevant factors.

11. Under 28 U.S.C. § 1412, a permissive transfer of venue is proper if it is (a) in the interest of justice of (b) for the convenience of the parties. The Fifth Circuit established the following criteria courts should generally consider in determining whether to transfer venue of a case under the "convenience of the parties" prong: (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration should liquidation result. *See, In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1240 (5th Cir. 1979) ("*CORCO*").

12. It is not sufficient that the analysis of the above factors may slightly favor a movant requesting a venue transfer. *See CORCO*, 596 F.2d. at 1241 ("[T]he party moving for the transfer must show by a preponderance of the evidence that the case should be transferred."); *see also In re Garden Manor Associates, L.P.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988) ("[W]here a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed."); *In re Great Am. Res., Inc.*, 85 B.R. 444, 446 (Bankr. N.D. Ohio 1988). The presumption in favor of the Debtor's choice of venue is particularly acute in individual Chapter 7 bankruptcy cases where the non-debtor movants seek a transfer in order to prevent the debtor from obtaining the benefits of the Bankruptcy Code and to make it impossible to participate in the bankruptcy case, as is apparent here.

### B. The Western District of Texas is Proper Because Debtor Has Been Domiciled and/or Resided in Austin, Texas for More than 91 Days Prior to the Petition Date

13. Debtor's choice of venue in the Western District of Texas is proper, and should not be disturbed. *See, e.g., Matter of Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1241 (5th Cir. 1979) ("[T]he court should exercise its power to transfer cautiously."); *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002) ("A debtor's choice of forum is entitled to great weight if...venue is proper."); *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988) ("When venue is proper, the debtor's choice of forum is entitled to great weight.") (quotations omitted); *In re Windtech*, 73 B.R. 448, 450 (Bankr. D. Conn. 1987) ("If a debtor originally files in a proper district, the court then exercises its power to transfer . . . cautiously.").

14. Based on the *CORCO* factors, the Western District of Texas is the most convenient forum, and the Southern District of New York is an incredibly inconvenient forum.

#### 1. *The Proximity of Creditors of Every Kind to the Court*

15. The Debtor's schedules list a total of ten creditors, consisting of two secured creditors and eight unsecured creditors. *See* Debtor's Schedules E-F. Neither of Debtor's secured creditors are located in the Southern District of New York, and one of the secured creditors (Debtor's husband) is located in Austin, Texas. *Id.* Additionally, both of the secured creditors have retained counsel located in the Western District of Texas.

16. While it is true that Debtor's unsecured creditors are located outside of the Western District of Texas, they are not all located in New York (and at least one who is located in New York has an office in Texas and agrees venue is proper here). Additionally, the most active of the unsecured creditors have retained Austin based bankruptcy counsel. D&K and Dalia Genger are represented by Shelby Jordan (an Austin-based attorney) who has filed an objection to Debtor's exemptions [Doc. # 141] along with an associated adversary proceeding against Debtor in the Western District of Texas. *See Genger v. Genger*, Case No. 19-01067-tmd. Sagi Genger and TPR have retained Sabrina Streusand (an Austin-based attorney) who has also filed significant pleadings in this case (including this Motion), along with an associated adversary proceeding against the Debtor in the Western District of Texas. *See Genger v. Genger*, Case No. 19-01066. As a result, all of the active parties in this case are either located in the Western District of Texas or have retained counsel located in the Western District of Texas. Therefore, this factor weighs in favor of this case being retained in the Western District of Texas. By contrast, Debtor's counsel, Eric Taube, is not licensed in the State of New York, and the transfer of this case to the SDNY would necessarily require Debtor to attempt to obtain new counsel, or at least additional counsel, to represent her before the Bankruptcy Court in that jurisdiction.

**2. *<u>The Proximity of Debtor to the Court</u>***

17. Debtor lives in Austin, Texas at 210 Lavaca Street, Unit 1903, Austin, Texas 78701. *See* Debtor's Schedule A/B. Debtor's residence is located less than one mile from the Court. Sagi seeks to transfer venue to a bankruptcy court that is located over 1,700 miles from Debtor's residence. Debtor, who is the primary care provider to her two-year-old daughter, has no residence in New York, and would be required to travel with her daughter to New York, sometimes on short notice, locate child care, a place to stay and airfare to attend hearings where she will be required to testify. Given Debtor's individual financial status, such arrangements are an effective impossibility. This factor overwhelmingly weighs in favor of venue being retained in the Western District of Texas Bankruptcy Court and should be dispositive of this issue alone given that this is an individual Chapter 7 bankruptcy proceeding.

### 3. ***The Proximity of the Witnesses Necessary to the Administration of the Estate***

18. The "physical location of witnesses is not as important a consideration as the other *CORCO* factors." *See In re B.L. of Miami, Inc.*, 294 B.R. 325, 332 (Bankr. D. Nev. 2003). However, this factor still weighs in favor of the case being retained in the Western District of Texas. Debtor, who is the most material witness in this bankruptcy case, resides less than one mile from the Court. The Sagi Parties assert that witnesses that they assert are critical to the alleged fraudulent transfer case that the Trustee has not asserted, are located in and around the New York area. However, even if such allegation were true, such a claim is not the basis for making a determination on the transfer of the entire bankruptcy case itself, and might, at best, be the basis of a motion to transfer an adversary proceeding at a later time in the event that it was actually filed. It cannot stand as the basis for the transfer of venue for a proceeding that does not even exist - the alleged fraudulent transfer case.

### 4. ***The Location of the Assets***

19. Debtor's most significant asset is her residence, which is subject to numerous objections to its exempt status. That asset is located less than one mile from the Court.[3]

20. Though Sagi may believe that the two promissory notes *should* be an asset of the bankruptcy estate, and though Sagi asserts that fraudulent transfer claims might exist that should be prosecuted by the Trustee in the future, the notes are not physically located anywhere. Those "assets" and claims (if they are determined to be property of the estate) belong to the Trustee, who is located in Austin.

21. Therefore this factor weighs heavily in favor of the case being retained in the Western District of Texas.

**5. *The Economic Administration of the Estate***

22. The "most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *CORCO*, 596 F.2d at 1247; *see also LSREF2 Baron, LLC v. Aguilar*, 2013 WL 230381, at *4 (N.D. Tex. 2013) ("In evaluating the interest of justice factors, several courts have found the most important factor is whether transfer would promote the economic and efficient administration of the bankruptcy estate."). This holding accords with the purpose of Rule 1014(b), which is "to avoid inefficiencies and waste of judicial and other resources." *In re Raytech Corp.*, 222 B.R. 19, 25 (Bankr. D. Conn. 1998).

23. Here, the economics of estate administration favor retaining the case in the Western District of Texas, where Debtor resides and her most significant asset is located. Accordingly, the Western District of Texas Bankruptcy Court is the most appropriate venue to advance the interests of judicial economy and efficient case administration.

[3] Additionally, a court will necessarily have to interpret Texas homestead law, and this Court is in a better position to do so than a New York court would be, especially considering New York does not have any equivalent homestead protection laws.

24.     Sagi identifies what he claims to be numerous "related" cases involving certain of the parties active in this bankruptcy case that are ongoing in New York state and federal courts. However, what Sagi conveniently leaves out is that Debtor is not even party to the majority of these cases. Sagi caused four of the purportedly related cases to be commenced in 2019, and Orly is not even party to any of them. In one of these new cases, captioned *Manhattan Safety v. Bowen et al.*, Sagi is seeking to recover proceeds of what he alleges are fraudulent transfers from others (and not Debtor), for the benefit of him and his business associates, pursuant to the terms of an "Inter-Creditor Agreement" dated June 16, 2019, a copy of which is attached hereto as **Exhibit A**. However, the existence, status and progress of such cases are irrelevant. In all cases, to the extent these purported fraudulent transfer claims relate to Debtor or the bankruptcy estate (though Sagi's newly created Inter-Creditor Agreement suggests even he thinks they do not), they are now owned by the Chapter 7 trustee, and the those "related" cases Sagi identifies should have no bearing on Debtor's choice of venue for the bankruptcy proceeding itself. To the extent any fraudulent transfer cases are asserted, or to the extent a litigant (who will necessarily not be the Debtor - who has no interest in or standing to assert such claims) seeks to determine who owns what alleged fraudulent transfer claims, the parties to that litigation may raise the issue of transfer of venue under 28 U.S.C. §1412, but not now.

### 6.     *The Necessity for Ancillary Administration Should Liquidation Result*

25.     Unlike *CORCO,* this is a chapter 7 liquidation. A chapter 7 trustee has been appointed and familiarized himself with the facts of the case. It would be inefficient for a new chapter 7 trustee in New York to be appointed.

## D. <u>Even if this Court Finds that the Western District of Texas is an Improper Venue, it Should Retain the Case for the Convenience of the Parties</u>

26. In *Lazaro,* the debtor resided in New Mexico, where he had a thriving medical practice in which his wife assisted him, but filed a bankruptcy petition in El Paso, Texas. *See Lazaro*, 128 B.R. at 169. The IRS, a creditor in the case, sought to transfer venue to Las Cruces, New Mexico, which was the proper venue for the case as it was where debtor's domicile was located. Judge Leif Clark reasoned that 28 U.S.C. § 1412 permits retention of cases filed in improper venue in interests of justice and for convenience of parties, and retained the improperly venued case because Las Cruces would not be a convenient forum for the parties, who would have to drive 225 miles to Albuquerque where hearings for that district were held. *Id.* at 170. The Court also noted in making its decision to retain the case that (1) El Paso is a mere 30 miles away from Las Cruces, (2) counsel for debtors was a local El Paso attorney, and (3) cost and time of travel to Albuquerque would impose unnecessary administrative burden on estate, making it much more difficult for debtors to apply their efforts on working their way out of bankruptcy. *Id.* at 174. Finally, as a policy matter, Judge Clark stated that "parties already financially strapped need not be deprived of relief by virtue of an intractable and unreasonable bankruptcy venue rule which in operation permits only those who can afford to travel the right to bankruptcy relief." *Id.*

27. Similarly, here, Debtor lives within one mile of the Court. To transfer it to New York would place an unreasonable burden on her, and would require her to travel to New York to participate in her own bankruptcy case, which she cannot afford or feasibly do with her infant child. Thus, even if this Court determines that Austin was not a proper venue, it should still retain the case for the convenience of the parties because the Debtor and the estates principal asset are located within one mile of the Western District of Texas Bankruptcy Court.

## E. <u>The Case Should Be Retained in the Western District of Texas in the Interest of Justice</u>

28. Courts evaluating the "interests of justice prong" consider the following factors: (1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) whether the parties would be able to receive a fair trial in each of the possible venues; (4) whether either forum has an interest in having the controversy decided within its borders; (5) whether the enforceability of any judgment would be affected by the transfer; and (6) whether the plaintiff's original choice of forum should be disturbed. *In re Dunmore Homes*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008) (transferring venue from S.D.N.Y. to E.D. Cal.) (citing *In re Enron Corp.*, 317 B.R. 629, 638–39 (Bankr. S.D.N.Y. 2004)).

29. The "convenience of the parties" factors weigh heavily in favor of the case being retained in the Western District of Texas and lead to the conclusion that the interests of justice are best served by retention of this case in the Western District of Texas. *See B.L. of Miami*, 294 B.R. at 334 (citing *Enron Corp.*, 284 B.R. at 386) (finding that "generally what serves the convenience of the parties will also serve the interest of justice").

30. There are significant reasons for this case being retained the Western District of Texas, including the fact that the Debtor *resides less than one mile from the Court*, and the fact that the Debtor's assets are almost solely located in the Western District. Conversely, the interest of justice is not served by transferring the case to the Southern District of New York, a forum that is located over 1,700 miles from Debtor's residence and which will place an extraordinary burden on the Debtor's estate by requiring Debtor to attempt to retain new counsel, and make numerous trips to the Southern District of New York.

31. Based on the foregoing, this case should remain the Western District of Texas in the interests of justice, and Sagi's Motion to Transfer Venue should be denied.

## Conclusion and Prayer

32. The facts and circumstances acknowledged by the Debtor in its filing demonstrates a clear case for the case being retained in the Western District of Texas, and Sagi's Motion being denied.

WHEREFORE, Debtor respectfully requests that (a) Sagi's Motion to Transfer Venue be denied, and (b) granting such other and further relief as may be just and proper.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: */s/ Eric J. Taube*

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
William R. "Trip" Nix, III
State Bar No. 24092902
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
eric.taube@wallerlaw.com
mark.taylor@wallerlaw.com
trip.nix@wallerlaw.com

COUNSEL FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon those parties receiving the Court's ECF e-mail notification and on the parties listed on the attached Service List by depositing same in the U.S. First Class Mail on this 29th day of October, 2019.

*/s/ Eric J. Taube*
Eric J. Taube

## SERVICE LIST

Orly Genger
210 Lavaca St., Unit 1903
Austin, TX 78701-4582

Arie Genger
17001 Collins Ave.
Apt. 2805
Sunny Isles, FL 33160

Kasowitz, Benson, Torres LLP
Attn: Matthew Stein, Esq.
1633 Broadway, 21st Floor
New York, NY 10019-6708

D&K GP LLC
c/o Ira Tokayer, Esq.
420 Lexington Ave.
New York, NY 10170

Dalia Genger
200 E. 65th St. 32w
New York, NY 10021

Markel Surety
c/o Suretec Insurance Company
5555 Garden Grove Blvd., Suite 275
Westminster, CT 92687

Orly Genger 1993 Trust
c/o Michael Oldner
86 Pleasant Valley Dr., #16
Little Rock, AK 72227

TPR Investment Associates Inc.
c/o John Dellaportas
Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, NY 10271

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

US Trustee
903 San Jacinto, Ste. 230
Austin, TX 87701-2450

Eric Herschmann
210 Lavaca St., Unit 1903
Austin, TX 78701-4582

Sagi Genger
c/o John Dellaportas
Emmt Marvin & Martin LLP
120 Broadway, 32nd Floor
New York, NY 10271-3291

Ziechner Ellman & Krause LLP
1211 Avenue of the Americas
40th Floor
New York, NY 10036-6149

Ron Satija, Trustee
P.O. Box 660208
Austin, TX 78766-7208

**PARTIES REQUESTING NOTICE**

Raymond Battaglia
66 Granburg Circle
San Antonio, TX 78218-3010

Deborah D. Williamson
Danielle N. Rushing
Dykema Gossett PLLC
112 East Pecan Street, Suite 1800
San Antonio, TX 78205

Aaron M. Kaufman
Dykema Gossett PLLC
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, TX 75201

Ryan B. DeLaune
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, TX 75202

Sabrina L. Streusand
Streusand, Landon, Ozburn &
Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, TX 78746

Jay H. Ong, Esq.
Munsch Hardt Kopf & Harr, P.C.
303 Colorado Street, Suite 2600
Austin, TX 78701

# EXHIBIT A

# INTER-CREDITOR AGREEMENT

**THIS INTER-CREDITOR AGREEMENT** (the "Agreement") dated as of June 16, 2019, by and among the **ORLY GENGER 1993 TRUST**, through its trustee, Michael Oldner ("OGT"), **RECOVERY EFFORT INC.** ("Recovery"), an Arkansas corporation, **SAGI GENGER**, an individual residing in Connecticut ("SG"), **TPR INVESTMENT ASSOCIATES, INC.**, a Delaware corporation ("TPR"), **MANHATTAN SAFETY COMPANY LTD.** a St Kitts, WI limited liability company ("MSL"), and **MANHATTAN SAFETY MAINE, INC.** ("MSM"), a Maine corporation (collectively, the "Parties"), and **EMMET, MARVIN & MARTIN LLP**, as escrow agent ("Escrow Agent").

RECITALS:

**WHEREAS**, TPR has claims for moneys originally evidenced by a Promissory Note, dated December 21, 1993, issued by D&K Limited Partnership in the amount of $8.95 million (the "1993 Note"), for which OGT assumed and became liable for 48% of the outstanding principle and interest;

**WHEREAS**, OGT owes TPR no less than $8 million under the 1993 Note;

**WHEREAS**, TPR now wishes to assign its claims under the 1993 Note to MSM (the "1993 Note Claim"), in place of a 2012 promissory note which the Courts held to be void;

**WHEREAS**, OGT lacks funds to satisfy its debt under the 1993 Note;

**WHEREAS**, OGT's principal asset is its claim to the $32.3 million in litigation proceeds, plus interest and attorney's fees and disbursements, accruing under a Settlement and Release Agreement, dated as of June 16, 2013, between Arie Genger, Orly Genger, Arnold Broser, David Broser and TR Investors, LLC, Glencova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources, LLC, Jules Trump, Eddie Trump and Mark Hirsch (the "Settlement Agreement Proceeds"), by which Orly Genger ("OG") settled claims she had brought derivatively on behalf of OGT seeking to recover its claimed beneficial ownership interest in shares of Trans-Resources, Inc. ("TRI") (the "Settlement Agreement Claim");

**WHEREAS,** in addition to the Settlement Agreement Claim, OGT has potential claims against third parties for conduct associated with the negotiation and execution of the Settlement Agreement and/or the misappropriation of the Settlement Agreement Proceeds (together with the Settlement Agreement Claim, the "OGT Claims");

**WHEREAS**, OGT has assigned OGT Claims to Recovery, an entity wholly owned by the OGT;

**WHEREAS**, on January 5, 2015 , in the case of *Dalia Genger v. Sagi Genger*, Civ. Act. No. 1:14cv5683, the United States District Court for the Southern District of New York ruled that it was "[OG's] claims to beneficial ownership of the TRI shares individually and as a trust beneficiary [which] enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement Agreement," which ruling was thereafter unanimously affirmed by the United States Court of Appeals for the Second Circuit of New York;

**WHEREAS**, on August 17, 2018, in the case of *Dalia Genger v. Sagi Genger,* Civ. Act. No. 1:17cv8181, the United States District Court for the Southern District of New York entered judgment in favor of SG on his claims against OG in the amount of $3,219,698 plus 50% of SG's reasonable counsel and other professional fees, expenses and costs in connection with this action, in an amount to be determined (the "2018 Judgment");

**WHEREAS**, in the same civil action, by Opinion & Order dated July 27, 2018, the United States District Court held that the total additional potential liability of OG to SG under her 2004 indemnity to him is $9.25 million (the "Indemnity Claim");

**WHEREAS**, SG expects that, upon availability of funds, DG will make demand of SG on her full remaining entitlement under SG's promise to DG, which in turn will trigger SG's entitlement from OG under the OG Indemnity Claim (the 2018 Judgement and the Indemnity Claim, together, the "OG Claims");

**WHEREAS**, OG has not satisfied any portion of the 2018 Judgment, and claims to have no significant assets other than her interest, if any, in the Settlement Agreement Proceeds and her home in Austin, Texas;

**WHEREAS**, the Parties hereto wish to resolve any potential matters among themselves without needless legal fees and other expenditures;

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants herein contained, the Parties hereto agree as follows:

1. Assignment of Promissory Note by TPR to MSM.

TPR does hereby sell, transfer, convey, assign and deliver to, and vest in, MSM all of TPR's right, title and interest to any funds owed it by the OGT as a result of the 1993 Note.

2. Distribution of Litigation Recovery.

(a) The Parties agree that, notwithstanding any provisions to the contrary in any other agreement, in the event of any recovery, whether by judgment or settlement, by any Party on any of the OG Claims or OGT Claims, of any amount (collectively, the "Recovery"), regardless of the plaintiff who recovers it and/or the legal theory on which it is recovered, such Recovery shall be paid directly to an escrow account maintained by Escrow Agent; (ii) upon receipt, Escrow Agent shall distribute Recovery in the following order of priority:

(1) *first,* in equal amounts to MSM and SG, until such time as MSM has been paid in full for the 1993 Note Claim or SG has been paid in full for the OG Claims, in each case inclusive of all documented collection costs therefor;

(2) *second,* in such amounts as are necessary to pay in full the amounts owed to MSM under the 1993 Note Claim or the amounts owed to SG under the OG Claims, as the case may be, once again inclusive of all documented collection costs therefor; and

(3) *third,* to Recovery.

(b) Should any of the Parties receive a Recovery from a source other than the Escrow Agent, such Party will promptly deliver, or cause to be delivered, the same to Escrow Agent and until so delivered, such Recovery shall be held in trust by such Party and shall not be commingled with other funds of such Party.

(c) The Parties further covenant to cause their respective counsel to comply with this Agreement by, *inter alia,* causing any Recovery to be promptly delivered to the Escrow Agent.

3. Escrow Agent.

(a) Escrow Agent will not receive a fee for its services hereunder, but will be reimbursed for its reasonable out-of-pocket expenses incurred in performing its duties hereunder.

(b) Escrow Agent will not be responsible for any act or failure to act hereunder except in the case of its gross negligence or willful misconduct. Parties will jointly and severally indemnify Escrow Agent and hold it harmless from and against any claims, damages, losses, liabilities, costs and expenses (including without limitation reasonable attorneys' fees and court costs) that arise out of or in connection with this Agreement or the performance by Escrow Agent of its obligations hereunder; provided, that Parties have no obligation to indemnify Escrow Agent to the extent, but only to the extent, that any of such claims, damages, losses, liabilities, costs or expenses arise out of the gross negligence or willful misconduct of Escrow Agent.

(c) The duties, responsibilities and obligations of Escrow Agent shall be limited to those expressly set forth herein and no duties, responsibilities or obligations shall be inferred or implied.

(d) Escrow Agent shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder by reason of any occurrence beyond the control of Escrow Agent (including but not limited to any act or provision of any present or future law or regulation or governmental authority, any act of God or war).

(e) Escrow Agent may rely upon, and will be protected in acting or refraining from acting upon, any written notice, instruction or request furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper Party or Parties. Escrow Agent may act in reliance upon the reasonable advice of counsel satisfactory to it in reference to any matter connected with its obligations hereunder and will not incur any liability for any action taken in accordance with such advice. In case of any dispute regarding this Agreement, Escrow Agent is entitled to deposit all or any portion of the proceeds with any court of competent jurisdiction and thenceforth be relieved of any further duty or responsibility hereunder. Escrow Agent shall not be obligated to take any action which in its reasonable judgment would involve it to take on any expense or expose it to liability unless it has been furnished with an indemnity or other security reasonably satisfactory to it.

(f) The terms and obligations of this Section shall survive the termination of this Agreement and/or the resignation or removal of Escrow Agent.

4. Notices.

Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed duly given when actually received or if mailed by Federal Express overnight delivery, with a copy by email. Notices shall be addressed as follows:

| | |
|---|---|
| If to OGT: | Daniel A. Cohen<br>Walden Macht & Haran LLP<br>One Battery Park Plaza, 34th Floor<br>New York, New York 10004<br>Tel.: (212) 335-2042<br>Email: dcohen@wmhlaw.com |
| If to Recovery: | Daniel A. Cohen<br>Walden Macht & Haran LLP<br>One Battery Park Plaza, 34th Floor<br>New York, New York 10004<br>Tel.: (212) 335-2042<br>Email: dcohen@wmhlaw.com |
| If to SG: | John Dellaportas<br>Emmet, Marvin & Martin, LLP<br>120 Broadway<br>New York, NY 10271<br>Tel: 212-238-3092<br>Email: jdellaportas@emmetmarvin.com |
| *With a copy to:* | *sagigenger@aol.com* |
| If to TPR: | John Dellaportas<br>Emmet, Marvin & Martin, LLP<br>120 Broadway<br>New York, NY 10271<br>Tel: 212-238-3092<br>Email: jdellaportas@emmetmarvin.com |
| *With a copy to:* | *sagigenger@aol.com* |
| If to MSL: | Daniel A. Cohen<br>Walden Macht & Haran LLP<br>One Battery Park Plaza, 34th Floor<br>New York, New York 10004<br>Tel.: (212) 335-2042<br>Email: dcohen@wmhlaw.com |
| *With a copy to:* | *Robin@Internationalinvestments.com* |

REIMSM_000161

If to MSM: Daniel A. Cohen
Walden Macht & Haran LLP
One Battery Park Plaza, 34th Floor
New York, New York 10004
Tel.: (212) 335-2042
Email: dcohen@wmhlaw.com

*With a copy to:* *Robin@Internationalinvestmentsltd.com*

If to ESCROW AGENT: John Dellaportas
Emmet, Marvin & Martin, LLP
120 Broadway
New York, NY 10271
Tel: 212-238-3092
Email: jdellaportas@emmetmarvin.com

The foregoing addresses may be changed by notice given to the other Parties entitled to notice or copies thereof in accordance with this section.

5. No Implied Responsibilities, Representations or Warranties.

The responsibilities of the Parties are limited exclusively to the express obligations set forth under this Agreement.

6. Miscellaneous.

(a) This Agreement may be executed in counterparts, and all such executed counterparts shall constitute the same agreement. Signatures to this Agreement and any amendment hereof delivered electronically via facsimile, .pdf or similar electronic format shall be deemed an original signature and fully effective as such for all purposes.

(b) This Agreement contains all of the terms agreed upon between the Parties with respect to the subject matter hereof, and all prior agreements, understandings, representations and statements, oral or written, between the Parties are merged into this Agreement.

(c) This Agreement may not be changed, modified or terminated, except by an instrument executed by all Parties.

(d) This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.

(e) This Agreement shall be governed by the laws of the State of New York without giving effect to conflict of laws principles thereof. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**ORLY GENGER 1993 TRUST**

By: ______________________

Name: MICHAEL OLDNER

Title: TRUSTEE

**RECOVERY EFFORT INC.**

By: ______________________

Name: MICHAEL OLDNER

Title: DIRECTOR

______________________

**SAGI GENGER**

**TPR INVESTMENT ASSOCIATES, INC.**

By: ______________________

Name:

Title:

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**ORLY GENGER 1993 TRUST**

By: [signature]

Name: MICHAEL OLDNER

Title: TRUSTEE

**RECOVERY EFFORT INC.**

By: ____________________________

Name:

Title:

[signature]

**SAGI GENGER**

**TPR INVESTMENT ASSOCIATES, INC.**

By: [signature]

Name: Sagi Genger

Title: CEO

REIMSM_000164

**MANHATTAN SAFETY COMPANY LTD**

By: ______________________

Name: Robin C. Rodriguez

Title:

**MANHATTAN SAFETY MAINE, INC.**

By: ______________________

Name: Robin C. Rodriguez

Title:

**EMMET, MARVIN & MARTIN LLP**

***Solely As Escrow Agent***

By: ______________________

Name:

Title:

**MANHATTAN SAFETY COMPANY LTD**

By: ______________________________

Name:

Title:

**MANHATTAN SAFETY MAINE, INC.**

By: ______________________________

Name:

Title:

**EMMET, MARVIN & MARTIN LLP**

***Solely As Escrow Agent***

By: [signature]

Name: John Delleporter

Title: Partner